**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | | |
|---|---|---|
| **THE CENTECH GROUP, INC.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 07-513C**<br>**Judge Coster Williams** |
| **THE UNITED STATES,** | ) | |
| **Defendant** | ) | |
| **And** | ) | |
| **TYBRIN CORPORATION,** | ) | |
| **Intervenor** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... iii

STATEMENT OF THE CASE .......... 2

I. NATURE OF THE CASE .......... 2

II. STATEMENT OF FACTS .......... 4

SUMMARY OF THE ARGUMENT .......... 5

ARGUMENT .......... 5

I. The Standard of Review .......... 5

II. This Court Possesses Subject Matter Jurisdiction .......... 5

A. The Jurisdiction of This Court Expressly Extends to the Issues Presented In this Case .......... 5

B. CENTECH Possesses Standing To Bring This Action .......... 9

1. CENTECH Meets the Article III Constitutional Justiciability Standards of Standing, and Ripeness .......... 9

2. CENTECH Has Established Its Standing To Bring This Action Under the Tucker Act, 28 USC §1491, and CENTECH Is An Interested Party" Within the Meaning of the Act .......... 12

C. CENTECH's Complaint is Not Premature .......... 17

D. CENTECH's Complaints About Contract Rescission and Withdrawal of the Responsibility Determination Are Not Mooted by the Air Force's Reinstatement of the Contract .......... 20

E. CENTECH Does Not Request the Court to Direct the Award of a Contract .......... 21

F. This Court's Power to Decide CENTECH's Claims Arises Because the Air Force Acted Illegally In Connection With Its Award of the ARDTEAS Contract, Not Because of Any Characterization That The Air Force Terminated CENTECH's Contract For Its' Convenience.....................22

III. CENTECH Does Not Assert Claims Against the GAO, and the Government's Arguments that CENTECH fails to State a Claim Based on its Allegations Involve the GAO are Irrelevant. ..........................................................................23

CONCLUSION..........................................................................................................24

# TABLE OF AUTHORITIES

**Page**

CASES

*Abbott Laboratories v. Gardner*, 378 U.S. 136, 149 (1967).......................................................10

*American Federation of Government Employees, AFL-CIO v. United States*, 258 F.3d 1294 (Fed.Cir. 2001) ..............................................................12

*Bannum, Inc. v. United States*, 56 Fed. Cl. 453 (2003) .............................................................18

*Cavalier Clothes, Inc. v. United States*, 810 F.2d 1108, 1111 (Fed. Cir. 1987)...........................16

*CC Distributors, Inc. v. United States*, 38 Fed.Cl. 771, 776 (1997) ...............................7, 9, 12

*CCL Serv. Corp. v. United States*, 43 Fed. Cl. 680, 693 (1999).................................................20

*Chapman Law Firm Co., v. United States* __F.3d , 2007 WL 1662323, *2 (2007); La Gloria, 72 Fed. Cl. At 552. .............................................................................5, 9

*Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345; 1997 U.S. Claims LEXIS 65 ...........................................................................................5, 7, 23

*Data General Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996)..................................................14

*Delbert Wheeler Construction, Inc. v. United States*, 39 Fed.Cl. 239, 244 at n.11 (1997) 7

*Grunley Walsh Intern., LLC v. United States*, 2007 WL 2323983 (Fed.Cl.)................................17

*Hunt Building Company, LTD v. United States*, 61 Fed Cl. 243; 2004 U.S. Claims LEXIS 178...........................................................................5, 19

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001)..........................................................................13

*Keco Indus., Inc,. v. United States*, 203 Ct.Cl. 566 (1974).........................................................12

*Magnavox Elec. Sys. Co. v. United States*, 26 Cl. Ct. 1373, 1379 (1992) ..............................17, 19

*National Federation of Federal Employees v. Cheney*, 883 F.2d 1038 (D.C. Cir. 1989), cert. denied, 496 U.S. 936 (1990)..................................................................9

*Parcel 49C Limited Partnership v. United States*, 31 F.3d 1147 (Fed.Cir. 1994).......................................................................7, 12, 16

*Raines v. Byrd*, 117 S.Ct. 2312, 2318, n. 3 (1997) ....................10

*Related Industries, Inc. v. United States*, 2 Cl.Ct. 517, 520-521 ....................16

*Scanwell Lab., Inc. v. Shaffer*, 424 F.2d 859, 864 (D.C.Cir. 1970) ....................7

*Siller Bros., Inc. v. United States*, 655 F.2d 1039, 1043-44 (Ct. Cl. 1981) ....................16

*Sterlingwear of Boston v. United States*, 11 Cl.Ct. 644, 650 (1986) ....................8

*United Enterprise & Associates v. United States,* No. 05-607C (March 21, 2006)....................17

*University Research Co., LLC v. United States*, 65 Fed. Cl. 500; 2005 U.S. Claims LEXIS 151 ....................6, 19

*Williams v. United States*, 71 Fed. Cl. 194 (Ct. Cl. 2006) ....................5, 8

RULES AND REGULATIONS

FAR §2.101....................10

U.S. Ct. Fed. Cl. R. 12(b)(1)....................5

Rule 12(b)(6)....................5, 9

STATUTES

28 U.S.C. § 1491....................3, 12, 20, 22

28 U.S.C. § 1491(b) (1994) ....................5, 7

28 U.S.C. § 1491(b)(1) and (b)(2) ....................14, 21

31 U.S.C. §3551(2) ....................12

31 U.S.C. §3554....................17

MISCELLANEOUS

The Honorable Loren A. Smith, Why a Court of Federal Claims?, 71 Geo. Wash. L. Rev. 773....................6

