**No. 07-513C**
**(Judge Coster Williams)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**THE CENTECH GROUP, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**TYBRIN, INC.**

**Intervenor.**

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**PETER D. KEISLER**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**DEBORAH A. BYNUM**
**Assistant Director**

**ARLENE PIANKO GRONER**
**Trial Attorney**
**National Courts Section**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit, 8th Floor**
**1100 L Street, NW**
**Washington, D.C. 20530**
**Tel: (202) 307-0162**
**Fax: (202) 305-7643**
**Attorneys for Defendant**

**OF COUNSEL:**

**JOHN G. TERRA**
**Trial Attorney**
**U. S. Air Force Legal Operations Agency**
**Commercial Litigation Division**
**Arlington, Virginia**

**September 11, 2007**

TABLE OF CONTENTS

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. The Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. This Court Lacks Jurisdiction Over This Complaint . . . . . . . . . . . . . . . . . . . . . . . . 3

III. CENTECH Lacks Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. The Complaint Should Be Dismissed As Premature . . . . . . . . . . . . . . . . . . . . . . . 11

V. Response in Opposition to Motion to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

Abbott Laboratories v. Gardner,
387 U.S. 136 (1967) . . . . . . . . . 6

Allied Technology Group, Inc. v. United States,
39 Fed. Cl. 125 (1997),
aff'd, 173 F.3d 435 (Fed. Cir. 1998) . . . . . . . . . 3

Bannum, Inc. v. United States,
56 Fed. Cl. 453 (2003) . . . . . . . . . 7, 8, 11

Brickwood Contractors, Inc. v. United States,
77 Fed. Cl. 624 (2007) . . . . . . . . . 3

CC Distributors, Inc. v. United States,
38 Fed. Cl. 771 (1997) . . . . . . . . . 2, 5

CCL Serv. Corp. v. United States,
43 Fed. Cl. 680 (1999) . . . . . . . . . 11

CW Government Travel, Inc. v. United States,
46 Fed. Cl. 554 (2000) . . . . . . . . . 2, 8, 9, 11

Chapman Law Firm Co. v. United States,
490 F.3d 934 (2007) . . . . . . . . . 7

Data General Corp. v. Johnson,
78 F.3d 1556 (Fed. Cir. 1996) . . . . . . . . . 7

Emerald Coast Finest Produce Co., Inc. v. United States,
76 Fed. Cl. 445 (2007) . . . . . . . . . 13, 14

Grunley Walsh Intern., LLC v. United States,
2007 WL 2323983 (Aug. 13, 2007) . . . . . . . . . 11

Hunt Building Co., LTD v. United States,
61 Fed. Cl. 243 (2004) . . . . . . . . . 4, 12

Magnavox Elec. Sys. Co. v. United States,
26 Ct. Cl. 1373 (1992), overruled by
Motorola, Inc. v. United States,

988 F.2d 113 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

National Federation of Federal Employees v. Cheney,
883 F.2d 1038 (D.C. Cir. 1989),
cert. denied, 496 U.S. 936 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Overstreet Elec. Co., Inc. v. United States,
47 Fed. Cl. 728 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Parcel 49C Ltd. Partnership v. United States,
31 F.3d 1147 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Raines v. Byrd,
521 U.S. 811 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

University Research Co., LLC v. United States,
65 Fed. Cl. 500 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

STATUTES

28 U.S.C. §1491(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

41 U.S.C. § 605(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THE CENTECH GROUP, INC.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 07-513C** |
| | ) | **(Judge Coster Williams)** |
| **THE UNITED STATES,** | ) | |
| **Defendant,** | ) | |
| **and** | ) | |
| **TYBRIN, INC.** | ) | |
| **Intervenor.** | ) | |

**DEFENDANT'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant, the United States, hereby replies to the September 4, 2007 opposition of plaintiff, THE CENTECH GROUP, Inc., to our motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted ("Response"). For the convenience of the Court and the parties, we use the same abbreviations here as in our motion to dismiss.

