AGREED UPON REDACTIONS - MAY BE MADE PUBLIC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**BID PROTEST**

| | |
|---|---|
| CENTECH GROUP, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant,<br><br>and<br><br>TYBRIN CORPORATION<br><br>Intervenor-Defendant. | CFC No. 07-513C<br><br>Judge Mary Ellen Coster Williams<br><br>~~FILED UNDER SEAL~~<br>Proposed Redacted Version for Public Release |

**TYBRIN'S REPLY TO CENTECH'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for TYBRIN Corporation*

*Of Counsel*:
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC

Dated: September 12, 2007

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... iii

ARGUMENT .......... 2

I. AMENDMENT 3 IS NOT RESTRICTED TO THE LIMITATION ON SUBCONTRACTING ISSUE ADDRESSED IN THE GAO OPINION .......... 2

A. Amendment 3 Requires New Proposals and New Evaluations .......... 2

B. Air Force Corrective Action Addresses the TYBRIN Bias Protest .......... 3

C. The Agency Corrective Action Addresses TYBRIN's OCI Protest Ground .......... 4

D. The Agency's Corrective Action Documents Explain Why the Agency Could Not Adopt the Relief Requested by CENTECH .......... 4

E. Amendment 3 Addresses Other Changes .......... 6

II. CENTECH FAILS TO RESPOND TO THE AIR FORCE AND TYBRIN STATEMENTS OF FACT AND IMPROPERLY INCORPORATES BY REFERENCE CENTECH'S MEMORANDUM .......... 7

III. CENTECH'S COMPLAINT IS PREMATURE .......... 8

IV. CENTECH FAILED TO ALLEGE A MANDATORY PROTEST ELEMENT .......... 11

V. THE COURT LACKS JURISDICTION OVER CENTECH'S CHALLENGE TO THE AIR FORCE'S CONTRACT "CANCELLATION" OR "SUSPENSION" .......... 11

A. There Has Been No Contract Cancellation .......... 12

B. The Court Lacks Jurisdiction Over the Air Force's Determination to Suspend Contract Performance .......... 13

VI. CENTECH FAILS TO PLEAD A JUSTICIABLE CLAIM .......... 13

A. This Court Does Not Review Agency Corrective Action that is Reasonable on its Face .......... 14



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

B. CENTECH Ignores Adverse Precedent on the Subcontracting Limitation Issue ..... 14

C. CENTECH Has No Valid Claim to Performance of the ARDTEAS Contract ..... 15

VII. THE COURT LACKS JURISDICTION OVER CENTECH CLAIMS THAT GAO ACTED ILLEGALLY ..... 16

CONCLUSION ..... 17



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Cases**

Advance Constr. Servs, Inc. v. United States,
51 Fed. Cl. 362 (2002) ..... 16

Bannum, Inc. v. United States,
56 Fed. Cl. 453 (2003) ..... 9

Chapman v. United States,
490 F.3d 934 (Fed. Cir. 2007) ..... 2, 6

Clearwater Instrumentation, Inc.,
B-286454.2, September 12, 2001, 2001 CPD ¶ 151 ..... 8

Data Monitor Sys., Inc. v. United States,
74 Fed. Cl. 66 (2006) ..... 14

Eli Lilly and Co. v. American Cyanamid Co.,
82 F.3d 1568 (Fed. Cir. 1996) ..... 10

Foundation Health Fed. Servs. v. United States,
No. 93-1717, 1993 U.S. Dist. LEXIS 20069, at *7 (D.D.C. September 23, 1993) ..... 10

Griffy's Landscape Maintenance LLC v. United States,
51 Fed. Cl. 667 (2001) ..... 8, 11, 12

Grunley Walsh Int'l, LLC v. United States,
No. 07-492, 2007 U.S. Claims LEXIS 262 (Fed. Cl. August 3, 2007) ..... 14

Hunt Bldg Co., Ltd. v. United States,
61 Fed. Cl. 243 (Fed. Cl. 2004) ..... 10

Logan Canyon Cattle Ass'n v. United States,
34 Fed. Cl. 165 (1995) ..... 13

Magnavox Elec. Sys. Co. v. United States
26 Cl. Ct. 1373 (1992) ..... 9

Minor Metals, Inc. v. United States,
38 Fed. Cl. 379 (1997) ..... 10

Novar Health Servs.,
B-286253.2-.4, December 8, 2000, 2000 CPD ¶ 204 ..... 8



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Parcel 49C Ltd. Partnership v. United States,
31 F.3d 1147 (Fed. Cir. 1994) .......... 12

Rig Masters, Inc. v. United States,
42 Fed. Cl. 369 (1998) .......... 13

Siller Bros., Inc. v. United States,
655 F.2d 1039 (Ct. Cl. 1981) .......... 15

Spectrum Security Servs., Inc.,
B-297320.2-.3, December 29, 2005, 2005 CPD ¶ 227 .......... 15

Transatlantic Lines, LLC v. United States,
68 Fed. Cl. 48 (2005) .......... 11, 15

United States v. King,
395 U.S. 1 (1969) .......... 13

University Research Co., LLC v. United States,
65 Fed. Cl. 500 (2005) .......... 10

Zenith Radio Corp. v. United States,
710 F.2d 806 (Fed. Cir. 1983) .......... 10

**Statutes**

10 U.S.C. § 2305 .......... 2
41 U.S.C § 605(a) .......... 11
41 U.S.C. § 605 .......... 13
5 U.S.C. § 704 .......... 8

**Regulations**

FAR 15.306 .......... 2
FAR 52.219-14 .......... 5, 14

**Other Authorities**

RCFC Rule 5.2(b)(3) .......... 7
RCFC Rule 5.2(a)(2) .......... 7



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED UPON – ~~Proposed~~ Redacted Version for Public Release

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Washington, D.C.

