**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | | |
|---|---|---|
| **THE CENTECH GROUP, INC.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 07-513C** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**AMENDED COMPLAINT**

**COMES NOW,** THE CENTECH GROUP, Inc., (hereinafter "CENTECH"), through undersigned counsel, and files this Amended Complaint. Plaintiff, CENTECH, asserts this bid protest action for declaratory judgment and preliminary and permanent injunctive relief against Defendant, the United States of America, acting through its agency, the Department of the Air Force, to declare that the Air Force lawfully and properly awarded CENTECH the contract on April 28, 2006 under the Air Force's Aerospace, Research, Development, Test and Evaluation Advisory and Assistance Services (ARDTEAS") program pursuant to the lawfully performed source selection that the Air Force conducted in accordance with Federal Acquisition Regulation ("FAR") part 15, and to prohibit the Air Force from arbitrarily, capriciously, and illegally canceling, rescinding, recompeting, or re-awarding such contract, as the Air Force is currently doing in connection with Amendment No. 3 to the ARDTEAS Request for Proposals ("RFP" or

"solicitation"). Further, CENTECH is seeking reimbursement for bid and proposal preparation costs it had to expend in connection with being forced to compete in the illegal reaward process under RFP Amendment No. 3.

## JURISDICTION

This is a bid protest case. Under 28 U.S.C. §1491(a), this Court has jurisdiction to hear CENTECH's claims for the breach of Defendant's implied contract to fairly consider CENTECH's bid. At the same time, under 28 USC 1491(b), this Court has jurisdiction to hear CENTECH's claims and objections in connection with the ARDTEAS solicitation as amended, its rescinded ARDTEAS contract, and the Air Force's proposed award of the new ARDTEAS contract.

## FACTS

1. On February 28, 2005, the Air Force issued its Request for Proposal ("RFP") to acquire non-personal advisory and assistance services ("A&AS") to support the Aerospace Research, Development, Test and Evaluation ("RDT&E) activities at the Air Force Flight Test center. ("AFFTC") located at the Edwards Air Force Base, California.

2. Including options, the solicitation specified a 12 year and 2 month period of performance with an estimated cost of exceeding $300,000,000. .

3. After an exhaustive source selection that spanned two and half years and included discussions under FAR §15.306 with all four offerors that submitted proposals, the Air Force selected CENTECH as its best value offeror.

4. On April 28, 2006 the Air Force awarded the ARDTEAS contract to CENTECH. When the Air Force Contracting Officer awarded the contract to

CENTECH, as a matter of law, she also determined that CENTECH complied with all terms and conditions of the contract and was responsible to receive and perform the contract.

5. On May 26, 2006, TYBRIN Corporation ("TYBRIN"), an unsuccessful bidder, and the Air Force's incumbent contractor, protested the award to the General Accountability Office ("GAO").

6. In its protest TYBRIN asserted eight grounds of protest. None of them were determined by the GAO to possess merit.

7. By virtue of the access TYBRIN obtained to the Air Force's Administrative Record during its initial protest, TYBRIN manufactured six supplemental protests that it filed with the GAO.

8. On June 29, 2006, TYBRIN filed its a supplemental protest wherein it complained that the Air Force failed to appropriately apply to CENTECH's proposal the policy of the "Limitation on Subcontracting" clause, FAR Clause §52.219-14 as made part of the solicitation by the Air Force.

***Air Force Application of FAR Clause 52.219-14 and Policy To Promote Small Business Participation Through Small Business Joint Ventures and Small Business Teaming Arrangements***

9. Pursuant to FAR clause §52.219-14, Limitations on Subcontracting, at least 50% of the cost of contract performance incurred for personnel must be expended by employees of the small business concern or by teams or joint ventures of small business concerns. This FAR Clause is supposed to reflect the policy of the Small Business Act and implementing regulations of the Small Business Administration that employees of small businesses and of teams or joint ventures of small businesses perform

majority of work on small business set-asides. See 15 U.S.C. § 644(o)(1)(A); 13 C.F.R. §125.6. The SBA determined that compliance with these policies is a matter of responsibility prior to award, and of contract administration following the award. See 13 C.F.R. §125.6.; See also, 15 U.S.C. § 644(o)(1)(A).