The Honorable Wilson Cowen et al., The United States Court of Claims: A History (Part II), at iv (1978) ..........7

Max Kidalov and Richard Seamon, The Missing Pieces of the Debate Over Federal Property Rights Legislation, 27 Hastings Const. L.Q. 1, 26, n. 126..........10

Richard H. Seamon, The Provenance of the Federal Courts Improvement Act of 1982, 71 Geo. Wash. L. Rev. 543 (2003) ..........7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | | |
|---|---|---|
| **THE CENTECH GROUP, INC.** | ) | |
| **Plaintiff,** | ) | **No. 07-513C** |
| **v.** | ) | **Judge Coster Williams** |
| **THE UNITED STATES,** | ) | |
| **Defendant** | ) | |
| **And** | ) | |
| **TYBRIN CORPORATION,** | ) | |
| **Intervenor** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

COMES NOW, the Plaintiff, The CENTECH Group, Inc. ("CENTECH"), through undersigned counsel, and files this Opposition to Defendants' Motions to Dismiss.[1]

Contrary to Federal Defendant's characterization, CENTECH does object to the United States Air Force's ("Air Force") amended solicitation, issued well after it awarded its Aerospace, Research, Development, Test and Evaluation Advisory and Assistance Services ("ARDTEAS") contract to CENTECH. In addition, CENTECH objects to the

[1] TYBRIN, Inc. assumes the opportunity in its Motion to Dismiss to argue the merits of its case. However, because the Motions to Dismiss attack the Court's jurisdiction, and whether or not CENTECH has stated a claim, Plaintiff responds only to the arguments in TYBRIN's brief that address those points. CENTECH addresses TYBRIN's other points in its Memorandum In Support of Its Motion for Preliminary and Injunctive Relief, and will further address them as this case proceeds on the merits.

Air Force's arbitrary, capricious and illegal acts that deprive it of its right to perform its contract, and its ability to realize the profits and benefits that the contract has to offer. For these reasons, CENTECH petitions the Court to enjoin the Air Force from expending any funds in support of its ARDTEAS program except under its contract awarded to CENTECH on April 28, 2006.

CENTECH is injured by the Air Force's arbitrary, capricious, and illegal conduct complained about and possesses standing to assert this action. Contrary to the Defendants' arguments, the Air Force does not act to "ratify" its award of the ARDTEAS contract to CENTECH. Instead, the Air Force solicits a new contract to award to the competitor who wins its re-competition. If CENTECH is the winner, it will receive a new contract from the Air Force, or its current contract will be substantially modified to reflect the results of the Air Force's source selection. However, CENTECH will not receive the opportunity to perform its existing contract or to realize the benefits of that contract.

CENTECH's allegations in its Complaint are not premature. CENTECH presently suffers the denial of benefits of its ARDTEAS contract, and its injury is on-going and continuous. Therefore, CENTECH's allegations in its Complaint are ripe, and CENTECH possesses standing to assert them.

## STATEMENT OF THE CASE

### I. NATURE OF THE CASE

CENTECH asks the Court to enjoin the Air Force from expending any funds for advisory or assistance services to support its ARDTEAS program other than under the

contract it awarded to CENTECH on April 28, 2006 under its Request for Proposals FA9300-04-0040 ("the RFP"). This Court routinely grants the type of relief that CENTECH requests under the authority of 28 U.S.C. § 1491.

Contrary to how the Government characterizes CENTECH's Complaint, CENTECH does not ask the Court to direct an award to CENTECH.[2] The Air Force has already awarded its ARDTEAS contract to CENTECH, and takes the position that it remains in full force and effect. Therefore, Defendants' claims that the Court lacks jurisdiction because CENTECH requests a directed award are factually and legally unsupported. Moreover, the Court routinely enjoins procuring agencies from expending funds in a specified manner to reverse the consequences of a procuring activity's arbitrary, capricious, and illegal conduct. Here, such conduct has taken the form of RFP Amendment No. 3, announcing a re-competition of the award to CENTECH. Therefore, the Defendants' Motion to Dismiss, based on their assertions that CENTECH's allegations are premature or moot, are unfounded and the Defendants' Motions to Dismiss must be denied.

Contrary to Defendants' arguments, CENTECH does not ask the Court to review the legality of the General Accountability Office's ("GAO") protest decision. The Air Force illegally rescinded CENTECH's contract, reinstated it, and then suspended CENTECH's performance of the contract indefinitely. These illegal acts belong solely and exclusively to the Air Force and they constitute the basis for CENTECH's

[2] See Counts I through VI of CENTECH's Complaint. Each Count identifies the Air Force as the culpable party that acted in an arbitrary and capricious manner, and in violation of law. Because the GAO protest decision constitutes a part of the Administrative Record in the case, the facts surrounding the GAO protest decision are relevant to assessing the illegalities and arbitrary and capricious conduct that CENTECH complains about.

Complaint. Because the Air Force hides behind the GAO and, selectively, the SBA[3] to justify its illegal conduct, CENTECH has no choice but to address their actions as well. However, CENTECH bases it's Complaint on the Air Force's illegal acts, and not on the outside influences it succumbed to that it states caused it to violate the law.