**SUMMARY OF ARGUMENT**

This Court lacks jurisdiction to enjoin the Air Force from expending funds for its ARDTEAS program under any contract other than the one awarded to CENTECH on April 28, 2006. CENTECH has not properly invoked this Court's jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor. 28 U.S.C. § 1491(a)(2). As the awardee of a suspended contract, CENTECH is not a disappointed bidder. It is required to raise contract administration complaints, including disputes concerning suspension, modification or termination, pursuant to the CDA, 41 U.S.C. § 609, before filing a complaint in this Court.

CENTECH also lacks standing as a prospective bidder. CENTECH's claims are premised upon the occurrence of a future event that is uncertain (i.e., the award of the contract to another bidder), and thus is not fit for judicial determination. Moreover, it is too late for CENTECH to raise objections to the facial terms of the amended solicitation. CENTECH will achieve the result it seeks here if the Air Force selects CENTECH's proposal as offering the best value. If another proposal is determined to offer the best value, the Air Force will terminate CENTECH's contract and CENTECH will then have the opportunity to make a claim under the CDA and/or file a protest in this Court as a disappointed bidder.

Finally, the complaint should be dismissed because this Court cannot award a contract, review decisions of the GAO, or resolve inter-agency disputes.

## ARGUMENT

### I. THE STANDARD OF REVIEW

The parties do not disagree that, when considering a motion to dismiss for lack of jurisdiction, the Court must accept as true the complaint's ***undisputed*** allegations of fact and construe the facts in the light most favorable to the plaintiff. However, in this case, where there are material ***disputed*** jurisdictional facts, CENTECH cannot rest solely upon presumptions. As this Court explained in CC Distributors, Inc. v. United States, 38 Fed. Cl. 771, 774 (1997), "[w]hen considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. . . . The court is required to decide any disputed facts which are relevant to the issue of jurisdiction." Thus, the Court may look beyond the complaint to determine jurisdictional facts. CW Government Travel, Inc. v. United States, 46 Fed. Cl. 554, 556 (2000). While we did not cite to

the administrative record in our motion to dismiss and relied solely upon the pleadings, the Court may consider the administrative record to determine whether it has jurisdiction over this case.

## II. THIS COURT LACKS JURISDICTION OVER THIS COMPLAINT

CENTECH failed to satisfy its burden of establishing this Court's jurisdiction over its complaint by a preponderance of the evidence. See id.

The Tucker Act provides that this Court shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the CDA, including disputes concerning suspension, modification or termination of a contract. 28 U.S.C. § 1491(a)(2). As we already established in our opening brief at page 18, as the successful bidder that was awarded the suspended contract, CENTECH had to raise its contract administration complaints pursuant to the CDA. CENTECH cannot invoke this Court's jurisdiction here having failed to submit a claim to the contracting officer. 41 U.S.C. § 605(a). See Brickwood Contractors, Inc. v. United States, 77 Fed. Cl. 624, 627 (2007). The cases CENTECH cites in its responsive brief at pages 5-6, establishing jurisdiction over complaints by *unsuccessful* bidders are irrelevant because CENTECH was the *successful* bidder that was awarded the contract.

Nor can CENTECH establish jurisdiction based upon its status as a prospective offeror in the pending resolicitation. It is too late for CENTECH to raise objections to the facial terms of the pending resolicitation, see Allied Technology Group, Inc. v. United States, 39 Fed. Cl. 125, 146 (1997), aff'd, 173 F.3d 435 (Fed. Cir. 1998)(table), and it is premature for CENTECH to challenge an award that has not yet been made. Thus, CENTECH's response is misleading in suggesting that "a bidder's status concerning the same contract award cannot be both unripe and moot at the same time." Response at 11. Contract administration issues including contract

suspension, amendment and termination must be raised pursuant to the CDA,[1] while a challenge to the award to the pending resolicitation is in fact unripe.