BID PROTEST

| | |
|---|---|
| CENTECH GROUP, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant,<br><br>and<br><br>TYBRIN CORPORATION<br><br>Intervenor-Defendant. | CFC No. 07-513C<br><br>Judge Mary Ellen Coster Williams<br><br>~~FILED UNDER SEAL~~ |

**TYBRIN'S REPLY TO CENTECH'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

CENTECH Group, Inc. ("CENTECH") seeks to perpetuate the initial flawed award, even though it is buttressed with new information CENTECH provided to the Small Business Administration ("SBA") after the due date for Final Proposal Revisions ("FPR") that modifies CENTECH's proposal and would have resulted in downgrading of its technical proposal. CENTECH's solution is to apply a band-aid. Not only is that approach improper; the initial award was also plagued by irregularities, including bias against TYBRIN Corporation ("TYBRIN") of the agency Program Manager, who held an unusual number of critical procurement positions. TYBRIN August 13, 2007 Motion to Dismiss ("TYBRIN Motion") at 4, 12. In Amendment 3 to the solicitation, the Air Force properly sought to cure issues

relating to subcontracting limitation, bias, Organizational Conflicts of Interest ("OCI") and changes to the agency's needs.

To uphold the award to CENTECH would condone favoritism and unequal treatment. As the Federal Circuit has recently recognized, agency corrective action that permits discussions and a change to an offeror's proposal cannot be conducted with the initial awardee only; discussions must be conducted with all offerors in the competitive range. Chapman v. United States, 490 F.3d 934 (Fed. Cir. 2007).

## ARGUMENT

### I. AMENDMENT 3 IS NOT RESTRICTED TO THE LIMITATION ON SUBCONTRACTING ISSUE ADDRESSED IN THE GAO OPINION

In addition to the limitation on subcontracting issue, Solicitation Amendment 3 also takes corrective action with regard to the bias and OCI issues raised in the TYBRIN protests and changes that have occurred based on customer needs. Those grounds of protest remain viable unless resolved now through agency corrective action. Amendment 3 implements GAO's recommendation (and the statutory and regulatory mandates regarding discussions) to reopen discussions with all offerors. AR, Tab 258). Chapman v. United States, supra; FAR 15.306; 10 U.S.C. § 2305. These are reasonable and rational corrective action measures.

#### A. Amendment 3 Requires New Proposals and New Evaluations

Amendment 3 requests new proposals, including technical, cost and past performance submissions. AR, Tab 258 at 19808, 19828, see also AR, Tab 257 at 19803(¶ 2); AR, Tab 265 at 19895 (¶ 1c). The evaluation resulting from these actions will be completely new and will not rely on source selection documents from the original evaluation and award protested by TYBRIN. AR, Tab 264 at 19889-90; AR, Tab 257 at 19803 (¶1).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**B. Air Force Corrective Action Addresses the TYBRIN Bias Protest**

The agency corrective action specifically addressed the TYBRIN bias issue by replacing the evaluation team. AR, Tab 264 at 19889; see also AR, Tab 257 at 19803 (¶ 1). "The new teams will not have access to the previous proposals nor the former evaluations conducted." AR, Tab 257 at 19803.

The Air Force's June 29, 2007 memorandum states:

> 2. ***One of the primary points of the protest alleged that there was bias on the part of a senior member of the original Source Selection Evaluation Team (SSET) and that this person took on too many roles in the source selection which resulted in an unfair evaluation.*** During the course of the original evaluation process, several members of the SSET succumbed to health problems or had other issues that resulted in them being released from the team or roles significantly reduced with no replacements appointed. Since the original award, the rest of the original SSET members have either retired, transferred to a different location, or also have had serious health issues that preclude them from continued participation.
>
> > ***In response to these issues, an entirely new SSET has been appointed*** to include the SSET Chairperson and the Contracting Officer. Several other positions have been added: a contract specialist, a secretariat, 2 additional members to the Mission Capability team to ensure all 5 major customers are equally represented, and multiple advisors to the cost/price and contracts teams. In addition, most of the membership of the Source Selection Advisory Council (SSAC) to include the chairman is also new due to similar attrition reasons, and the current Source Selection Authority (SSA) was recently appointed and is advised by several staff members who were not involved before, along with a few who were formerly involved.
> >
> > ***The new team will conduct a completely new evaluation on the revised proposals. The new evaluators will not have access to the original proposals nor the original evaluations. This environment will ensure there is no continuation of any perception of former bias and no***



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> ***duplication of responsibilities. The checks and balances that normally exist in the Air Force source selection process will continue through award.***

AR, Tab 264 at 19889. (emphasis added).