10. The Air Force included FAR clause 52.219-14 in its ARDTEAS RFP issued on February 28, 2005. However, during its acquisition, the Air Force disclosed to offerors that it would interpret the clause in accordance with its Air Force Policy Memorandum 2004-PK-007, dated August 19, 2004, entitled Policy Coverage and Rationale for Interpretation to Allow Small Business Prime Contractors and First Tier Small Business Subcontractors to Perform the Minimum Work in the "Limitation on Subcontracting Clause," by including the Memorandum in the reading room.

11. In its Policy Memorandum the Air Force stated:

> The context and history of the entire 13 CFR 125 and 103 coverage of this matter provide for a reasonable interpretation of "informal joint venture" to mean a prime contractor and its subcontractors when the contract is reserved for 8(a) or small business…
>
> ***Accordingly, within AFMC, we interpret the clause 52.219-14 to mean that the minimum amounts of work can be performed by the collective efforts of either small business members of a formal joint venture or a small business prime contractor together with the first tier small business subcontractor(s), when the circumstances outlined in attachment 1 are present. (Id.).***

12. Separately from the Limitation on Subcontracting policies, the RFP called for offerors to propose essentially a demonstration mix of prime contractor and subcontractor labor in order to evaluate the offeror's understanding of technical requirements. (See RFP §§ L & M).

13. Consistent with the Air Force's invitation and direction to do so, CENTECH disclosed in its proposal that the "team" of CENTECH and its small business subcontractors would collectively perform 66.2% of the contract costs of personnel to complete the contract tasks per CENTECH's demonstration mix. This exceeded the 50% small business participation requirement the Air Force specified in its Policy Memorandum.

14. Of the total 66.2% of small business participation that CENTEH proposed, CENTECH disclosed that it would perform approximately 43% of contract costs for personnel.

15. CENTECH did not require any amount of small business subcontractor participation to enable it to perform the contract, or to enable it to meet the 50% "costs of personnel" requirement in FAR clause 52.219-14.

16. At all times relevant, and currently, CENTECH possessed the capability to perform at least 66.2% of the contract costs of personnel with its own employees.

17. CENTECH proposed to utilize small business subcontractors to perform the contract because the Air Force encouraged offerors to do so, and CENTECH believed that if it complied it would improve its opportunity for success.

18. CENTECH never communicated to the Air Force that it "would not" or "could not" perform 50% of the costs of personnel necessary to complete the contract using its own employees, and the Air Force did not disclose this as a requirement of its RFP.

19. The Air Force did not evaluate offerors' compliance with the Limitation of Subcontracting clause during its source selection for the ARDTEAS contract.

20. CENTECH responded to the Air Force's RFP exactly as the Air Force directed it to during its ARDTEAS acquisition.

21. Based on the superior quality of CENTECH's proposal, the Air Force selected CENTECH as its best value offeror and awarded the ARDTEAS contract to CENTECH on April 28, 2006. By doing so, the Air Force determined that CENTECH was a responsible contractor.

***TYBRIN's June 29, 2006 Supplemental Protest***

22. On June 29, 2006 TYBRIN filed a supplemental protest with the GAO. In it, TYBRIN complained that the Air Force's interpretation of FAR clause 52.219-14 was incorrect.

23. According to TYBRIN, because the Air Force applied an erroneous interpretation of FAR Clause § 52.219-14, the Air Force should have disqualified CENTECH's proposal from award consideration.

24. However, TYBRIN knew about the Air Force's interpretation of the "Limitations on Subcontracting" clause, and how the Air Force would apply the clause, for almost one year before it submitted its proposal to the Air Force on March 31, 2005.

25. TYBRIN knew how the Air Force interpreted the "Limitations on Subcontracting" Clause and how the Air Force would apply the clause for almost two years before it filed its protest on June.

26. Despite the untimeliness of TYBRIN's protest, the GAO proceeded to decide it in violation of law and its Rules.

***Request for SBA Position***

27. During the GAO's review of TYBRIN's supplemental protest, the GAO requested input from the Small Business Administration ("SBA") because it recognized the SBA as the premiere authority to interpret the statutory and regulatory small business policies implemented by the "Limitations on Subcontracting" clause. In fact, the SBA has the exclusive jurisdiction to interpret the Small Business Act's Limitation on Subcontracting provisions, and has done so in its regulations in Title 13, Section 125.6 of the Code of Federal Regulations.