CENTECH's Complaint is ripe for determination by this Court. Although the Government defends by asserting that the CENTECH's ARDTEAS contract remains in full force and effect, it is undisputed that the Air Force suspended CENTECH's contract, and prevents it from performing the contract. There is also no dispute that by its re-competition activities, the Air Force would somehow "ratify" its prior award of the ARDTEAS contract to CENTECH, or preserve any opportunity for CENTECH to perform it. Any contract that results from the Air Force's re-solicitation activities will by necessity have to incorporate the results of the renewed source selection. Therefore, CENTECH has no chance of realizing the benefits of its ARDTEAS contract awarded on April 28, 2006. In and of itself, this establishes CENTECH's irreparable harm and standing to maintain this action.

## II. STATEMENT OF FACTS

CENTECH adopts and incorporates by reference its Statement of Facts in its Complaint and Memorandum in Support of its Motion for Preliminary and Permanent Injunctive Relief.

---

[3] The Air Force appears, at once, to favor the SBA's interpretation of the Small Business Act in the abstract and to ignore the SBA's interpretation of the Small Business Act as applied to CENTECH through the SBA's binding Certificate of Competency process.

## SUMMARY OF THE ARGUMENT

## ARGUMENT

### I. The Standard of Review.

When ruling on a motion to dismiss for lack of subject matter jurisdiction under U.S. Ct. Fed. Cl. R. 12(b)(1), the court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to plaintiff. If the undisputed facts reveal any possible basis on which the plaintiff might prevail, the court must deny the motion. Williams v. United States, 71 Fed. Cl. 194 (Ct. Cl. 2006).

When evaluating a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept as true all material facts in the complaint and must draw all reasonable inferences in favor of the Plaintiff. Chapman Law Firm Co., v. United States __F.3d , 2007 WL 1662323, *2 (2007); La Gloria Oil & Gas Co. v. United States, 72 Fed. Cl. 544, at 552 (2006).

### II. This Court Possesses Subject Matter Jurisdiction

#### A. The Jurisdiction of This Court Expressly Extends to the Issues Presented In this Case.

In Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345, 1997 U.S. Claims LEXIS 65, this Court ruled that: "An unsuccessful bidder on a federal procurement contract may challenge the contracting agency's actions in the United States Court of Federal Claims." See, 28 U.S.C. § 1491(b) (1994), as amended by Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870, 3874-74(1996).

In Hunt Building Company, LTD v. United States, 61 Fed Cl. 243; 2004 U.S. Claims LEXIS 178, the Court ruled as follows:

> The Tucker Act gives this Court jurisdiction to render judgment in an action by an interested party objecting a proposed award of a contract "without regard to whether suit is instituted before or after the contract is awarded." 28 U.S.C. § 1491(b)(1)…
>
> In order to establish "standing", a protester must show that it is an actual or prospective offeror whose direct economic interest would be affected by the award of the contract, i.e., that it was an "interested party" prejudiced by the award. ITAC, 316 F.3d at 13919; AFGE, Local 1482 v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001), cert. denied, 534 U.S. 1113, 151 L. Ed. 2d 885, 122 S.Ct. 920 (2002).

In University Research Co., LLC v. United States, 65 Fed. Cl. 500; 2005 U.S. Claims LEXIS 151, the Court discussed the bounds of its jurisdiction as follows:

> In Ramcor [citing Ramcor Services Group, Inc. v. United States, 185 F.3d 1286, 1291 (Fed Cir. 1999)], the Federal Circuit held that this Court could review the merits of an agency's override decision independent of any consideration of the merits of the underlying contract award…. This conclusion rested on the pertinent language of the Tucker Act, which states that ***the Court of Federal Claims has jurisdiction over, among things, a "violation of a statute or regulation in connection with a procurement or a proposed procurement."*** 28 U.S.C. § 1491(b)(1) (emphasis added); Ramcor, 185 F.3d at 1289. The override provision of *31 U.S.C. § 3553(c )(2)*, according to the Circuit, "fits comfortably" within the "in connection with" language of the Tucker Act." Ramcor, 185 F.3d at 1289. In accordance with Ramcor, our Court has concluded that the override provision of *31 U.S.C. § 3553(d)(3)(C)* similarly "fits comfortably" within the "in connection with" language of the Tucker Act. See PGBA, LLC v. United States, 57 Fed. Cl. 655, 659 (2004)….
>
> The Tucker Act, grants the Court jurisdiction over bid protests brought by "an interested party ***objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract."*** 28 U.S.C. § 1491(b)(1) ….
>
> This Court has jurisdiction over post-award bid protest pursuant to the Tucker Act, 28 U.S.C. § 1491….

It goes without saying that the United States Court of Federal Claims is a court of limited jurisdiction like all other Federal courts. See The Honorable Loren A. Smith, Why a Court of Federal Claims?, 71 Geo. Wash. L. Rev. 773 ("More fundamentally,

however, the term 'jurisdiction' implies limits. No court created in the United States, since at least 1776, has had unlimited jurisdiction.") Since this Court's creation in mid-19th century, its jurisdiction was fashioned in order to fit the Court's specific role is to be "a forum and an agent for accountability." Id. "The history of the Court of Claims is the story of an evolutionary process by which the Government of the United States has sought over the years to develop a system that will enable its citizens to assert claims against it and receive fair and just compensation when those claims are justified." The Honorable Wilson Cowen et al., The United States Court of Claims: A History (Part II), at iv (1978). The Court of Federal Claims has retained this role under its current statutory grants of jurisdiction. See generally Richard H. Seamon, The Provenance of the Federal Courts Improvement Act of 1982, 71 Geo. Wash. L. Rev. 543 (2003).