CENTECH's responsive brief is full of quotes from cases but contains little analysis connecting the law to the facts. For example, in its response at page 6, CENTECH quotes extensively from Hunt Building Co., LTD v. United States, 61 Fed. Cl. 243 (2004), but fails to address the fact that the remedy the Court ordered in that case is exactly what the Air Force decided to do in this case. In Hunt, the Court enjoined the Air Force from closing the transaction with one bidder until it accorded all offerors the opportunity to submit final revised proposals for re-evaluation so that one bidder would not enjoy an undue advantage in the recompetition. Id. at 281.

Nor is it relevant to jurisdiction that CENTECH is a small business. See Response at 7-8. Indeed, the original solicitation was a total small business set aside, Ex. 14 at 2, and only the four original small business offerors have been allowed to submit revised proposals. AR19889. Congress' interests in assisting small businesses and in obtaining the benefits of fair competition, discussed in the response at pages 7-8, will be best satisfied by allowing the continuing solicitation to be completed and an award made to the small business offeror that offers the best value to the Air Force.

Finally, CENTECH argues that the Court must deny our motion to dismiss because the record establishes several bases for the Court to reach different legal conclusions. Response at 8-9. CENTECH cites the facts that the Air Force and the SBA initially disagreed about the interpretation of the Limitation of Subcontracting, FAR Clause 52.219-14, and the continued

[1] CENTECH acknowledges in its response at 22 that it has not submitted a termination for convenience proposal to the Air Force.

disagreement between the SBA and the GAO with respect to whether CENTECH's proposal was unacceptable. As we demonstrated in our opening brief at pages 12 and 21, these disagreements are not subject to resolution by this Court. This Court lacks jurisdiction to determine whether the GAO unlawfully intervened in the Air Force's source selection process, as CENTECH alleges in its responsive brief. Response at 9. Nor can this Court address the GAO's alleged "intrusion to overrule the SBA's Certificate of Competency." Indeed, CENTECH appears to recognize this deficiency in its complaint by requesting leave to amend the complaint to identify the Air Force, rather than the GAO, as the "offending party." Response at 8 n.4.[2]

## III. CENTECH LACKS STANDING

As we previously established in our opening brief, CENTECH lacks standing to object to its own contract award or to ask this Court to resolve an inter-agency jurisdictional dispute between the GAO and the SBA. Motion at 11-12, 21.

In its responsive brief, CENTECH relies upon CC Distributors, 38 Fed. Cl. at 776, to claim standing as a "disappointed bidder." Response at 9-10. As explained above, it cannot be determined whether CENTECH will be a "disappointed bidder" until after the Air Force makes an award in the continuing resolicitation. Indeed, another case CENTECH cites, National Federation of Federal Employees v. Cheney, 883 F.2d 1038, 1053 (D.C.Cir. 1989), cert. denied, 496 U.S. 936 (1990), makes clear that disappointed bidder standing ends once the solicitation and award process is complete, and that the Tucker Act accords no right to challenge contract

---

[2] In its brief at page 23, CENTECH states that it does not petition the Court to review the GAO decision. We agree that the GAO Decision is relevant and belongs in the administrative record. However, as we previously explained in our opening brief at pages 19-22, even if the Court asserts jurisdiction over the complaint, it should dismiss portions of Paragraphs 22-25, 28, 41-57, 60, 66-69, 85, 87-89 of the complaint, and the Prayer for Relief at 20 that address the GAO decision for failure to state a claim for which relief can be granted.

administration. While we do not dispute that CENTECH was an “actual bidder,” as a contractor whose contract has been suspended, it was not a “disappointed bidder.” Response at 13.