**C. The Agency Corrective Action Addresses TYBRIN's OCI Protest Ground**

Also in response to TYBRIN protest grounds, the Air Force's June 29, 2007 memorandum requests complete organizational conflict of interest mitigation plans and states "we recognize that subcontractors are willing to divorce themselves, where necessary, from current contractual arrangements to be an ARDTEAS, player with the prime contractor discussing the subcontractors in their organizational conflict of interest mitigation plans." AR, Tab 257 at 19804 (¶ 2b). The Air Force's June 29, 2007 memorandum also states "offerors must submit evidence of a firm commitment from the subcontractors they propose or for a subcontractor asset." AR, Tab 257 at 19803 (¶ 2b). This action directly addresses TYBRIN protest grounds that the Air Force failed to properly evaluate OCI mitigation plans, that the CENTECH plan did not address [redacted] OCI issues and that CENTECH was unduly reliant on [redacted] for personnel and tools that [redacted] had no obligation to provide. Complaint, Ex. 13, at 46-47, 116-117.

**D. The Agency's Corrective Action Documents Explain Why the Agency Could Not Adopt the Relief Requested by CENTECH**

CENTECH in effect asks the Court to grant specific performance of its contract, subject only to amendments necessary to make the CENTECH proposal compliant with the requirements of the subcontracting limitation clause.

The Air Force concluded that it could not limit changes to proposals related to the subcontracting limitation issue to CENTECH only. One of the offerors [redacted] had the same



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

deficiency. Further, changes necessary to address subcontracting limitation compliance would impact other proposal areas. Thus, the Air Force noted:

> 3. The originally awarded proposal and one other did not meet the criteria of this clause due to reliance on an AFMC Policy Memo 2004-PK-007, dated 10 Aug 2004, that allowed a prime small business and its small business subcontractor(s) to be combined to meet the criteria. This policy was found to be inconsistent with the clause by GAO and has since been rescinded. However, the 2 offerors who relied on it must given the opportunity to restructure their proposals to bring them into compliance. ***This restructuring will at a minimum change the amount of effort performed by the various team members and may result in a change in team members. This will precipitate changes in all of the volumes of the proposals.*** Additionally, the passage of time of over two years has rendered previously submitted proposals as outdated.

AR, Tab 265 at 19896. CENTECH's post-FPR submissions to the SBA and to the Air Force (rejected by the Air Force), proposed to substantially change the CENTECH proposal by, among other things, materially changing (a) the percentage of contract work for CENTECH and its subcontractors, (b) the number of full-time equivalents for CENTECH and its subcontractors, (c) the role of [redacted] even though CENTECH's FPR relies heavily on [redacted] experience, past performance, tools, personnel and technical capability for many of the CENTECH evaluation ratings, (d) the number of personnel for functional areas, (e) experience and skill levels, (f) the cost proposal, and (g) the prime contractor's organizational structure. See AR, Tab 247 at 19677-84. See also Complaint, Ex. 14, at 5, n.3 and 7, n.4 (noting CENTECH post-FPR proposal changes); AR, Tab 265 at 19896 (noting that compliance with FAR 52.219-14 will require proposal restructuring).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

The Air Force also found:

> Because 2 of the 4 offers were not in strict compliance with the LOS [Limitation on Subcontracting] clause, they will need to be restructured to become compliant. ***It is not known how extensive the changes will be, since the passage of time my factor into the problem with regard to team makeup. It follows that the respective technical approaches may then necessarily need to change. Since 2 of the offerors may have an avenue to update their technical proposals due to the LOS issue, it is not fair to the remaining 2 offerors to not have the same opportunity***. Additionally, the Mission Capability sub-factors assess technical approaches requiring state-of-the-art tools and processes that must be able to meet the dynamic current AFFTC needs. ***Without the ability to receive refreshed technical proposals that address the current PRD and AFFTC mission requirements, the technical evaluation will be difficult to perform and would likely result in the award of a proposal that is not completely relevant to our current needs.***

AR, Tab 265 at 19896. (emphasis added). See also Chapman, 490 F.3d at 940 (agency corrective action must permit discussions and new FPRs from all offerors in the competitive range, not just with initial awardee).

**E. Amendment 3 Addresses Other Changes**

In addition, the Air Force made other revisions to the solicitation due to new developments, including the following:

- The Performance Requirements Document ("PRD") was updated to reflect changing Air Force needs, and new developments in technology. AR, Tab 264 at 19890; AR, Tab 265 at 19895; see also AR, Tab 257 at 19804 (¶ 4c).
- The contract man-year equivalents provided in the Appendix A to the PRD specifically stated that one CMA is equivalent to 1820 productive hours.
- Changed period of performance. AR, Tab 257 at 19804 (¶ 4c).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

- Changed Request for Proposal ("RFP") contract clauses to reflect changes to FAR, DFARS, AFFARS and AFMCFRS (DFARS government property section underwent major rewrite recently). AR, Tab 257 at 19804 (¶ 4b).