28. On August 2, 2006 the SBA provided its opinion to both the Air Force and the GAO wherein it disclosed that the Air Force's interpretation of FAR clause 52.219-14 was incorrect, but admonished the Air Force and the GAO that the SBA possessed the exclusive legal jurisdiction to determine CENTECH's compliance with FAR clause 52.219-14 under its Certificate of Competency Program. The SBA stated:

> In the present case, we do not have a complete record to determine whether or not CENTECH and its small business subcontractors have an informal or formal joint venture relationship… Nonetheless, ***we believe that this is not an issue to be resolved in the course of a GAO protest, but is to be resolved in a COC ("Certificate of Competency") proceeding.*** The Small Business Act provides in pertinent part that SBA is "empowered, whenever it determines such action is necessary;
>
>> To certify to Government procurement officers, …, with respect to all elements of responsibility, including but not limited to, capability, competency, capacity, credit, integrity, perseverance, and tenacity, of any small business concern or group or group of such concerns to receive and perform a specific Government Contract. A Government procurement officer …, may not, for any reason specified in the preceding sentence, preclude any small business concern or group of such concerns from being awarded such contract without referring the matter for a final deposition to the Administration.

29. Despite the SBA's admonishment, the GAO assumed jurisdiction over TYBRIN's protest and communicated to the Air Force that it would sustain the protest unless the Air Force took corrective action.

30. To avoid an adverse GAO decision, the Air Force determined to take corrective action and so notified the GAO on August 4, 2006.

31. In its Notice of Corrective Action the Air Force disclosed that it would reconsider whether CENTECH met the requirements for award of the contract taking into account the review standard disclosed in the SBA's August 2, 2005 Opinion letter.

32. On August 4, 2005 the GAO dismissed TYBRIN's protests as academic because the Air Force took corrective action.

***Contracting Officer Determination and Illegal Rescission***

33. On September 6, 2006 the Contracting Officer wrongfully, arbitrarily, and illegally determined that "based solely on the information CENTECH disclosed in its proposal," CENTECH did not meet the requirements of FAR Clause §52.219-14.

34. On September 8, 2006, in violation of FAR § 3.703 and without any grounds at common law or in equity, the Air Force illegally rescinded CENTECH's contract award.

***Contracting Officer Request for SBA Certificate of Competency***

35. On September 15, 2006, the Contracting Officer attempted to remedy the illegal rescission of CENTECH's contract by requesting a Certificate of Competency ("COC") from the SBA. As part of the COC process, the SBA is legally authorized to receive a broad range of information solely with regards to the apparently successful awardee in order to confirm the awardee's responsibility:

> The COC application must include all information and documentation requested by SBA and any additional information which the firm believes will demonstrate its ability to perform on the proposed contract. . . . SBA may elect to visit the applicant's facility to review its responsibility. SBA personnel may obtain clarification or confirmation of information provided by the applicant by directly contacting suppliers, financial institutions, and other third parties upon whom the applicant's responsibility depends.)

13 CFR §121.5

36. On December 4, 2006, after an exhaustive investigation, the SBA determined that CENTECH did comply with FAR clause 52.219-14, and certified to the Contracting Officer that CENTECH was "responsible" to receive and perform the ARDTEAS contract.

37. On December 21, 2006, the Air Force notified CENTECH that it was reinstating the contract award to CENTECH.

***TYBRIN's December 29, 2006 Supplemental Protest***

38. On December 29, 2006, TYBRIN filed another supplemental protest. In this protest TYBRIN complained that the Air Force materially changed the percentage of contract work requirement after the time established for receipt of offerors' final proposal revisions to enable its award to CENTECH.

39. However, the Air Force did not permit CENTECH to make any changes to its proposal, and the Air Force was irrational to decide that it had done so by invoking the COC process.

40. The GAO decided TYBRIN's protest on March 13, 2007 notwithstanding its lack of legal authority to do so, and determined that CENTECH did not comply with FAR 52.219-14.

41. In sustaining the protest the GAO stated:

> As a general matter, ***an agency's judgment as to whether a small business offeror will be able to comply with a subcontracting limitation presents a question of responsibility for review by the SBA***. See 13 C.F.R. § 125.6(f); *Spectrum Sec. Servs., Inc.*, B-297320.2; B-297320.3, Dec 29, 2005, 2005 CPD ¶ 227 at 6. However, our Office has consistently held that where a proposal, on its face, should lead an agency to the conclusion that an offeror has not agreed to comply with the subcontracting limitation, the matter is one of the proposal's acceptability…

42. However, when CENTECH accepted and signed the Air Force's ARDTEAS contract, CENTECH agreed to comply with all of the Air Force's stated requirements in the contract, including FAR clause 52.219-14. The GAO's fact-finding on this issue was wrongful and any deference to it by the Air Force was unreasonable.