This Court's central accountability function is reflected strongly in its bid protest jurisdiction under the Tucker Act, 28 U.S.C. §1491(b). In bid protest cases, this Court's jurisdiction must be construed in conformity with Congress' directive to the Court to hear suits by "private attorneys general" in order to vindicate "the public interest in preventing the granting of contracts through arbitrary or capricious action . . . [amounting to] illegal activity." Parcel 49C Limited Partnership v. United States, 31 F.3d 1147, 1152 (Fed.Cir. 1994) (quoting Scanwell Lab., Inc. v. Shaffer, 424 F.2d 859, 864 (D.C.Cir. 1970)); accord Delbert Wheeler Construction, Inc. v. United States, 39 Fed.Cl. 239, 244 at n.11 (1997); CC Distributors, Inc. v. United States, 38 Fed.Cl. 771, 776 (1997); Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345, 353 (1997).

With regard to protests brought by small businesses, this Court has emphatically defined its jurisdiction this way: "We believe that Congress, in granting this court

equitable jurisdiction in bid protest cases, sought to protect the integrity of small businesses, . . . as well as the interest of the taxpayers" in the benefits of fair competition. Sterlingwear of Boston v. United States, 11 Cl.Ct. 644, 650 (1986).

In its Complaint, CENTECH pleads the following allegations:

> Count I: The Air Force acted arbitrarily and capriciously and in violation of law when it implemented the GAO's illegal protest decision and recommendation for corrective action which issued without legal jurisdiction or authority[4]
>
> Count II: The Air Force acted arbitrarily and capriciously by complying with the GAO's illegal protest decision and recommendation for corrective action rendered by the GAO in violation of its bid protest rules at 4 C.F.R. § 21.2(a)
>
> Count III. The Air Force arbitrarily and unlawfully withdrew its responsibility determination after it awarded the contract to CENTECH
> Count IV. The Air Force acted arbitrarily and capriciously when it accepted and implemented the GAO's protest decision and recommendation for corrective action despite the absence of any showing by TYBRIN during the protest that it suffered prejudice as a consequence of the Air Force's interpretation of FAR clause 52.219-14
>
> Count V. By its imposition of undisclosed evaluation criteria the Air Force arbitrarily and unlawfully determined that CENTECH lacked responsibility despite having already awarded the contract to CENTECH
>
> Count VI. Without legal authority the Contracting Officer arbitrarily and illegally rescinded CENTECH 's contract and requested that the SBA issue a Certificate of Competency.

The Defendants do not dispute the underlying facts that establish CENTECH's claims. Rather, they dispute the legal effect that the Court should attach to those facts. Therefore, consistent with the Court's holding in Williams v. United States, 71 Fed. Cl. 194 (Ct. Cl. 2006), if the undisputed facts reveal any possible basis on which CENTECH might prevail, the court must deny the Defendants' motions to dismiss.

[4] CENTECH requests leave of the Court to Amend paragraphs 61 and 69 of its Complaint to match its intended allegation that the Air Force, as opposed to the GAO, committed the unlawful and arbitrary acts complained about in Courts I and II. This is consistent with the Header attached to those counts which clearly identify the Air Force as the offending party.

Clearly, several bases exist for the Court to reach legal conclusions different than the conclusions the Defendants would have the Court attach to the undisputed facts. As the record establishes however, both the SBA and Air Force disagreed with the GAO's unlawful intervention into the Air Force's source selection process, and its intrusion to overrule the SBA's Certificate of Competency. The Air Force's initial disagreement and the SBA's ongoing disagreement with the Government, establish that several bases exist for the Court to also disagree with the Government.

In considering Defendants Motions to Dismiss under Rule 12(b)(6), for failure to state a claim upon which relief can be granted, the Court must accept as true all material facts in the complaint, and must draw all reasonable inferences in favor of the Plaintiff. Chapman Law Firm Co., v. United States, __F.3d , 2007 WL 1662323, *2 (2007); La Gloria, 72 Fed. Cl. at 552. Applying this legal standard, there can be no doubt that the Court must deny Defendants' motion to dismiss. As demonstrated, drawing all reasonable inferences in CENTECH's favor, the Court is obviously able to rule in CENTECH's favor.

## B. CENTECH Possesses Standing To Bring This Action

### 1. CENTECH Meets the Article III Constitutional Justiciability Standards of Standing, and Ripeness.

Even though this Court is an Article I tribunal, CENTECH meets the justiciability standards under Article III of the U.S. Constitution. It is well-recognized that a bid protester who meets the Tucker Act requirements also has Article III standing because "the courts have applied disappointed bidder status to meet both Article III injury requirements and zone of interest requirements." CC Distributors, Inc. v. United States, 38 Fed.Cl. 771, 776 (1997) (citing National Federation of Federal Employees v. Cheney,

883 F.2d 1038 (D.C. Cir. 1989), cert. denied, 496 U.S. 936 (1990). Meeting Tucker Act standards also satisfies any prudential ripeness concerns. As the U.S. Supreme Court has acknowledged, "a statutory provision authorizing a particular plaintiff to sue 'eliminates any prudential standing limitations." Max Kidalov and Richard Seamon, The Missing Pieces of the Debate Over Federal Property Rights Legislation, 27 Hastings Const. L.Q. 1, 26, n. 126 (citing Raines v. Byrd, 117 S.Ct. 2312, 2318, n. 3 (1997)). As shown below, CENTECH meets Tucker Act jurisdictional requirements.