Raines v. Byrd, 521 U.S. 811 (1997), relied upon by CENTECH, does not authorize a plaintiff to sue under these circumstances. Response at 10. In that case, the Court dismissed for lack of jurisdiction a Constitutional challenge by individual members of Congress to the line item veto upon the grounds that they did not have a sufficient personal stake and did not allege a sufficient concrete injury. In Abbott Laboratories v. Gardner, 387 U.S. 136, 152-54 (1967), also cited by CENTECH, the Court allowed a pre-enforcement challenge to regulations to proceed because the impact of the regulations was direct and immediate and the plaintiff faced criminal sanctions for non-compliance. Response at 10. CENTECH has not shown any such direct and immediate harm in this case.

CENTECH now alleges standing upon the new grounds that the suspension and corrective action “deprive[d] it of its right to perform its contract, and its ability to realize the profits and benefits that the contract has to offer.” Response at 2. CENTECH claims that “but for” the suspension, it would be performing its contract and realizing all the profits and benefits the contract has to offer. Id. at 14. It also asserts that it will be aggrieved even if its proposal is selected in the pending amended solicitation, upon the grounds that it will either receive a new contract or its existing contract will be substantially modified. Id. at 2. As these new allegations concern contract administration for which relief is only available pursuant to the CDA, CENTECH lacks standing to raise them and this Court lacks jurisidiction to resolve them.

CENTECH also argues for the first time that “the Air Force seized on the GAO opinion to secure its opportunity to drive a harder bargain.” Response at 11. CENTECH claims that because the Air Force already publicly disclosed the prices in its contract, it will need to offer

lower prices in the re-competition. Id. CENTECH further alleges that it suffered hardship from the loss of profits during the suspension of its contract. Id. These allegations are inconsistent with the RFP, which did not solicit a fixed price contract. Ex. 14 at 2. Rather, it provided for the award of a hybrid contract on a cost-plus-fixed-fee basis for the non-personnel and assistance advisory services, and a cost basis for other direct costs.[3] Id. CENTECH's original proposal was not determined the best value for the Air Force on the basis of price. Ex. 1 at 7-8. It is CENTECH's choice whether to change the price in its revised proposal. While, disclosure of prices can be an unfortunate result of corrective action,[4] there is no reason for the Court to conclude that the Air Force is misusing the resolicitation to "drive a harder bargain." Rather, the Court is "required to assume that the Government would carry out the corrective action in good faith." Chapman Law Firm Co. v. United States, 490 F.3d 934, 940 (2007); see also Bannum, Inc. v. United States, 56 Fed. Cl. 453, 458 (2003) (presumption of good faith).

CENTECH relies upon Parcel 49C Ltd. Partnership v. United States, 31 F.3d 1147 (Fed. Cir. 1994), for the proposition that a contractor had standing to challenge the illegal cancellation of an award. Response at 12. That is not accurate. The Court there enjoined the cancellation of a solicitation after an offer had been selected but before the award had been made upon a finding that the justification for the cancellation was "pretextual and incredible." Id. at 1151. No such

---

[3] During the short phase-in period, the RFP provided that the contract would be fixed price plus award fee. Ex. 14 at 2.

[4] In Data General Corp. v. Johnson, 78 F.3d 1556, 1563 (Fed. Cir. 1996), the Federal Circuit affirmed the dismissal of a protest despite the fact that the Government had disclosed prices. The Court found that prejudice had not been established where an unsupported assertion in a brief that the protestor had an incentive to lower its price was inconsistent with the record evidence that the bidder had pursued a strategy of providing higher performance at a higher cost. Here too, CENTECH's strategy of pursuing quality over price was successful in the original solicitation. Ex. 1 at 7-8.

abuse occurred here. The solicitation was not cancelled, see AR19914 (contract suspended indefinitely on May 11, 2007);[5] the suspension was subject to the ordinary contract administration procedures; and the resolicitation was the very action recommended by the GAO, AR19796, so that the Air Force could obtain revised proposals from all offerors and then could reopen discussions after reviewing them. AR19889. Indeed, the corrective action the Air Force took in this case is consonant with the relief ordered in Parcel 49C. As the Court explained there, "[t]he Government retains the power to proceed with its award process or to terminate the award process for any legal reason." 31 F.3d at 1154. Contrary to the relief requested here,[6] the Court did not direct the award to a particular bidder. Id.