## II. CENTECH FAILS TO RESPOND TO THE AIR FORCE AND TYBRIN STATEMENTS OF FACT AND IMPROPERLY INCORPORATES BY REFERENCE CENTECH'S MEMORANDUM

The CENTECH Opposition (at 4) states that it "adopts and incorporates by reference its statement of facts in its Complaint and Memorandum in Support of its Motion for Preliminary and Permanent Injunctive Relief." This approach violates Court of Federal Claims Rule ("RCFC") 5.2(b)(3). Under that rule, a brief or memorandum previously filed may not be incorporated by reference. "Any such incorporation will be disregarded." Id.

CENTECH asserts "the defendants do not dispute the underlying facts that established CENTECH's claim." Opp. at 8. However, by not including a statement of facts, CENTECH acknowledges it is satisfied with the TYBRIN and Air Force Statements of Fact. RCFC Rule 5.2(a)(2)(party may omit statement of facts "unless the party is dissatisfied with the presentation by the other side"). TYBRIN's statement of facts is consistent with CENTECH's Complaint and attached Exhibits except to the extent the CENTECH Complaint includes clear factual errors (e.g., Complaint, Prayer for Relief, at ¶ B, referring to protester from a different case; at ¶¶ 6 to 8, misidentifying the sequence of the TYBRIN protests). See also TYBRIN Motion at 16-17.

CENTECH complains that the Air Force "already publicly disclosed the prices in CENTECH's contract" and contends that it will be required "to offer lower prices knowing that its competitors target the ***prices in its contract*** in their efforts to displace CENTECH as the Air Force's ARDTEAS service provider." Opp. at 11. (emphasis added). In fact, the



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

record documents attached to the CENTECH Complaint show that [redacted] was the lowest priced offeror. Complaint, Ex. 1 at 6. In any event, this Court and GAO have repeatedly recognized that any disadvantage during corrective action resulting from disclosure of a contract price is overcome by the requirement to correct procurement irregularities. Griffy's Landscape Maintenance LLC v. United States, 51 Fed. Cl. 667, 675 (2001) (awardee's price was disclosed by operation of law, not an attempt by the agency to drive the prices down); Clearwater Instrumentation, Inc., B-286454.2, September 12, 2001, 2001 CPD ¶ 151 (disclosure of proposal information, including price, does not preclude corrective action); Novar Health Servs., B-286253.2-.4, December 8, 2000, 2000 CPD ¶ 204 (noting knowledge of protester's price provided little benefit to any other offeror and protester could not show prejudice from the disclosure).

Further, the CENTECH price is stale information, close to twenty-four months old, and reflects only CENTECH's price in response to different solicitation requirements, including different levels of subcontracting support.

## III. CENTECH'S COMPLAINT IS PREMATURE

CENTECH's Opposition is replete with speculative assertions of what might happen in the future. See, e.g., Opp. at 2 ("if CENTECH is the winner ...."); at 18 ("If CENTECH loses the Air Force's recompetition….).

The Court, however, may only review cases of "final agency action," not where the action is "preliminary, procedural or intermediate." See TYBRIN Motion at 19 (citing 5 U.S.C. § 704 and the applicable jurisdictional standards). The Air Force action to date constitutes only "intermediate" agency action. See id.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

In Bannum, Inc. v. United States, 56 Fed. Cl. 453 (2003), a protester sought a directed award of a contract or an order directing the government to extend the protester's contract. The court noted:

> [T]he court's role in ensuring this fair and open government contracting is largely supervisory, however. ***Once the contracting process is complete***, a court can review the procurement procedure and ensure there have been no irregularities that are prejudicial to plaintiff. ***It is not in the public interest, absent a compelling reason not present here, for the court to interject itself into an ongoing process***.

Id. at 460. (emphasis added).

CENTECH (Opp. at 18) argues that if it wins the recompetition, "at a minimum the Air Force will modify CENTECH's contract to reflect the lower prices and less favorable terms that CENTECH must offer because the Air Force publicly disclosed the prices in its existing ARDTEAS contract." Id. This is the reality of the corrective action process, not a legitimate basis for complaint.

Nor is CENTECH "an unsuccessful bidder." Cf. Opp. at 5. It currently has a contract (albeit one that is suspended). CENTECH will not become an unsuccessful bidder unless it loses the ARDTEAS recompetition, an event that will not be known until early next year.

CENTECH's claim that it "will not receive the opportunity to perform its existing ARDTEAS contract or the opportunity to realize its benefits because of the arbitrary, capricious and illegal acts by the Air Force" (Opp. at 19) is a restatement of its improper request for specific performance. TYBRIN Motion at 19.