43. The GAO wrongfully opined that the remedy for supposed non-compliance with the Limitation on Subcontracting policies was not referral to the SBA as required by the Small Business Act and implementing regulations, but, rather, re-opening of discussions under FAR §15.306. Nonetheless, the GAO recommended that the Air Force take corrective action as follows:

> We recommend that the Air Force reopen discussions and request and review revised proposals, evaluate those submissions consistent with the terms of the solicitation and make a new source selection decision." In the event a proposal other than CENTECH's is found to represent the best value to the government, CENTECH's contract should be terminated and the contract awarded to the successful offeror in accordance with the terms of the RFP. We also recommend that the agency reimburse TYBRIN for its costs of filing and pursuing its protest, challenging the award to CENTECH, including reasonable attorneys' fees.

44. The Air Force unreasonably, arbitrarily and illegally adopted the GAO's advisory opinion and implemented the GAO's "corrective action" recommendation notwithstanding that the GAO's decision was illegal and wrong procedurally and substantively, and despite the fact that CENTECH expressly agreed to comply with FAR 52.219-14 when it accepted the Air Force's ARDTEAS contract.

45. TYBRIN did not propose to use any subcontractors to perform the ARDTEAS contract. Therefore, it suffered no prejudice by the Air Force's interpretation of the clause and lacked standing to complain.

***SBA Request for Reconsideration***

46. On March 23, 2007 the SBA filed a Request for Reconsideration with the GAO based on its disagreement with the GAO decision in TYBRIN's favor.

47. In its Request, the SBA highlighted the Air Force's factual errors in evaluating CENTECH's subcontracting compliance. Specifically, the SBA refuted the GAO's determination that "the record establishes that it was clear to the Air Force that CENTECH's proposal as submitted and evaluated provided that 43.2% of the cost of contract performance incurred for personnel would be expended for CENTECH employees…". According to the SBA, "the record establishes that nothing relating to the limitations on subcontracting requirement or CENTECH's proposal as it's relates to the requirement was clear to the Air Force."

48. The SBA also asserted the GAO's lack of legal authority to decide TYBRIN's protest. In support of its argument, the SBA relied on the unambiguous Congressional directive at 15 U.S.C. §637 that COC determinations are to be binding on

government procurement officers, and on the GAO's own opinion in *Stemaco Products, Inc.*, B-243206, 91-1 CPD ¶ 333 wherein the GAO ruled:

> Whether a small business bidder under a small business set-aside procurement …will perform more than 50 percent of the cost of manufacturing the supplies … with its own employees, ***concerns the bidder's responsibility, and is a matter for consideration by the SBA in connection with COC proceedings.***

Thus, the SBA confirmed that it was illegal, unreasonable, and wrongful for the Air Force to ignore the SBA's COC determination.

***Air Force's Second Illegal Rescission/Cancellation of CENTECH's Contract***

49. Because the GAO rendered its bid protest recommendation for corrective action in violation of federal procurement laws, the Air Force was duty-bound to reject it. Notwithstanding the manifest factual and legal errors by the Air Force and the GAO that the SBA highlighted, the Air Force ignored the SBA's binding COC and adopted the GAO's advisory "recommendation for corrective action." The Air Force implemented the recommendation in violation of federal procurement laws and regulations and did so for illegitimate reasons; to avoid adverse publicity in having to report its decision to reject the GAO recommendation to Congress, and to obtain further illegal bargains after the ARDTEAS contract was awarded.

50. As a consequence of the Air Force's arbitrary, capricious and unlawful action, CENTECH is unlawfully deprived of its ARDTEAS contract.

## COUNT I

***THE AIR FORCE ACTED ARBITRARLY AND CAPRIOUSLY AND IN VIOLATION OF LAW WHEN IT RESCINDED AND SUSPENDED CENTECH'S CONTRACT IN VIOLATION OF THE SMALL BUSINESS ACT AND IMPLEMENTING REGULATIONS, AND IMPLEMENTED THE GAO'S UNLAWFL PROTEST DECISION***

51. Plaintiff incorporates the allegations in paragraphs 1 through 50 as if fully restated here.

52. As a matter of law the SBA possesses the exclusive legal jurisdiction to determine questions of small business compliance with the "Limitations on Subcontracting" clause under the Small Business Act. See, e.g. 15 U.S. C. § 637(b)(7) and 644(o); 13 CFR §125.6.