CENTECH meets the Constitutional Article III standards because the issues CENTECH alleges in its complaint are "fit" for judicial review and CENTECH would suffer "hardship," or invasion of legally protected interest if this Court refuses to intervene. Id. (citing Abbott Laboratories v. Gardner, 378 U.S. 136, 149 (1967)). Only by ignoring the facts in this case, and misinterpreting the Tucker Act, can the Government justify its argument that CENTECH does not have Constitutional standing, or that CENTECH's claims are unripe or moot.

The Government appears to argue that this case is not fit for judicial review because the new competition is conducted under the same solicitation under which the Air Force awarded CENTECH's its ARDTEAS contract. However, as the Government acknowledges, the new competition is conducted based on an amendment to the original solicitation, RFP Amendment No. 3. "Solicitation means any request to submit offers or quotations to the government." FAR §2.101. Under the Government's view, any contracting officers could easily avoid judicial review simply by putting a solicitation for procurement offers in the form of an "amendment" to another solicitation. Federal procurement law does not recognize such hairsplitting as the Government advocates.

The Government also rhetorically observes that CENTECH cannot object to an award that it has received. This argument is disingenuous and ignores the fact that the Air Force illegally suspends CENTECH's contract performance. Similarly, the Government cannot have it both ways: a bidder's status concerning to the same contract award cannot be both unripe and moot at the same time. The Defendants' arguments ignore that the text of Section 1491 recognizes that a "proposed award" may be properly challenged in this Court.

The material facts in this case are largely undisputed: the Air Force seized on the GAO opinion to secure its opportunity to drive a harder bargain. The hardship to CENTECH is plain -- having to forego the profits and benefits of the contract already awarded and having to compete in yet another competition to reclaim portions of the benefits that it already won. Even if CENTECH wins the re-competition, the terms of the award and the economic benefits to CENTECH will be different because the re-competition involves both technical and price elements. The economic pressure of another competition, and the fact of the Air Force already publicly disclosed the prices in CENTECH's contract, leaves CENTECH no choice but to become an unwilling participant in the Air Force's illegal re-competition, and to offer lower prices knowing that its competitors target the prices in its contract in their efforts to displace CENTECH as the Air Force's ARDTEAS service provider. The consequences of all of this are that CENTECH is forced to forego the benefits of ARDTEAS contract while the Air Force obtains an illegal windfall by its illegal and arbitrary disregard for the SBA's COC process. The mere fact of the Government's wrongful windfall at CENTECH's expense demonstrates why the case is ripe for adjudication, and not moot. The Federal Circuit has

recognized that a contractor whose award is inappropriately cancelled has standing to protest the Government's "ill-gotten gain" and to seek injunctive relief from the cancellation. Parcel 49C Limited Partnership v. United States, 31 F.3d 1147, 1153 (Fed.Cir. 1994) (standing found for contractor bringing a protest after an agency illegally cancelled office space contract because the agency wanted a more socially desirable office location than the contractor would provide after being legally chosen for award).

**2. CENTECH Has Established Its Standing To Bring This Action Under the Tucker Act, 28 USC §1491, and *CENTECH Is An Interested Party" Within the Meaning of the Act***

The Tucker Act, 28 U.S.C. §1491, gives this Court two bases for exercising its bid protest jurisdiction: 1) a claim for the breach of an implied contract to consider bids fairly under Keco Indus., Inc,. v. United States, 203 Ct.Cl. 566 (1974), and 2) the express Congressional grant of equitable and declaratory jurisdiction over pre-award and post-award bid protests. CENTECH is asserting both bases of jurisdiction and has standing to do so since it is an "interested party" within the meaning of the Tucker Act. See American Federation of Government Employees, AFL-CIO v. United States, 258 F.3d 1294 (Fed.Cir. 2001) (addressing express grant of bid protest jurisdiction) and CC Distributors, Inc. v. United States, 38 Fed.Cl. 771, 776 (1997) (applying "interested party" standard to the implied contract claim).

In American Federation of Government Employees, 258 F.3d at 1302, the Federal Circuit found that Congress intended to define an "interested party" for purposes of Tucker Act bid protests in harmony with the Competition in Contracting Act, 31 USC §3551(2), as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."

CENTECH easily meets this standard. CENTECH was an actual bidder selected for award, who would still enjoy the benefits of its contract "but for" the illegal rescission/suspension of its contract by the Air Force, and its pursuit of its illegal re-competition. If CENTECH is successful on the merits, it will have more than a substantial chance of receiving the award as it already holds the Air Force's ARDTEAS contract. Cf. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324 (Fed. Cir. 2001).

CENTECH participated in the Air Force's ARDTEAS source selection and obtained the Air Force's contract. However, the Air Force suspended it and amended the RFP to conduct a re-competition. Because of the Air Force's illegal and arbitrary acts however, it is precluded from performing the contract. These facts standing alone, establish CENTECH's standing to bring this action.

In Overstreet Elec. Co., the Court addressed further the issue of "standing" and the "irreparable injury" a Plaintiff must demonstrate to establish it. The Court stated:

> When assessing irreparable injury, "the relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction." Magellan Corp. v. United States, 27 Fed. Cl. 446, 447 (1993). Plaintiff argues that it will suffer irreparable harm if an injunction is not granted because of the potential loss of valuable business on this contract. ***This type of loss, deriving from a lost opportunity to compete in a fair competitive bidding process for a contract, has been found sufficient to prove irreparable harm.*** See United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312, 323 (1998). The opportunity to compete for a contract and secure any resulting profit has been recognized to constitute significant harm."; Magnavox Elec. Sys. Co. v. United States, 26 Cl. Ct. 1373, 1379 (1992) (same); Bean Dredging, 22 Cl. Ct. at 524 (bidder would be irreparably harmed because it "could recover only bid preparation costs, not lost profits, through an action at law"). ***Moreover, even if plaintiff were to receive the contract as the result of a negotiated procurement, it inevitably would obtain the contract only at a lower price, thereby significantly reducing its potential for profit.*** Accordingly, plaintiff has adequately demonstrated that it will suffer

irreparable harm if injunctive relief is not provided.