CENTECH cites Overstreet Elec. Co., Inc. v. United States, 47 Fed. Cl. 728, 744 (2000), and Magnavox Elec. Sys. Co. v. United States, 26 Ct. Cl. 1373, 1379 (1992), overruled on other grounds by Motorola, Inc. v. United States, 988 F.2d 113 (1993), for the proposition that loss of an opportunity to compete for a contract constitutes irreparable harm. Response at 13, 19. The issue of irreparable harm is not relevant to our motion to dismiss. If the Court denies our motion to dismiss, we will address all four criteria for an injunction, see Bannum, 56 Fed. Cl. at 456, in

---

[5] The Contracting Officer relied upon FAR 33.104(c)(1) as the authority for both the January 3 and the May 11, 2007 suspensions, which was an extension of the original suspension. AR17360.

[6] In its responsive brief at 21-22, CENTECH asserts that it does not request the Court to direct the award of a contract. We demonstrated in our opening brief at page 17 that this Court does not have the authority to direct the contract award to CENTECH. See also Bannum, 56 Fed. Cl. at 459; CW Government, 46 Fed. Cl. at 559. While CENTECH now characterizes the relief it seeks as merely directing the Air Force to use the contract that it already awarded to CENTECH, responsive brief at page 22, the result is the same. The Court would be substituting its judgment for that of the Air Force and precluding the Air Force from obtaining revised proposals and reopening discussions after reviewing them. It would also deny the Air Force and the offerors the opportunity to update their proposals, and bring them into compliance with current regulations and the new projected period of performance.

our motion for judgment upon the administrative record. The Court will then need to determine whether CENTECH will suffer irreparable harm in the absence of an injunction after determining its likelihood of success on the merits. Overstreet, 47 Fed. Cl. at 743. For the purpose of this motion, however, it is sufficient to note that CENTECH has not lost the opportunity to compete for a contract in a fair competitive bidding process. That process is continuing. As this Court explained in CW Government, "[i]n withdrawing the RFP and re-opening the procurement, the Navy has provided the best remedy for Carlson's concerns that could be provided by this court. . . . Defendant's cancellation of the solicitation, far from indicating 'bad faith,' as plaintiff alleges, represents a commendable and salutary government willingness to accomodate the concerns of plaintiff (and perhaps other potential bidders). . . . Should the new solicitation *not* satisfactorily address plaintiff's (or others') concerns, plaintiff (and others) may, of course, challenge the new solicitation." 46 Fed. Cl. at 559.

Nor is there any reason to believe at this time that a contract awarded to CENTECH in the resolicitation will provide it less potential for profit. In any event, CENTECH has the opportunity to submit a proposal that is just as profitable and will have the opportunity to challenge the award if another bidder is chosen.

CENTECH now claims that it is not requesting the Court to resolve an inter-agency jurisdictional dispute between the GAO and the SBA, but is simply asking the Court to find that the Air Force violated the law by rejecting the SBA's Certificate of Competency. Response at 14-15, 17. As we demonstrated in our opening brief at pages 12-13, that did not happen. The SBA made a responsibility determination when it issued the COC. The Air Force did not disregard this responsibility determination, but found CENTECH's proposal facially

unacceptable and deficient for failing to comply with a material term of the RFP – the subcontracting limitation.