CENTECH's reliance on Magnavox Elec. Sys. Co. v. United States 26 Cl. Ct. 1373 (1992) is misplaced. Opp. at 17, 19. Magnavox involved a challenge to a proposed sole source award. The Court found that without an equitable remedy, Magnavox would have no



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

opportunity to obtain the contract. CENTECH has a full and fair opportunity to receive award of the contract. Hunt Bldg Co., Ltd. v. United States, 61 Fed. Cl. 243 (Fed. Cl. 2004) and University Research Co., LLC v. United States, 65 Fed. Cl. 500 (2005) illustrate the facts necessary for a case to be considered ripe for protest. Gov't Motion at 15; cf. Opp. at 19. In Hunt Building, the Court concluded that "the matter is ripe for judicial review" since the successful offeror "has been selected, the post-selection finalization of the legal documents has been completed to the extent it can be and all that remains to be done is closing in accordance with those documents." Hunt Bldg., 61 Fed. Cl. at 270. Similarly, University Research illustrates that a claim can only be brought after a determination awarding the contract to another party.

CENTECH makes the irrelevant observation that it will have no mechanism to recover lost profits or other financial losses resulting from differences between its suspended contract and the new contract award. Such claims are not cognizable in a suit for injunctive relief. The mere loss of potential revenue does not merit the entry of an injunction. Foundation Health Fed. Servs. v. United States, No. 93-1717, 1993 U.S. Dist. LEXIS 20069, at *7 (D.D.C. September 23, 1993) (internal citations omitted); see also Eli Lilly and Co. v. American Cyanamid Co., 82 F.3d 1568, 1578 (Fed. Cir. 1996) (observing that allowing a mere claim of lost profits to serve as the basis for a claim of irreparable harm "would convert the 'extraordinary' relief of a preliminary injunction into a standard remedy, available whenever the plaintiff has shown a likelihood of success on the merits."); Minor Metals, Inc. v. United States, 38 Fed. Cl. 379, 381-82 (1997) ("However, economic harm, without more, does not seem to rise to the level of irreparable injury.") (citing Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983)).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

In any event, any claim arising from the suspension or termination of CENTECH's contract must be submitted under the CDA. 41 U.S.C § 605(a).

## IV. CENTECH FAILED TO ALLEGE A MANDATORY PROTEST ELEMENT

Because CENTECH's proposal, on its face, was unacceptable and ineligible for award, the Court must dismiss the CENTECH protest for failing to allege a mandatory protest element. TYBRIN Motion at 29. Compliance with the 50% rule is an issue of proposal acceptability where the proposal on its face does not propose to meet the requirement. TYBRIN Motion at 31-32; Complaint, Ex. 14 at 5 and 6.[1] CENTECH's Complaint admits that CENTECH proposed to perform approximately 43% of the contract cost for personnel, well below 50%. Complaint, ¶ 13. CENTECH does not respond to this dismissal ground. Accordingly, it should be treated as conceded. In any event, the Court should dismiss the CENTECH Complaint because the Complaint fails to allege a mandatory element to support its protest claim.

## V. THE COURT LACKS JURISDICTION OVER CENTECH'S CHALLENGE TO THE AIR FORCE'S CONTRACT "CANCELLATION" OR "SUSPENSION"

Issues of contract administration, such as contract suspensions or terminations, are governed by the CDA. Griffy's Landscape Maintenance LLC v. United States, 51 Fed. Cl. 667 (2001) (challenge by a contract awardee to termination of its contract in the context of a bid protest is governed by the CDA, not CICA). Since CENTECH has not filed a CDA claim,

---

[1] GAO and this Court have tested compliance by examining the proposed percentage of labor for prime and subcontractor personnel costs. Transatlantic Lines, LLC v. United States, 68 Fed. Cl. 48 (2005). This is a simple matter. As GAO noted, the CENTECH proposal "clearly did not meet" the requirement. On its face, a proposal of [redacted] in subcontract labor and [redacted] in prime contract labor proposes less than 50%. Complaint, ¶ 13; Complaint, Ex. 14, at 4; GAO Decision on Reconsideration, at 4 (Appendix, at 4).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

the Court lacks jurisdiction over any CENTECH challenge to contract cancellation, termination or suspension.

### A. There Has Been No Contract Cancellation

CENTECH alleges that its contract award was inappropriately canceled, citing Parcel 49C Ltd. Partnership v. United States, 31 F.3d 1147, 1153 (Fed. Cir. 1994). The Air Force has made no decision whether to cancel (i.e., terminate for convenience) the CENTECH contract. See TYBRIN Motion at 3; Gov't Motion at 8. At present, the contract is merely suspended.

In any event, the facts of Parcel 49C Partnership are readily distinguishable. There, the Federal Circuit found that the agency had no rational basis for cancellation of a solicitation where the agency's bases for cancellation were "pretextual and incredible." Parcel 49C Ltd., 31 F.3d at 1151. The Court concluded: "The law of procurement does not tolerate 'actions reflecting personal predilections of administrative officials, whether ascribable to whim, misplaced zeal, or impermissible influence.'" Id. at 1153. Here, CENTECH merely argues that ***one*** of the bases for the Air Force's corrective action was legally erroneous. Moreover, the original award to CENTECH was one that "reflect[ed] personal predilections of administrative officials, whether ascribable to whim, misplaced zeal, or impermissible influence." Id. at 1153. TYBRIN Motion, at 4; Complaint, Ex. 13, at 22-32. See also Griffy's Landscape, 51 Fed. Cl. at 667 (no evidence of bad faith in agency cancellation of solicitation and taking corrective action).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

### B. The Court Lacks Jurisdiction Over the Air Force's Determination to Suspend Contract Performance

CENTECH asserts "this Court regularly exercises its authority to limit an agency's ability to expend its funds as necessary to reverse the consequences and harm caused by its arbitrary and/or illegal acts." Opp. at 22. The CENTECH Complaint does not allege cognizable claims of arbitrary or illegal agency action. Under the CDA, a contractor must present a claim for alleged improper suspension of a contract to the contracting officer and obtain a final decision before seeking relief in this Court. 41 U.S.C. § 605.