53. Pursuant to FAR 19.602-1, and the above-cited statutes and regulations, before a Contracting Officer may deny a small business a contract for its asserted failure to comply with FAR 52.219-14, the Contracting Officer must request a Certificate of Competency from the SBA, and if the SBA issues the Certificate, the Contracting Officer must award the contract to the apparently successful small business offeror which in this case was CENTECH. Instead of complying with the law, the Air Force rescinded and then suspended CENTECH's ARDTEAS contract and continues to deny it the ability to perform it.

54. As a result of the Air Force's failure to follow the law, and its other arbitrary, capricious, and unlawful acts complained about herein, CENTECH suffers irreparable harm for which it has no adequate legal remedy. Its injury consists of its loss of its government contract, lost profits and interest thereon, lost employment opportunities, diminished opportunities to compete, reputational harm, and lost bid and

proposal costs, and denial of the promise implicit in the Air Force's RFP that if CENTECH submitted a proposal, it would receive fair treatment from the Air Force during its acquisition process.

. **COUNT II**

***THE AIR FORCE ACTED UNLAWFULLY, ARBITRARILY, AND CAPRICIOUSLY WHEN IT ADOPTED AND IMPLEMENTED AS ITS OWN THE GAO'S WRONGFUL ADVISORY RECOMMENDATION FOR CORRECTIVE ACTION***

55. Plaintiff incorporates the allegations in paragraphs 1 through 54 as if fully restated here.

56. As a matter of law, GAO opinions are merely advisory in nature. 31 U.S.C. §§3551-56. Ultimate responsibility for award of the ARDTEAS contract rested with the Air Force. Both CENTECH and the Small Business Administration demonstrated to the Air Force numerous legal violations and irrational factual errors which would be committed by, or imputed to, the Air Force if the Air Force relied on GAO proceedings as justification to prevent CENTECH from receiving its contract based on the SBA COC.

57. The Air Force disclosed to all offerors prior to the closing time for receipt of proposals its interpretation of the "Limitations on Subcontracting" clause.
TYBRIN did not assert a protest then to he GAO or the Air Force about the Air Force's interpretation of FAR 52.219-14, but waited over a year to complain to the GAO.

58. Because the GAO committed numerous legal and factual errors in arriving at its recommendations and exceeded the bounds of its legal jurisdiction when it decided TYBRIN's protest, and because the Small Business Act required the Air Force to award the contract to CENTECH after it obtained the SBA's Certificate of Competency, the Air

Force violated the Small Business Act, the Competition in Contracting Act, and related regulations when it implemented the GAO's recommendation for corrective action" and denied CENTECH the right to perform its contract.

59. As a consequence of the Air Force's unlawful acts, CENTECH suffers irreparable injury for which it has no adequate legal remedy. Its injury consists of its loss of its government contract, lost profits, lost employment opportunities, diminished opportunity to compete, and denial of its right to be treated fairly during the government's procurement process, and also suffers irreparable damage to its business reputation.

## COUNT III

### *BY ITS IMPOSITION OF UNDISCLOSED CONTRACT REQUIREMENTS THE AIR FORCE ARBITRARILY AND UNLAWFULLY DETERMINED THAT CENTECH FAILED TO COMPLY WITH FAR 52.219-14*

60. Plaintiff incorporates the allegations in paragraphs 1 through 59 as if fully restated here.

61. Section M of the RFP, Evaluation Factors for Award, contains no criteria whereby the Air Force would evaluate offeror's compliance with FAR 52.219-14.

62. During the ARDTEAS acquisition, the Air Force disclosed that it would determine offerors' compliance with FAR 52.219-14, as a matter of "responsibility" in accordance with its Air Force Policy Memorandum 2004-PK-007.

63. In accordance with its Policy Memorandum, the Air Force determined that CENTECH complied with FAR 52.219-14.

64, The Air Force's determination that CENTECH complied with FAR 52.219-14 resulted as a matter of "responsibility", not as part of its proposal evaluations under Section M of its RFP.

65. It is well established that once agencies establish their evaluation criteria, an Agency must adhere to them. An agency may not impose new requirements, or change its evaluation criteria, without issuing an amendment to the RFP.

66. The Air Force deviated from its disclosed requirements in its RFP when it rejected its AF Policy Memorandum, and reconsidered CENTECH's compliance with FAR 52.219-14 in accordance with the standard announced in the SBA Opinion that issued on August 2, 2006.