The Federal Circuit explained the underpinnings of this standard in Data General Corp. v. Johnson, 78 F.3d 1556 (Fed. Cir. 1996). In that case the Federal Circuit explained: "[***T***]***o establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract."*** Id., n. 24. Here, "but for" the arbitrary and capricious acts by the Air Force that CENTECH complains about, CENTECH would be performing the ARDTEAS contract and realizing all of the profits and benefits the contract has to offer.

To minimize the Court's ability to ever review a federal agency procurement action, the Government self-servingly asserts that 28 U.S.C. § 1491(b)(1) and (b)(2) limit the scope of the Court's review exclusively to claims based on (1) a solicitation; (2) a proposed award; (3) an award; or (4) an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement," and argues that neither is present is the Government's preferred form. See Federal Defendant's Brief at p. 11. However, the Court's jurisdiction is not so artificially hamstrung as to elevate form over clear substance, and as the Government admits, CENTECH does actually allege violations of law and regulation that relate to the Air Force's original ARDTEAS award, the proposed award as a result of Amendment No. 3 to the solicitation, and the Air Force's re-procurement of that contract.

CENTECH does not request the Court to resolve an inter-agency jurisdictional dispute between the GAO and the SBA as the Government asserts. As demonstrated below, the SBA's exclusive legal jurisdiction to determine whether or not a small

business is "responsible" is long and well established. It is precisely because the Contracting Officer illegally ignored her statutory mandate to defer to the SBA in this regard that CENTECH complains about. Although the SBA is obviously harmed by the GAO's intrusion into its area of exclusive jurisdiction and by Air Force's current cheerleading for this intrusion, CENTECH bases its claims squarely on the harm it suffered when the Air Force Contracting Officer determine to violate the law by rejecting SBA's Certificate of Competency. See Federal Defendant's Brief, at p. 12.

The Government's arguments that CENTECH is not aggrieved by the Air Force's illegal acts, and its arguments that "the COC process does not exist for the benefit of small business, but only for the benefit of the Government," see Federal Defendant's Brief at p. 12, are legally unsupported and frivolous. Naturally, these are the views of but one Executive Branch agency which has violated the Small Business Act, not that of the United States Government as a whole, the Congress that wrote the Act, or the Executive Branch agency charged with enforcing it. It is astounding that the Justice Department would go this far to shield illegal contracting practices from the sunshine of judicial review. The SBA refuted these arguments in its Request for Reconsideration to the GAO as follows:

> If an agency makes a de facto nonresponsibility determination (i.e., determines that the offer is unacceptable for reasons relating to responsibility) concerning a small business' ability to meet the subcontracting limitations requirement and does not refer the matter to the SBA, then the small business concern loses a right afforded by statute and regulation.

See Plaintiff's Memorandum in Support of Preliminary Injunctive Relief.

It has long been settled in this Court that small business procurement statutes and regulations are intended to benefit small business contractors, and that small businesses

have standing to bring bid protests alleging their violation. See Parcel 49C Limited Partnership v. United States, 31 F.3d 1147 (Fed.Cir. 1994). This is especially true with regard to the Certificate of Competency provisions. "[T]he legislative history of 637(b)(7), recapitulated by the Court of Claims in Siller Bros., Inc. v. United States, 655 F.2d 1039, 1043-44 (Ct. Cl. 1981) . . . shows that the section was designed to protect small businesses against discrimination by procurement officers, and there is no indication therein that it was designed to protect . . . procurement officers from judicial review of arbitrary actions *against* small businesses." Related Industries, Inc. v. United States, 2 Cl.Ct. 517, 520-521. Tracing the legislative history of the Certificate of Competency provision all the way to 1951, the Court of Claims found that Congress was greatly concerned about the closure of one-sixth of all American small businesses because defense officials refused to award them government contracts during World War II. Siller Bros., Inc. v. United States, 655 F.2d at 1043 (citing H.Rep. No, 639, 82d Cong., 1st Sess. 31.) Congress created the Certificate of Competency process to avoid the same mistake: "Procurement officers would be directed to accept this authorization as conclusive. This provision would give small businesses definite assurance of a fair share of prime contracts." Id.

The holding of the three-judge panel of the Court of Claims in Siller Bros. stands as "binding precedent" for this Court. See Chief Judge Alex Kozinski, U.S. Claims Court, General Order No. 1 (Oct. 7, 1982). The Federal Circuit has not reversed Siler Bros. On the contrary, it confirmed the interpretation of Section 637 as "a protective statute designed to insulate the small business concern from the contracting officer's refusal to follow the SBA decision." Cavalier Clothes, Inc. v. United States, 810 F.2d

1108, 1111 (Fed. Cir. 1987). This is precisely what happened here. The Air Force contracting officer simply chose to disregard the legal mandate to obtain and adopt the SBA's responsibility determination contained in its Certificate of Competency. Instead, it adopted the unlawful "recommendation" of the GAO. Cf. 31 U.S.C. §3554. Accordingly, CENTECH's allegations that the Air Force ignored or subverted the Certificate of Competency statute based on an advisory opinion of the Comptroller General are well within the zone of interests protected by this statute. See United Enterprise & Associates v. United States, 70 Fed.Cl. 1 (2006); cf. Grunley Walsh Intern., LLC v. United States, 2007 WL 2323983 (Fed.Cl.) (reliance on an arbitrary and capricious GAO advisory opinion does not excuse compliance with the binding statute).