Amendment No. 3 allowed all four offerors the opportunity to revise their proposals in response to the corrected interpretation of the Limitation on Subcontracting Clause (FAR 52.219-14). It provided for the reopening of discussions with offerors as a result of this material change. It also updated contract clauses and allowed offerors to revise their pricing. AR19807-29. In a Memorandum for Record, AR19889-94, issued the same day as Amendment No. 3, the Air Force explained its basis for this corrective action. The Air Force noted that the GAO decision had sustained TYBRIN's protest on the issue of the acceptability of CENTECH's offer and recommended that the Air Force request revised proposals and reopen discussions after reviewing them. AR19889. The Air Force decided to issue Amendment No. 3 as a vehicle to reopen those discussions. Id. Thus, the two offerors that had relied upon the Policy Memorandum were given the opportunity to restructure their proposals to bring them into compliance with FAR 52.219-14.[7] Id. In light of the passage of time and change in policy, and to treat all offerors equally, all offerors were given the opportunity to update their proposals. AR19890. On July 18, 2007, the Air Force issued Amendment No. 4 to provide the current contract security classification specification and make other non-material changes.

Thus, despite its disavowal, CENTECH is in fact asking this Court to overturn the recommendation of the GAO and the decision of the Air Force and adopt instead the position of

---

[7] The Air Force allowed all four offerors in the competitive range, see AR19907, to update their proposals to accommodate a level playing field and produce the best, most current contract. AR19918. The other alternatives that the Air Force considered and rejected were allowing narrow proposal changes or restarting the source selection process. AR19917. The Air Force determined that allowing all offerors in the competitive range to revise their proposals was not only the most fair option but also addressed the passage of time. AR19898.

the SBA on the issue of the acceptability of CENTECH's original proposal. Unlike Grunley Walsh Intern., LLC v. United States, 2007 WL 2323983 *10 (Aug. 13, 2007), where the Court ordered the State Department to reinstate bidders so they could compete for contract awards, here CENTECH already has that right. Instead, it is asking the Court to enjoin the Air Force from expending funds for its ARDTEAS program under any contract other than the one awarded to CENTECH on April 28, 2006. Because there is no risk in this case that the Air Force's ultimate award will be insulated from judicial review, the Court should grant this motion to dismiss.

## IV. THE COMPLAINT SHOULD BE DISMISSED AS PREMATURE

We have already established that the complaint is premature because CENTECH's proposal might be the one selected. Motion at 13-15; see Bannum, 56 Fed. Cl. at 462 (complaint dismissed as not ripe where competitive process was ongoing).

In its responsive brief at page 18, CENTECH attempts to distinguish Bannum upon the grounds that it will never realize the profits and other benefits of its existing contract. As we have already explained, CENTECH's contentions about rescission, reinstatement and suspension of its contract concern contract administration. Response at 17-18.[8] To the extent that CENTECH has lost profits and benefits under its contract, redress must be sought pursuant to the

[8] We previously showed, Motion at 15-16, that CENTECH's complaints about the rescission of its contract are moot because the contract was reinstated and CENTECH still holds the ARDTEAS contract. In its Response at 20-21, CENTECH attempts to distinguish CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 693 (1999), upon which we relied, upon the grounds that a case may not be moot if other consequences remain. We have already shown that the consequences CENTECH alleges are either non-jurisdictional matters of contract administration, for which the CDA provides the exclusive remedy, or speculative and premature. Thus, this case is similar to CW Government, 46 Fed. Cl. at 560, where a pre-award bid protest was dismissed as moot because the solicitation was cancelled.

CDA, not the Tucker Act. These contentions are irrelevant to the issue of the ripeness of its allegations about the pending corrective action.

Moreover, CENTECH has discretion to set the terms of its revised proposal. If CENTECH wins the resolicitation, it will be CENTECH, not the Air Force, that will have determined whether the revised contract will be less profitable than its original contract. If another offer is chosen, CENTECH will have standing to sue as a disappointed bidder and the Court will have jurisdiction to hear its ripe complaint.

In its responsive brief, CENTECH faults our motion for citing two cases where the contractors' claims were found to be ripe. Response at 19-20. There is nothing surprising about our citation of Hunt Building Co., Ltd. v. United States, 61 Fed. Cl. 243 (Fed. Cl. 2004), and University Research Co., LLC v. United States, 65 Fed. Cl. 500, 502 (2005). As we demonstrated in our opening brief at page 15, the lack of concrete controversy in this case "is revealed by a comparison to cases in which the plaintiff was entitled to pre-award injunctive relief." In this case, the complaint should be dismissed because CENTECH's complaints about the continuing resolicitation are premature and its complaints about the administration of its contract must be brought under the CDA.