The Court does not award specific performance of a contract in response to a contracting officer direction to suspend or terminate. See United States v. King, 395 U.S. 1, 3-4 (1969); Logan Canyon Cattle Ass'n v. United States, 34 Fed. Cl. 165, 168 and n.4 (1995); Rig Masters, Inc. v. United States, 42 Fed. Cl. 369, 373 (1998).

## VI. CENTECH FAILS TO PLEAD A JUSTICIABLE CLAIM

CENTECH does not address TYBRIN's allegation that CENTECH failed to plead a justiciable claim. TYBRIN Motion at 20-29. Accordingly, the Court should dismiss CENTECH's action on this basis.

In its opposition, CENTECH states

> TYBRIN, Inc. assumes the opportunity in its motion to dismiss to argue the merits of its case. However, because the motions to dismiss attack the Court jurisdiction, and whether or not CENTECH has stated the claim, Plaintiff responds only to the arguments in TYBRIN's brief that addressed those points. CENTECH addresses TYBRIN's other points in its memorandum in support of its motion for preliminary and injunctive relief, and will further address them as this case proceeds on the merits.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Opp. at 1, n.1. CENTECH does not identify any part of TYBRIN's motion. All of the material in TYBRIN's motion to dismiss relates to CENTECH's failure to state a claim.

### A. This Court Does Not Review Agency Corrective Action that is Reasonable on its Face

CENTECH does not dispute the agency's corrective action grounds, other than the subcontracting limitation issue.[2] See also Data Monitor Sys., Inc. v. United States, 74 Fed. Cl. 66 (2006) (noting contracting officer's broad discretion to take corrective action necessary to ensure fair and impartial competition).

### B. CENTECH Ignores Adverse Precedent on the Subcontracting Limitation Issue

Fundamentally, CENTECH is unhappy with the holdings of this Court and the GAO that a proposal that, on its face, fails to propose compliance with FAR 52.219-14 is unacceptable. Opp. at 15. CENTECH continues to confuse issues of contractor responsibility and proposal acceptability. For example, CENTECH states "the Air Force contracting officer simply chose to disregard the legal mandate to obtain and adopt the SBA's ["Small Business Administration's"] ***responsibility determination*** contained in its Certificate of Competency ["COC"]." Opp. at 17. (emphasis added).

There is no such "mandate." GAO and the Air Force found that CENTECH's proposal was not acceptable because, on its face, it did not propose to comply with FAR 52.219-14.

---

[2] In Grunley Walsh Int'l, LLC v. United States, No. 07-492, 2007 U.S. Claims LEXIS 262 (Fed. Cl. August 3, 2007), the court noted that decisions of the GAO are treated as non-binding "expert opinions." The Court concluded that the only issue presented was an issue of law and that no deference needed to be given to the GAO decision (the sole basis for corrective action). There were no other unresolved protest grounds. The Court concluded that the GAO decision was irrational because it misread both the actual language of the statute and the legislative history. No comparable circumstances exist here. TYBRIN Motion at 29-31.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

This is an issue of proposal acceptability, as recognized in numerous GAO and Court decisions. TYBRIN Motion at 29-32; Complaint, Ex. 14, at 5 and 6; Opp. at 17; see Transatlantic Lines, LLC v. United States, 68 Fed. Cl. 48, 53-54 (2005) (holding whether an offeror ***proposed*** to comply with the subcontracting limitation was not an issue of responsibility, but one of proposal acceptability); Spectrum Security Servs., Inc., B-297320.2-.3, December 29, 2005, 2005 CPD ¶ 227 (same result).

The SBA COC process addresses issues of contractor ***responsibility***. The issue before GAO and the Air Force was whether CENTECH's proposal was ***acceptable***. TYBRIN Motion at 29-32; Complaint, Ex. 14, at 5 and 6 (GAO Decision). CENTECH's reliance (Opp. at 14-17) on the SBA's reconsideration request is misplaced, given GAO's statement that "CENTECH's proposal on its face ***clearly*** did not meet the material term of the solicitation embodied in the 50 percent subcontracting limitation." TYBRIN Motion, App. at 4. (emphasis added).

**C. CENTECH Has No Valid Claim to Performance of the ARDTEAS Contract**

CENTECH repeatedly asserts that, but for the Air Force's alleged illegal conduct with regard to the subcontracting limitation issue, CENTECH would be performing the ARDTEAS contract. Opp. at 14, 20. These claims are not supported by the allegations contained in the CENTECH Complaint.