67. As a consequence of the Air Force's arbitrary and capricious action, CENTECH is irreparably harmed and has no adequate legal remedy. Its injury consists of its loss of its government contract, lost profits, lost employment opportunities, diminished opportunity to compete, and denial of its right to be treated fairly during the government's procurement process, and suffers irreparable damage to its business reputation.

## COUNT IV

### *WITHOUT LEGAL AUTHORITY THE CONTRACTING OFFICER ARBITARILY AND ILLEGALLY RESCINDED CENTECH'S CONTRACT AND REQUESTED THAT THE SBA ISSUE A CERTIFICATE OF COMPETENCY*

68. Plaintiff incorporates the allegations in paragraphs 1 through 67 as if fully restated here.

73. Federal procurement laws and regulations, including FAR § 3.705, impose on an Agency the duty a duty to afford Contractor's due process before proceeding to rescind a contract, including the right to have a hearing.

74. Rescission of a contract is only an option for the government when the contractor who obtained the contract is convicted of a crime, or the Government discovers that proposal information or source selection information has been disclosed or received in exchange for a thing of value, or there was material misrepresentation, illegality, or mutual mistake.

75. None of the conditions for rescinding a contract are present in this case.

76. Therefore, it was arbitrary and capricious, and a violation of law for the Air Force to rescind CENTECH's contract.

77. As a consequence of the Air Force's arbitrary and capricious action, CENTECH is irreparably harmed and has no adequate legal remedy. This injury consists of its loss of the ARDTEAS contract, lost profits, loss of its workforce, diminished opportunity to compete, denial of its right to be treated fairly during the government's procurement process, and irreparable damage to its reputation and other irreparable harm.

## PRAYER FOR RELIEF

### *PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, COSTS*

As a result of the Air Force's unlawful actions CENTECH suffers irreparable injury for which it has no adequate legal remedy. This injury consists of its lost government contract, lost profits, the opportunity to fairly compete for award going forward, lost personnel, and harm to its business reputation.

The relief CENTECH requests will not cause any injury to the United States Government, or the Air Force, and will serve the public interest by insuring that the Air Force's competition for the ARDTEAS contract is conducted in accordance with federal procurement laws and the FAR.

The Air Force's violations of federal procurement statutes, regulations, and policies, adversely effect and undermine the integrity of the federal procurement process.

The relief CENTECH requests, if granted, protects the public interest by preserving the integrity of the public confidence in the federal procurement process, thereby promoting competition for federal government contracts.

CENTECH is fully qualified to perform the ARDTEAS contract as the Air Force found at the conclusion of its source selection. .

WHEREFORE, CENTECH prays that this Court grant the following relief:

A. Declare that the Air Force violated federal procurement laws and acted unreasonably, arbitrarily, and capriciously by its actions complained about herein, with an Order prohibiting the Air Force from arbitrarily, capriciously, and illegally canceling, rescinding, recompeting, or re-awarding its Aerospace, Research, Development, Test and Evaluation Advisory and Assistance Services (ARDTEAS") contract it awarded to CENTECH on April 28, 2006, as the Air Force is currently doing in connection with Amendment No. 3 to the ARDTEAS Request for Proposals ("RFP" or "solicitation"), and such other relief as the Court deems just and appropriate to remedy the harm CENTECH complains about; and

B. Preliminarily and permanently enjoin the Air Force from illegally allowing anyone other than CENTECH to perform the Air Force's ARDTEAS service requirements for the stated term of the ARDTEAS contract awarded to CENTECH; and

C. Award CENTECH its court costs, reasonable attorneys' fees, bid preparation costs, and such other and further relief as this Court deems just and proper.

Dated: September 25, 2007

Respectfully submitted,

THE MARTIN LAW FIRM, PLLC

/s/ Kenneth A. Martin

Kenneth A. Martin, Esq.
6723 Whittier Ave., Suite 200
McLean, VA 22101
703-918-0350 (telephone)
703-918-0386 (facsimile)

Counsel to
THE CENTECH GROUP, Inc.

Max V. Kidalov
Vice President & General Counsel
THE CENTECH GROUP, Inc.
4600 North Fairfax Drive
Suite 400
Arlington, VA 22203
(703) 504-2841
(703) 525-2349 fax

Of Counsel to
THE CENTECH GROUP, Inc.