**C. CENTECH's Complaint is Not Premature**

The Government asserts that CENTECH cannot establish that it is prejudiced or harmed by the Air Force's rescission of its contract, and its pursuit of a new source selection to replace it. According to the Government, because the Air Force might once again select CENTECH to be its ARDTEAS contractor, CENTECH's complaint is premature and not ripe for adjudication. However, what the Government overlooks is the fact that after the Air Force illegally rescinded and reinstated its contract, the Air Force immediately suspended CENTECH's right to perform the contract and announced that it would solicit proposals in anticipation of awarding a new ARDTEAS contract. Consistent with the Court's holding in Magnavox Elec. Sys. Co. v. United States, these facts provide all the harm necessary for CENTECH to demonstrate its injury in fact, and to establish its standing to assert this action. CENTECH will never be able to recover the profits and benefits of its ARDTEAS contract that it has already lost, and continues to

lose while the illegal re-competition is going on. Therefore, CENTECH's injury is established as is its standing to petition this Court for injunctive relief.

Contrary to the Government's characterizations, CENTECH does not premise its claims on "contingent future events that may not occur…" To the contrary, CENTECH suffers every day because the Air Force continues to preclude it from performing its ARTEAS contract as it pursues a replacement contract, and allows CENTECH's competitor, TYBRIN, Inc. to perform its current ARDTEAS contract requirements in the interim. Therefore, there is nothing "contingent" or speculative about the harm CENTECH sustains and complains about.

This case is easily distinguishable from Bannum, Inc. v. United States, 56 Fed. Cl. 453 (2003). In that case, the contractor, Bannum, complained because the government took too long to award a contract. Therefore, Bannum sought to compel the Bureau of Prisons to award the contract to Bannun. The Count ruled that since Bannum might still be awarded the contract, Bannum's claim for bid preparation costs was unripe. However, CENTECH's claim is vastly different. CENTECH bases its claims on the Air Force's illegal acts which resulted in the suspension of its contract and in the amendment of the solicitation calling for a re-competition. If CENTECH loses the Air Force's re-competition, the Air Force has declared that it will terminate CENTECH's contract. If, on the other hand, CENTECH wins the re-competition, at a minimum the Air Force will modify CENTECH's contract to reflect the lower prices and less favorable terms that CENTECH must offer because the Air Force publicly disclosed the prices in its existing ARDTEAS contract. Therefore, the fact that CENTECH can never realize the profits and other benefits of its existing ARDTEAS contract because of the Air Force's arbitrary,

capricious, and illegal acts, establishes CENTECH's irreparable harm, and its standing to assert this action. See Magnavox Elec. Sys. Co. v. United States, 26 Cl. Ct. 1373, 1379 (1992)).

According to the Government there are only three possible outcomes for the current Air Force bid process: 1) plaintiff could be awarded the contract, (which anticipates a new contract to replace CENTECH's existing contract); 2) another vendor could be awarded the contract, (in which case the Air Force will terminate CENTECH's contract), or 3) the [Government] could decide to cancel the solicitation, (which is always an option). However, regardless of the option that results, one outcome is already certain. CENTECH will not receive the opportunity to perform its existing ARDTEAS contract or the opportunity to realize its benefits because of the arbitrary, capricious, and illegal acts by the Air Force that it complains about. This fact, standing alone, establishes "an actual controversy" related to the Air Force's award of the ARDTEAS contract, CENTECH's standing, and the ripeness of CENTECH's claims to be adjudicated by this Court. See Federal Defendant's Brief at p. 14.

The Government asserts the Court's holdings in Hunt Building Co., Ltd. v. United States, 61 Fed. Cl. 243 (Fed. Cl. 2004), and University Research Co., LLC. v. United States, 65 Fed. Cl. 500, 502 (2005) as support for its arguments that CENTECH's claims are not ripe, and are premature. However, in those the Court actually found the contractors' claims to be ripe. The Government apparently cites the cases to demonstrate its point that the Court rejected the government's ripeness arguments only because the Agency's bid selection process had proceeded further in those cases, than the Air Force did in the present case. However, in this case, the Air Force actually awarded the

contract to CENTECH after it concluded its source selection. In the face of this fact, it is difficult to understand the basis of the Government's argument. In any case, because the Air Force illegally suspends CENTECH's right to perform its ARDTEAS contract, and CENTECH loses contract profits every day, CENTECH's harm resulting from the Air Force's illegal acts hardly presents an "abstract disagreement" of a type that the Federal Courts should avoid.[5]

**D. CENTECH's Complaints About Contract Rescission and Withdrawal of the Responsibility Determination Are Not Mooted by the Air Force's Reinstatement of the Contract.**

The Government cites CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 693 (1999) (citing NEC Corp., 151 F3d. at 1369), for the proposition that the Court will dismiss as moot any challenge to a solicitation and contract award that it cancelled. However, the case not only fails to support the proposition that the Government asserts, in the case the Court expressly states that "a case may not be moot if other consequences of Defendant's actions remain.'" Here, multiple consequences remain due to the Air Force's illegal acts. CENTECH continues to suffer lost profits and benefits under its ARDTEAS contract. "But for" the Air Force's illegal acts, CENTECH would be performing its ARDTEAS contract now. As it stands however, CENTECH is deprived of all of the benefits of its contract because the Air Force illegally determined to disregard the SBA's Certificate of Competency.