## V. RESPONSE IN OPPOSITION TO MOTION TO AMEND

CENTECH, in its responsive brief, presents new allegations, which we dispute. CENTECH now claims that it objects to the amended solicitation, Response at 1, despite the fact that the amended solicitation was not mentioned in the complaint or attached as an exhibit to its memorandum in support of its motion for preliminary and injunctive relief. Indeed, CENTECH's first reference to the amended solicitation, id. at 1, and, its first allegation that the Air Force illegally suspended its contract performance, is contained in its responsive brief. Id. at

11. As we demonstrated in our opening brief at page 16, the complaint alleged injury from its "loss" of the contract, Compl. ¶ 61; see also ¶¶ 69, 76, 90, 97, 103, Prayer for Relief at 19, which we showed did not occur.

The Court should deny CENTECH's alternative request for leave to amend its complaint to correct any pleading defects the Court determines to exist. Response at 24; see also Response at 8 n.4 (CENTECH seeks leave to amend Compl. ¶¶ 61 and 69 to address our showing, Motion at 21, that the complaint's allegations about the GAO fails to state a claim upon which relief ), and Response at 20 n.5 (CENTECH states that it would be pleased to amend its complaint to request declaratory relief if the Court should so direct). These requests are procedurally defective because they are not made by motion pursuant to RCFC Rule 7(b), and CENTECH has not filed a proposed amended complaint for the Court to review. See Emerald Coast Finest Produce Co., Inc. v. United States, 76 Fed. Cl. 445, 451 (2007) ("In order to determine whether or not to grant plaintiff's motion to amend, the court first reviews the amended complaint."). RCFC Rule 15(a) permits amendments to a complaint after a responsive pleading has been served only by leave of Court or by written consent of the adverse party.

Having addressed the allegations in the complaint in our motion to dismiss, we would be prejudiced by having to respond to other claims. The three other offerors would be prejudiced as well. Had CENTECH made timely objections to RFP Amendment No. 3, the Air Force could have considered those objections and made whatever corrections it deemed appropriate. Instead, the three other offerors incurred the burden and expense of updating their original proposals in response to RFP Amendment No. 3, and the Air Force is in the process of evaluating all the proposals that were submitted in response to it.

Moreover, because the new allegations about contract suspension relate to contract performance, the amendment would be futile because such a claim must be pursued under the CDA. See Emerald Coast, 76 Fed Cl. at 450 (leave to amend may be denied for "futility of amendment"). See Motion at 17-19. When the proposed amendment concerns facts alleged to have occurred after the award of a contract, the proposed amendment would be futile because issues of contract performance are not within the scope of Tucker Act jurisdiction. Emerald Coast, 76 Fed Cl. at 452.

CENTECH also disregarded the Court's rules with respect to its Statement of Facts. RCFC Rule 5.2(b)(3) prohibits incorporation by reference, and states that "any such incorporation will be disregarded." Because Rule 5.2(a)(2) permitted CENTECH to omit a statement of facts "unless the party is dissatisfied with the presentation by the other side," the Court should treat our statement of facts as undisputed.

**CONCLUSION**

For the reasons stated, we respectfully request that the Court dismiss CENTECH's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Deborah A. Bynum

DEBORAH A. BYNUM
Assistant Director

/s/ Arlene Pianko Groner

OF COUNSEL:

JOHN G. TERRA
Trial Attorney
U. S. Air Force Legal Operations Agency
Commercial Litigation Division
Arlington, Virginia

ARLENE PIANKO GRONER
Trial Attorney
National Courts Section
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 307-0162
Fax: (202) 305-7643
Attorneys for Defendant

September 11, 2007

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September 2007, "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Arlene Pianko Groner
ARLENE PIANKO GRONER