CENTECH's citation of Siller Bros., Inc. v. United States, 655 F.2d 1039 (Ct. Cl. 1981) is unusual. Opp. at 16. There the Court noted that the COC procedures were "designed to protect small businesses against discrimination by procurement officers." Opp. at 16. Here, there has been no allegation of discrimination against CENTECH. To the



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

contrary, the evidence in the record of discrimination against a small business is contained in documents written by the contracting officer stating that the Program Manager/Evaluation Team Chair was tainted by bias against TYBRIN, a small business. See, e.g., Complaint, Ex. 13, at 22-32.

## VII. THE COURT LACKS JURISDICTION OVER CENTECH CLAIMS THAT GAO ACTED ILLEGALLY

CENTECH states that it "does not ask the Court to review the legality of the Government Accountability Office ('GAO') protest decision." Opp. at 3. Yet, CENTECH's Complaint repeatedly accuses GAO of "illegality" and asks this Court to review GAO procedural and jurisdictional determinations. See, e.g., Complaint, ¶¶ 25, 28, 42, 56, 60, 66, 69, 88-89. This Court's jurisdiction "***does not extend to alleged violations of statutes and regulations governing GAO's review of a bid protest*** because they do not relate to a procurement proposal or award, but rather relate to the legal review of such a proposal." Advance Constr. Servs, Inc. v. United States, 51 Fed. Cl. 362, 365 (2002). (emphasis added). Accordingly, the paragraphs of the CENTECH Complaint attacking GAO should be dismissed. See Complaint, ¶¶ 22-25, 28, 41-47, 48-52, 53-57, 60, 66-68, 85, 87 and 89 and prayer for relief.

CENTECH's attempt to amend its complaint with regard to paragraphs 61 and 69 does not alter the numerous other paragraphs in the complaint, set forth above, in which CENTECH challenges jurisdictional and procedural decisions made by GAO. Opp. at 8, n.4.



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

## CONCLUSION

The Court should grant Defendants' Motions to Dismiss.

Respectfully submitted,

Date: September 12, 2007

By: /s/ John S. Pachter
John S. Pachter
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for Intervenor-Defendant*
*TYBRIN Corporation*

Of Counsel:
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for Intervenor-Defendant*
*TYBRIN Corporation*



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of September 2007, "TYBRIN'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Mary Pat Gregory
Mary Pat Gregory



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

# APPENDIX

G A O
Accountability - Integrity - Reliability

Comptroller General
of the United States

United States Government Accountability Office
Washington, DC 20548

# Decision

**Matter of:** Small Business Administration–Reconsideration

**File:** B-298364.8

**Date:** April 17, 2007

## DECISION

The Small Business Administration (SBA) asks that we reconsider our decision in TYBRIN Corp., B-298364.6, B-298364.7, Mar. 13, 2007, 2007 CPD ¶ ___, in which we sustained TYBRIN's protest of the award of a contract to The CENTECH GROUP under request for proposals (RFP) No. FA9300-04-R-0040, issued by the Department of the Air Force, for advisory and assistance services to support the Aerospace Research, Development, Test and Evaluation activities at the Air Force Flight Test Center, Edwards Air Force Base, California.

We deny the request for reconsideration.

The RFP provided for the award of a "hybrid" contract on a cost-plus-fixed-fee basis for certain services, a cost basis for other direct costs, and a fixed-price-plus-award-fee for the phase-in period. Award was to be made on a "best value" basis, considering various identified evaluation factors. The RFP incorporated by reference the "Notice of Total Small Business Set-Aside" clause, Federal Acquisition Regulation (FAR) § 52.219-6, and the "Limitation on Subcontracting" clause, FAR § 52.219-14. At issue here is the latter clause's provision that "[a]t least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern." FAR § 52.219-14(b)(1).

The Air Force received proposals from four small business offerors, evaluated them, conducted discussions, and requested and received final proposal revisions from the four offerors. The agency selected CENTECH's proposal for award. TYBRIN, after receiving a debriefing, filed a protest in our Office on May 26, 2006, broadly challenging the agency's evaluation of proposals as well as the source selection. After receiving the agency report in response to the protest, TYBRIN filed three supplemental protests.

In one of its protests, TYBRIN argued that CENTECH's proposal had failed to comply with the subcontracting limitation discussed above, and that the proposal should therefore have been considered unacceptable. TYBRIN alleged that under the terms of CENTECH's proposal, approximately 44 percent of the cost of contract performance incurred for personnel would be for CENTECH personnel, with the remaining majority of the cost of contract performance for personnel being incurred for CENTECH's subcontractors.

In response, the Air Force conceded that CENTECH's proposal provided that only 43.2 percent of the cost of contract performance incurred for personnel would be for CENTECH's personnel. However, relying on a memorandum issued by the Air Force Materiel Command (AFMC) in 2004 that provided an analysis of the limitation on subcontracting rule and essentially stated that the requirements of the FAR clause could be "met by the cooperative efforts of the small business prime contractor and the small business members of the subcontractors group," the Air Force concluded that CENTECH's proposal complied with the clause because the "collective efforts" of CENTECH and its small business subcontractors would amount to 66.2% of the cost of contract performance for personnel.