It is disingenuous for the government to assert that the Air Force's reinstatement of CENTECH's contract somehow resolves all of CENTECH's claims, when the Air

[5] Moreover, the Tucker Act, 28 U.S.C. § 1491, authorizes this Court to grant declaratory relief, and CENTECH would be pleased to amend its Complaint requesting such a relief should the Court so direct.

Force immediately and illegally suspended CENTECH's right to perform the contract immediately after it reinstated it.

Count VI of CENTECH's Complaint, like Counts I through V, presents an active claim not mooted by any subsequent events or developments. The Air Force illegally rescinded CENTECH's contract. "But for" this illegal act, and the other illegal acts CENTECH complains about, CENTECH would be performing as the Air Force's ARDTEAS contractor today. When the Air Force's Contracting Officer awarded the ARDTEAS contract to CENTECH she determined that CENTECH was "responsible" as a matter of law. She lacked legal authority to reverse her decision, and to rescind CENTECH's contract for that purpose. "But for" this illegal act, no basis would have existed for TYBRIN to attack CENTECH's responsibility, and the GAO would have been without a reason to unlawfully extend its jurisdiction. Therefore, CENTECH would have retained its contract "but for" the Contracting Officer's illegal acts.

Contrary to the inference the Government would have the Court draw, CENTECH never requested the SBA's COC as part of the relief it seeks in this case. Count VI merely highlights another illegal act by the Air Force Contracting Officer that caused the harm that CENTECH complains about and continues to suffer today.

**E. CENTECH Does Not Request the Court to Direct the Award of a Contract.**

In its Complaint CENTECH requests the Court to enjoin the Air Force from expending funds for its ARDTEAS program under any contract other than the contract the Air Force awarded to CENTECH on April 26, 2006. Considering that the Air Force awarded its ARDTEAS contract to CENTECH, and taking into account the Government's assertions that the contract remains in effect, the Government's argument

that the Court lacks authority to direct an award appears misplaced. As demonstrated, CENTECH already holds the contract. Therefore, there is no contract award that is necessary for the Court to direct. CENTECH simply requests the Court direct the Air Force to use its contract already awarded to CENTECH if it determines it necessary to expend funds for that purpose. As the Government acknowledges, 28 U.S.C. § 1491 (b)(1) and (b)(2) expressly empowers the Court to "to render judgment on an action by an interested party objecting to "any alleged violation of statute or regulation in connection with a procurement…" There can be no dispute that CENTECH asserts its claims "in connection with a procurement" as well as with an award and a proposed award. Moreover, this Court regularly exercises its authority to limit an agency's ability to expend its funds as necessary to reverse the consequences and harm caused by its arbitrary and/or illegal acts. Therefore, CENTECH requests exactly the type of relief that this Court is empowered to grant.

**F. This Court's Power to Decide CENTECH's Claims Arises Because the Air Force Acted Illegally In Connection With Its Award of the ARDTEAS Contract, Not Because of Any Characterization That The Air Force Terminated CENTECH's Contract For Its' Convenience.**

As the government acknowledges at page 18 of its Motion to Dismiss, CENTECH does not allege a termination for convenience, and it has not submitted a termination for convenience proposal to the Air Force. Similarly the Air Force has not terminated CENTECH's contract. Nevertheless, as demonstrated, the Court possesses the authority to grant CENTECH the relief it requests under 28 U.S.C. § 1491. Accordingly, because the Air Force's violations of law are clear, the Court must deny Defendants' Motions to Dismiss, and should grant CENTECH the relief it seeks.

## III. CENTECH Does Not Assert Claims Against the GAO, and the Government's Arguments that CENTECH Fails to State a Claim Based on its Allegations Involve the GAO are Irrelevant.

The Government asserts that the Court should strike the factual allegations in CENTECH's complaint related to the GAO's protest decision because the Court does not sit in appellate review of the GAO's decisions. See Federal Defendant's Motion to Dismiss at p. 19. CENTECH does not petition the Court to review the GAO's decision. However, the GAO's decision constitutes a part of the Air Force's administrative record. See Cubic Applications, Inc. v. United States, 37 Fed Cl. 345 (1997). Therefore, the facts surrounding it are relevant to the Court's determination of the legality of the Air Force's actions, and its decision to implement the GAO's "recommendation for corrective action."

## CONCLUSION

WHEREFORE, for the reasons stated, CENTECH respectfully requests that the Court deny Defendants' Motions to Dismiss. In the alternative, CENTECH respectfully requests the Court to grant CENTECH leave to amend its Complaint to afford CENTECH the opportunity to correct any pleading defects that the Court determines to exist in the Complaint.

Dated: September 4, 2007

Respectfully Submitted,

/s/ Kenneth A. Martin

_______________________________

Kenneth A. Martin
THE MARTIN LAW FIRM, PLLC
6723 Whittier Ave., Suite 200
McLean, VA 22101
(703) 918-0350; (703) 918-0386 (fax)
***Counsel for THE CENTECH GROUP, Inc.***

Max V. Kidalov
Vice President & General Counsel
THE CENTECH GROUP, Inc.
4600 North Fairfax Drive, Suite 400
Arlington, VA 22203
(703) 504-2841; (703) 525-2349 (fax)
***Of Counsel to THE CENTECH GROUP, Inc.***