Our Office solicited the views of the SBA on this matter. In essence, SBA advised that the AFMC's guidance was inaccurate and stated that generally, "a small business receiving a prime contract award as a result of a solicitation set aside for [small business concerns] must meet the subcontracting limitation set forth in statute and regulations itself." After receiving this information, the Air Force proposed to take corrective action by reconsidering whether CENTECH met the requirements for award of the contract, taking into consideration the standards articulated in the SBA's memorandum. We dismissed TYBRIN's protest as academic.

The contracting officer subsequently executed a "Determination of Non-Responsibility," concluding that "CENTECH does not meet the subcontracting limitation requirements as set forth in statute and regulation and as such is considered nonresponsible and is not eligible to receive the contract award for the ARDTEAS effort." The contracting officer informed CENTECH of this conclusion, adding that the Air Force had decided to rescind the award of the contract to CENTECH and that the matter of CENTECH's compliance with the subcontracting limitation would be referred to the SBA for consideration under the SBA's certificate of competency (COC) procedures.

In its memorandum referring the matter of CENTECH's compliance to the SBA, the contracting officer informed the SBA that, based "solely on the information received with CENTECH's proposal, the Air Force has determined that CENTECH will perform 43.2% of the work," and that "the two small business subcontractors will perform 18.2% and 4.9% respectively for a total small business performance of 66.2%." The memorandum added that the contracting officer had "found that the CENTECH GROUP did not meet the subcontracting limitation requirements set forth in statute and regulation," and had rescinded the award.

The SBA informed the Air Force by letter of December 4, 2006 that while "the Centech Group's numbers" set forth in its proposal provided that "around 42%" of the cost of contract performance incurred for personnel would be expended for CENTECH employees, nevertheless, in the SBA's view, CENTECH would indeed comply with the subcontracting limitation during its performance of the contract," and that the SBA found CENTECH responsible and had issued a COC to CENTECH. This conclusion was based in part on the SBA's consideration of material provided by CENTECH during the COC process (including its plans for staffing the contract), from which the SBA found that CENTECH would be able to meet this limitation. The Air Force reinstated the award to CENTECH based upon the SBA's issuance of the COC.

TYBRIN again protested the award, arguing that because CENTECH's proposal clearly provided that only 43.2 percent of the cost of contract performance would be expended for CENTECH employees, the proposal should have been evaluated as unacceptable by the Air Force, such that CENTECH's proposal could not form the basis for award, and we agreed. Although, as a general matter, an agency's judgment as to whether a small business offeror will be able to comply with a subcontracting limitation presents a question of responsibility for review by the SBA, we found the circumstances here distinguishable: as we pointed out, we consistently have held that where a proposal, on its face, should lead an agency to the conclusion that an offeror has not agreed to comply with the subcontracting limitation, the matter is one of the proposal's acceptability. As we stated in our decision, a proposal that fails to conform to a material term or condition of the solicitation, including the subcontracting limitation, is unacceptable and may not form the basis for an award. Accordingly, we sustained the protest and recommended that the Air Force reopen discussions and request and review revised proposals, evaluate those submissions consistent with the terms of the solicitation, and make a new source selection decision.

In requesting reconsideration, the SBA takes issue with our statement that "the record establishes that it was clear to the Air Force that CENTECH's proposal as submitted and as evaluated provided that the 43.2 percent of the cost of contract performance incurred for personnel would be expended for CENTECH employees." The SBA contends that it was never clear to the Air Force whether CENTECH's proposal met or did not meet the limitation in issue, arguing that "it is not uncommon for contracting officers and procuring agencies to misunderstand the limitations on subcontracting requirements and how to calculate the requirement." The SBA maintains that the referral to the SBA, "the expert in this subject area," therefore was appropriate.

Under our Bid Protest Regulations, to obtain reconsideration the requesting party must set out the factual and legal grounds upon which reversal or modification of the decision is deemed warranted, specifying any errors of law made or information not previously considered. 4 C.F.R. § 21.2(a)(1) (2006). The repetition of arguments

made during our consideration of the original protest and disagreement with our conclusions do not meet our standard for reconsideration.

We do not find persuasive the SBA's suggestion that the Air Force did not understand the subcontracting limitation, which in part is based on the contracting officer's reference to CENTECH's proposal offering to perform "43.2% of the work" with its own personnel--as opposed to performing a percentage of "the cost of the contract for personnel with its own employees." Taken as a whole, the record is replete with statements evidencing the Air Force's understanding and its recognition that CENTECH's proposal did not meet the subcontracting limitation requirements; in this context, we consider "43.2% of the work" to be a shorthand version of the longer phrase. Moreover, in its attempts to parse the language of the contracting officer's statements, the SBA's arguments ignore the basic fact that CENTECH's proposal on its face clearly did not meet the material term of the solicitation embodied in the 50-percent subcontracting limitation. SBA's reconsideration request merely disagrees with our conclusions on this central issue and repeats arguments made and fully considered during the course of TYBRIN's protests, and thus does not meet our standard for reconsideration as set forth above.

The request for reconsideration is denied.

Gary L. Kepplinger
General Counsel