# In the United States Court of Federal Claims

**No. 07-513C**

**(Filed Under Seal September 25, 2007)[1]**
**(Reissued September 27, 2007)**
**Bid Protest**

* * * * * * * * * * * * * * * * * * * * * * * *

**THE CENTECH GROUP, INC.,** *
*
**Plaintiff,** *
*
**v.** *
*
**THE UNITED STATES,** *
*
**Defendant,** *
*
**and** *
*
**TYBRIN, INC.,** *
*
**Intervenor.** *

* * * * * * * * * * * * * * * * * * * * * * * *

**Preaward Bid Protest; Standing; Justiciability; Mootness; Ripeness; Corrective Action; Government Accountability Office; Jurisdiction; RCFC 12(b)(1).**

Kenneth A. Martin, Martin & Associates, 6723 Whittier Avenue, Suite 200, McLean, VA 22102, for Plaintiff.

Arlene P. Groner, U.S. Department of Justice, Civil Division, Commercial Litigation Branch,1100 L Street, NW, Room 7024, Washington, D.C. 20530, for Defendant.

John S. Pachter, Jonathan D. Shaffer, and Mary Pat Gregory, Smith Pachter McWhorter PLC, 8000 Towers Crescent Drive, Suite 900, Vienna, VA 22182, for Intervenor.

---

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S AND INTERVENOR'S MOTIONS TO DISMISS IN PART**

---

**WILLIAMS**, Judge

[1] This opinion was issued under seal on September 25, 2007. The Court invited the parties to submit proposed redactions by September 28, 2007. No redactions having been received, the Court publishes this opinion in toto.

In this bid protest, Plaintiff, the Centech Group, Inc. (Centech), challenges the Air Force's de facto rescission of its services contract and its decision to reopen discussions and solicit revised proposals -- corrective actions the Air Force took to implement a recommendation by the Government Accountability Office (GAO) in a protest filed by Tybrin Corporation (Tybrin).[2] This procurement was a small business set-aside, and Tybrin contended in the GAO protest that Centech failed to comply with the Limitations on Subcontracting (LOS) clause, Federal Acquisition Regulation (FAR) 52.219-14, which requires that a small business perform at least 50 percent of the labor cost using its own personnel. Although the Small Business Administration (SBA) had determined that Centech complied with this clause and found Centech to be a responsible small-business offeror, GAO deemed compliance with the LOS clause to be a matter of proposal acceptability, not responsibility, and found that Centech's proposal did not meet the 50 percent personnel requirement. In response to the GAO's recommendation for corrective action, the Air Force issued Amendment 3 to the solicitation requesting revised proposals. All four offerors, including Centech, submitted revised proposals on July 31, 2007, and these proposals are currently being evaluated. The Air Force intends to make an award in February, 2008.[3] Plaintiff asks this Court to reinstate its original award and declare that the Air Force's decision to follow GAO's recommendation and take corrective action was arbitrary and capricious.[4]

This matter comes before the Court on Defendant's and Intervenor's motions to dismiss on standing, justiciability and ripeness grounds. These parties also seek dismissal of any claims challenging GAO's substantive and procedural rulings. Finally, Defendant and Intervenor contend that Plaintiff's protest of the suspension of its contract is a disguised termination for convenience claim which must be brought under the Contract Disputes Act (CDA).

Because Plaintiff is an actual offeror with a direct economic interest in the challenged procurement actions -- the rescission of its contract award and the reopening of discussions and evaluation of revised proposals -- it has standing. Further, the case is justiciable in its present posture because Plaintiff is lodging a preaward protest against the implementation of Amendment 3 to the solicitation, which this Court has the authority to review. The controversy is ripe for review as it does not rest upon contingent or speculative future events.[5] Contrary to Defendant's and

---

[2] Tybrin, the incumbent contractor, is an intervenor in this action. This opinion memorializes and explains an oral ruling issued on September 18, 2007.

[3] The Air Force has committed that it will not make an award before the Court renders a decision in the instant protest. Plaintiff did not seek to enjoin the submission of revised proposals or the evaluation of such proposals pendente lite.

[4] Specifically, Plaintiff asks the Court to enjoin the Air Force from expending any funds for the subject services except under the contract originally awarded to Centech. Compl. at 1.

[5] The argument that Plaintiff will not suffer harm unless and until a new award is made under Amendment 3 to another vendor is flawed. Plaintiff has lost its award as a direct result of

Intervenor's assertions Plaintiff has not raised a CDA claim, and has not sought termination for convenience costs in this action. Rather, Plaintiff has challenged the agency's conduct in an ongoing procurement which has yet to result in an award -- an amendment to the solicitation and the de facto recission of its contract, -- and has sought injunctive relief and bid and proposal preparation costs. As such, the Court views the action as a bid protest.

Defendant and Intervenor are correct that this Court does not have jurisdiction to review GAO's procedural or substantive decisions. Thus, to the extent Plaintiff's allegations seek reversal of the GAO decision, they are dismissed.[6]

## Background[7]

### The Solicitation

On February 28, 2005, the Air Force issued request for proposals (RFP) number FA9300-04-R-0040 for advisory and assistance services to support the Aerospace Research, Development, Test and Evaluation Activities (ARDTEAS) at the Air Force Flight Test Center at Edwards Air Force Base in California. AR, Tab 4 at 151.

The RFP provided for the award of a "hybrid" cost reimbursement and fixed-price contract depending upon the service being provided. Specifically, the RFP sought advisory and assistance services on a cost-plus-award-fee basis, direct costs such as travel and materials on a cost reimbursement basis, and phase-in services on a fixed-priced-award-fee basis. Award was to be made to the proposal offering the best value considering four evaluation factors: (1) Mission

---

Amendment 3 -- a procurement action it claims was illegal and unwarranted -- and is entitled to challenge that action now.

[6] In its complaint, Centech alleged that GAO lacked jurisdiction over Tybrin's protest, that Tybrin's protest was untimely, and that GAO's decision sustaining Tybrin's protest was arbitrary and capricious. Although Plaintiff argued that it was not asking the Court to review GAO's decisions, the other parties requested that the Court clarify the Court's role vis-a-vis GAO decisions. As explained below, the Court is reviewing the agency's procurement decision, not GAO's decision. However, because the Air Force relied upon GAO's recommendation, the Court can consider whether GAO's ruling on the procurement decision challenged here was rational. The GAO's recommendation comes into play because the Air Force is invoking GAO's recommendation to bolster the rationality of its corrective action. However, this Court lacks the authority to review GAO's determination of its own jurisdiction or its conclusion that Tybrin's protest was timely under GAO's own rules.

[7] This background is derived from the Complaint and the Administrative Record. Because Defendant and Intervenor in their motions to dismiss allege a lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC) and dispute jurisdictional facts alleged in the complaint, it is appropriate for the Court to look to materials outside of the pleadings in resolving the motion.

Capability, (2) Proposal Risk, (3) Past Performance, and (4) Cost/Price. The RFP was a 100 percent set aside for small business concerns.

The solicitation's performance requirements document (PRD) described tasks to be performed by the successful contractor, including the provision of "assistance with business management in support of ground test, flight test and other associated test and support activities," the support of "all phases of acquisition from identification of needs through contract performance," as well as the provision of systems engineering and technical assistance "required to support ground and flight test and related activities." RFP PRD at 4-5, 8.

The RFP incorporated by reference Federal Acquisition Regulation (FAR) Clause 52.219-14, Limitations on Subcontracting. This clause provided:

> (b) By submission of an offer and execution of a contract, the Offeror/Contractor agrees that in performance of the contract in the case of a contract for --
>
> (1) Services (except construction). At least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern [submitting the proposal].

The Air Force disclosed to offerors that it would interpret this clause in accordance with its Air Force Policy Memorandum 2004-PK-007. Tr. (Sept. 11, 2007) at 39. This Policy Memorandum stated:

> we interpret the clause 52.219-14 to mean that the minimum amounts of work can be performed by the collective efforts of either small business members of a formal joint venture or a small business prime contractor together with the first tier small business subcontractor(s), when the circumstances outlined in attachment 1 are present.

Compl. ¶ 11; AR, Tab 137 at 016983.

**<u>The Evaluation and Award</u>**

Four small business concerns submitted proposals to the Air Force on or about April 1, 2005. Centech disclosed in its proposal that the "team" of Centech and its small business subcontractors would collectively perform 66.2% of the contract's personnel costs. Compl. ¶ 12. The Air Force conducted discussions with offerors from September 6 through December 1, 2005. Offerors submitted final proposal revisions (FPRs) on or about December 15, 2005, and revised Cost/Price FPRs on or about February 22, 2006. Award was made to Centech in April 2006. Compl. ¶ 19.

**<u>Tybrin's GAO Protest of the Award to Centech</u>**

On May 26, 2006, Tybrin protested the Centech award to the GAO. AR, Tab 3 at 000107.

Among other things, Tybrin claimed that the Air Force failed to evaluate proposals in accordance with the stated RFP evaluation criteria, failed to conduct meaningful discussions, and failed to conduct a proper best value determination. AR, Tab 3 at 000113-25, 000143-44.

On June 29, 2006, Tybrin filed a supplemental protest with GAO, claiming that the Air Force's interpretation of FAR Clause 52.219-14 "Limitations on Subcontracting" was incorrect, and that the Air Force should have disqualified Centech's proposal for noncompliance with this clause. AR, Tab 133 at 16955-960.

**GAO Review and Request for SBA Advice**

In considering Tybrin's supplemental protest, GAO requested the views of the Small Business Administration (SBA) on the Limitations on Subcontracting clause. On August 2, 2006, the SBA rendered an opinion to GAO, concluding that the Air Force's interpretation of FAR clause 52.219-14 was incorrect, and advising GAO that the SBA possessed the exclusive jurisdiction to determine Centech's compliance with FAR Clause 52.219-14 under its Certificate of Competency (COC) Program. AR, Tab 146 at 017226. SBA advised that contrary to the Air Force's memorandum, "in general, a small business receiving a prime contract award as a result of a solicitation set aside for SBCs must meet the subcontracting limitation set forth in statute and regulations itself." AR, Tab 146 at 017227. The SBA stated:

> In the present case, we do not have a complete record to determine whether or not CENTECH and its small business subcontractors have an informal or formal joint venture relationship . . . Nonetheless, we believe that this is not an issue to be resolved in the course of a GAO protest, but is to be resolved in a COC ["Certificate of Competency"] proceeding. The Small Business Act provides in pertinent part that SBA is "empowered, whenever it determines such action is necessary:
>
> > to certify to Government procurement officers, . . . , with respect to all elements of responsibility, including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, and tenacity, of any small business concern or group of such concerns to receive and perform a specific Government contract. A Government procurement officer . . . , may not, for any reason specified in the preceding sentence, preclude any small business concern or group of such concerns from being awarded such contract without referring the matter for a final disposition to the Administration.

AR, Tab 146 at 017226.

GAO nonetheless assumed jurisdiction over Tybrin's protest and communicated to the Air Force its intent to sustain the protest if the Air Force failed to implement corrective action. Compl. ¶ 28. The Air Force took corrective action and disclosed that it would reconsider whether Centech met the requirements for award based on the SBA's interpretation of FAR Clause 52.219-14 as opposed to the interpretation in the Air Force Policy Memorandum. AR, Tab 147 at 017230. Based on the Air Force's Notice of Corrective Action, GAO dismissed Tybrin's protest as academic on August 4, 2006. AR, Tab 148 at 017233.

**<u>The Air Force's Determination that Centech Lacked Responsibility and Referral to SBA</u>**

On September 6, 2006, the Air Force issued a determination of nonresponsibility, stating that based solely on the information received from Centech with its proposal, Centech would perform only 43.2% of the work with its own personnel. AR, Tab 151 at 017296. On September 8, 2006, the Air Force notified Centech that it was rescinding the Centech contract based on the Air Force's conclusion that Centech had not proposed to perform 50% of the cost of labor with Centech's own employees. AR, Tab 152 at 017298.

On September 15, 2006, the Air Force referred the matter of Centech's responsibility to the SBA under the SBA's COC procedures. AR, Tab 154 at 017304. The Air Force's referral stated "Centech Group did not meet the subcontracting limitation requirements set forth in statute and regulation . . . ." AR, Tab 154 at 017305.

In the COC proceeding, Centech submitted to SBA and the Air Force contracting officer (CO) documents not included in Centech's proposal such as narratives, a compliance matrix and spreadsheets, which purported to show that Centech would comply with requirements of the subcontracting limitation clause. AR, Tab 158 at 017330; AR, Tab 255 at 019788; Tr. (Sept. 11, 2007) at 41; Plaintiff's Memorandum in Support of Motion for Preliminary and Permanent Injunction at 25 (". . . Centech submitted to the Contracting Officer its cost estimating model provided with its original proposal updated to reflect actual contract performance data."). SBA determined Centech to be a responsible offeror and issued a COC to Centech. AR, Tab 145 at 017111, Tab 158 at 017327, 017330, Tab 255 at 019794, n.3.

**<u>The Air Force's Reinstatement of the Award to Centech</u>**

On December 21, 2006, the Air Force reinstated the award to Centech based on the SBA's issuance of the COC. AR, Tab 161 at 017339.

**<u>Tybrin's GAO Protest Against the Reinstatement of Centech's Award</u>**

On December 29, 2006, Tybrin filed a GAO protest against the Air Force's December 21, 2006 reinstatement of the award to Centech. Tybrin claimed that Centech's proposal, on its face, indicated Centech had not offered to comply with the subcontracting limitation. AR, Tab 145 at 017082.

On February 2, 2007, Tybrin filed a supplemental protest based on documents it received in its GAO protest which Centech had submitted to the SBA in conjunction with the COC proceeding. AR, Tab 255 at 019794, n.3. Tybrin protested that Centech improperly changed its proposal after the RFP due date, contrary to FAR 15.306 and 15.307. See AR, Tab 255 at 019794, n.3, 019796, n.4.

**GAO's Decision Sustaining Tybrin's Protest**

On March 13, 2007, GAO sustained Tybrin's protest, stating that Centech's proposal could not form the basis of an award because the Air Force determined that the proposal on its face failed to comply with a material term of the solicitation (i.e., the small business limitation on subcontracting requirement). AR, Tab 255 at 019788. GAO concluded that because Centech's proposal provided that only 43.2 percent of the cost of personnel would be expended for Centech employees, the Air Force should have evaluated Centech's proposal as unacceptable instead of referring the matter to the SBA for a COC determination. AR, Tab 255 at 019795.

In recommending corrective action, GAO stated:

> We recommend that the Air Force reopen discussions and request and review revised proposals, evaluate those submissions consistent with the terms of the solicitation, and make a new source selection decision. In the event a proposal other than CENTECH's is found to represent the best value to the government, CENTECH's contract should be terminated and the contract awarded to the successful offeror in accordance the terms of the RFP.

AR, Tab 255 at 019796. In a footnote, GAO stated:

> Because we sustain TYBRIN's protest and recommend the reopening of discussions, we need not resolve TYBRIN's allegations regarding the evaluation of its and CENTECH's proposals and the selection of CENTECH's proposal for award, or its allegations that the evaluation evidences bias against TYBRIN, that CENTECH has an organizational conflict of interest that renders it ineligible for award, that CENTECH was improperly permitted by the SBA to alter its proposal and status after the agency had received and evaluated the offerors' proposal revisions, or that the Air Force had deprived TYBRIN of meaningful discussions. However, as the Air Force proceeds with its corrective action, it may want to be mindful of the issues raised by TYBRIN in its protests, including TYBRIN's assertion that the agency failed to adequately consider potential organizational conflicts of interest related to [DELETED] (one of [CENTECH's] proposed subcontractors).

AR, Tab 255 at 019796, n. 4.

On March 23, 2007, the SBA requested reconsideration of the GAO decision. Compl. ¶ 53. On April 17, 2007, GAO denied the SBA's request for reconsideration. AR, Tab 256 at 019798-801.

**Amendment 3**

On June 29, 2007, the Air Force issued Amendment 3 to the solicitation stating in pertinent part:

> 1. The subject amendment is issued in response to the GAO recommendation to re-open discussions with all offerors while mindful of their other comments as a result of GAO's 13 Mar 07 decision sustaining the protest with regards to the government's interpretation of the Limitations on Subcontracting clause as it related to proposal evaluations. Due to the length of time that has elapsed since the RFP was issued and proposals were received and evaluated, this amendment updates the RFP and requests offerors to submit updated proposals. The passage of time has made it necessary to appoint a new evaluation team that will conduct a complete evaluation of all updated proposals. The new teams will not have access to the previous proposals nor the former evaluations conducted.
>
> 2. The Air Force is mindful that subcontractor relationships may have changed in this interval as well as other time sensitive aspects of an offeror's proposal. Offerors are therefore requested to revive their proposals and make any needed changes in response to the updates/changes in the RFP or as a result of correctly interpreting the Limitations on Subcontracting clause. . . .
>
> a. Be mindful that FAR 52.219-8, Utilization of Small Business Concerns, is applicable to your proposal. (See Section L, paragraph 3.7.4 & Section M, paragraph 6.2.3)[8]
>
> . . . .

[8] Section M, paragraph 6.2.3, Performance Quality Assessment, of the solicitation states in part "[t]he Government will consider the performance quality of recent relevant contracts assessed . . . . Pursuant to DFARS 215.305(a)2, the assessment will consider the extent to which the offerors past performance demonstrates compliance with FAR 52.219-8, Utilization of Small Business Concerns. AR, Tab 4 at 000220.

3. AFMC Policy Memo 2004-PK-007, dated 19 Aug 2004, titled "Limitations on Subcontracting, FAR Clause 52.219-14 (Dec 1996)" has been rescinded. Compliance with FAR 52.219-14 Limitations on Subcontracting, dated Dec 1996, as written is required, which requires of the prime contractor/concern that ". . .at least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern." Proposals must comply with this requirement in order to be eligible for award.

4. The revised period of performance for the ARDTEAS contract consists of an 8 month Basic Period from 1 Feb 08 through 30 Sep 08 (includes 90 day Phase-In) and 12 one-year option periods coinciding with the Government fiscal years of FY 2009 through FY 2020.

5. The ARDTEAS RFP has been updated due to the passage of time since it was first issued. The updates will ensure consistency and relevancy of data submitted. Some of the key updates are as follows:

a. Schedule B has been updated to reflect the revised period of performance. Note that clause B049 has been added to capture all of the costs associated with the option periods. The option CLINs now refer to clause B049. Please ensure your proposed costs for the option periods are provided in B049 in your updated proposal.

b. The clauses included in all sections of the RFP have been updated to reflect what is required under the current FAR, DFARS, AFFARS and the AFMCFARS. . . .

c. The Performance Requirements Document (PRD) has been updated due to the passage of time. *You are advised to review the PRD in its entirety*. Please note that the Contract Manyear Equivalents (CME's) provided in Appendix A to the PRD reflect the current government projection as to its future needs. [Note: One CME is equivalent to 1820 productive hours in this Government projection. You are not constrained in your proposal to use the Government's 1820 productive hours.]

. . . .

6. Please ensure your ORCA certifications and representations are current. In addition, a new Section K must be submitted in Volume 4 of your updated proposal.

> 7. A complete Organizational Conflict of Interest (OCI) Mitigation Plan must be submitted with your updated proposal. If your original plan does not need to be updated, please resubmit your original plan.

AR, Tab 257 at 19803-06.

## Discussion

### Standard of Review

In ruling on a motion to dismiss under Rule 12(b)(1), usually the Court must accept as true the facts alleged in the complaint, and jurisdiction is decided on the face of the pleadings. Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572 (Fed. Cir. 1996); see generally 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004). However, when a Rule 12(b)(1) motion challenges the factual basis for this Court's subject-matter jurisdiction, the allegations in the complaint are not controlling, and the Court may review evidence outside the pleadings in determining whether it has jurisdiction to hear the case. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993).

When a defendant challenges this court's jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Here, because the motions to dismiss for lack of subject-matter jurisdiction dispute jurisdictional facts, the Court may consider other relevant evidence to resolve the factual dispute. Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999) (citing Reynolds, 846 F.2d at 747). Plaintiff alleged that it lost its contract award and that the Air Force illegally rescinded its contract in taking the corrective action GAO recommended. Compl. ¶¶ 61, 69, 76, 97, 99-103. Defendant and Intervenor dispute that Centech lost its contract, claiming that the contract was not rescinded but suspended and remains in place. Defendant claims that Centech lacks standing because Plaintiff remains the successful awardee and has not been injured. Both Defendant and Intervenor claim that there is no justiciable controversy and the action is premature because no harm will inure to Centech unless and until award is made to another offeror in February 2008. In order to resolve these disputes, the Court is required to probe documents outside of the complaint explaining what corrective action the Air Force took and what impact that action had on Plaintiff's prior award. This requires the Court to consider Amendment 3 to the solicitation and related documents in the Administrative Record.[9]

---

[9] Although Plaintiff challenged the recission of its award and the Air Force's implementation of GAO's recommended "corrective action," it does not elaborate on what that corrective action entailed. The complaint does not itself mention Amendment 3, although all parties acknowledge that this amendment embodied the corrective action in significant part.

**Standing**

As a threshold matter, Plaintiff must establish standing to invoke the Court's jurisdiction. Sicom Sys., Ltd. v. Agilent Techs, Inc., 427 F.3d 971, 975 (Fed. Cir. 2005); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002). Plaintiff's standing must be established by a preponderance of the evidence. Reynolds, 846 F.2d at 748. "Because standing is jurisdictional," a finding that a plaintiff has failed to carry his burden of establishing standing "precludes a ruling on the merits." Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1370 (Fed. Cir. 2003).

The Court of Federal Claims has jurisdiction over challenges to certain federal procurement decisions pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1) (2000). In 1996 Congress clarified the bid protest jurisdiction of the Court of Federal Claims in the Administrative Dispute Resolution Act of 1996 (ADRA) as follows:

> Both the Unite[d] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2000) (emphasis added).[10]

In American Federation of Government Employees, AFL-CIO v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (AFGE), the Federal Circuit concluded that Congress intended that the term "interested party" in § 1491(b)(1) be construed in accordance with the Competition in Contracting Act (CICA), 31 U.S.C. § 3551(2)(A) (2000). CICA defines "[t]he term 'interested party,' with respect to a contract or a solicitation or other request for offers . . . [as] an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551 (2)(A) (2000). As such, in order to establish standing, a plaintiff must show that it (1) is an "interested party," i.e., an actual or prospective bidder or offeror and (2) has "direct economic interest . . . affected by the award of the contract or by failure to award the contract." Rex Service Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (quoting AFGE, 258 F.3d at 1302).

---

[10] On January 1, 2001, the District Court's jurisdiction over bid protests was extinguished de jure making the COFC the sole judicial forum for bid protests.

Defendant argues that because Plaintiff continues to be the awardee it lacks standing. This characterization ignores the reality of what transpired here. While technically the Air Force purported merely to "suspend" Centech's contract award, it went on to issue Amendment 3, solicit what may be substantially revised proposals from all four offerors, and impanel a completely new team to evaluate those revised proposals.[11] As such, the former award to Centech is a nullity -- the terms of the solicitation under which that contract was awarded are no longer viable, and the previous evaluations are of no consequence. Rather, offerors were permitted to revise both the technical and cost terms of their proposals, and one of these revised offers -- not the suspended award to Centech -- will be selected by a new evaluation team.[12] Because Centech was stripped of its status as the successful awardee de facto and relegated to competing anew, it does not remain the successful awardee. As such, Centech clearly meets the CICA criteria for standing: it was an actual offeror and has a direct economic interest affected by the Air Force's rescission of its award and revamped solicitation effort. Although Centech may have an opportunity to receive a different award under Amendment 3 and the revised criteria, this does not deprive it of standing to challenge the earlier procurement action, i.e., the rescission of the award it already won under what it claims was a fair competition under the original solicitation.[13]

**Justiciability**

Intervenor argues that Centech does not assert a justiciable claim because typically an agency's offer to institute corrective action renders a protest moot. While this observation may be true in some circumstances, it does not apply here. In the instant case, the corrective action is itself the agency decision which is being challenged. While the issuance of Amendment 3 may have

---

[11] See Tr. (Sept. 11, 2007) at 48.

[12] Under the terms of Amendment 3 the new team is prohibited from considering the prior evaluation.

[13] Moreover, Plaintiff contends that because its pricing was disclosed, it was forced to lower its pricing in its revised proposal and suffered competitive harm in this regard as well. Pl.'s Opp. at 11. Plaintiff argues:

> The economic pressure of another competition, and the fact [that] the Air Force already publicly disclosed the prices in CENTECH's contract, leaves CENTECH no choice but to become an unwilling participant in the Air Force's illegal re-competition, and to offer lower prices knowing that its competitors target the prices in its contract in their efforts to displace CENTECH as the Air Force's ARDTEAS service provider.

Id.

mooted the GAO protest, it does not moot the instant action.[14] Centech contends that the Air Force erred in rescinding its award and seeks injunctive relief preventing an award from being made under Amendment 3, as well as its bid and proposal preparation expenses incurred in responding to the solicitation.

Plaintiff argues that the LOS clause was not a mandatory requirement of the RFP which had to be met for evaluation purposes as a precondition to award. Rather, in Plaintiff's view, Centech's committment in its proposal to meet this provision during contract performance was sufficient. Centech contends that under this partial cost-plus contract, the precise tasks and percentages of work to be completed by Plaintiff's own personnel could only be determined after award when the tasks were ordered, making preaward compliance with the LOS clause impossible to evaluate. Plaintiff argues that compliance with this clause was not an evaluation factor under Section M of the solicitation and that a failure to comply with this clause could not serve as a basis for disqualification -- it was instead a matter of contract administration. Plaintiff submits that it never should have been deemed noncompliant with the LOS clause, Amendment 3 never should have been issued for this reason, and the award can be restored to it.[15] As such, this action is not moot -- the Air Force's issuance of Amendment 3 and de facto rescission of Plaintiff's award present live, concrete controversies.

**Ripeness**

Defendant and Intervenor contend that Centech's claim is not ripe yet because it may receive the award in February 2008 or take another bite of the protest apple in the event it is not then the awardee. However, these potentialities do not render Centech's present protest premature. Centech alleges that it was harmed by the issuance of Amendment 3 and the rescission of its contract. In essence, the procurement violation Plaintiff is now alleging is preaward conduct, i.e., the issuance and implementation of Amendment 3 taken as corrective action. These procurement decisions are distinct from any future evaluation and award and give rise to different controversies than those which may arise from the new evaluation and award in the post-award landscape. If the Court were to refuse to address this preaward challenge now and force Plaintiff to await an award under Amendment 3, it would deprive Plaintiff of the potential remedy it seeks -- an invalidation of Amendment 3 and a declaratory judgment that the rescission of its earlier award was unwarranted

---

[14] Rather, the corrective action which would render this protest moot would be the Air Force's nullification of Amendment 3 and reinstatement of Centech's award.

[15] Defendant and Intervenor argue that this Court lacks the authority to direct an award to Plaintiff. While the Court should refrain from injecting itself into the procurement process and acting as a super source selection authority, Plaintiff claims that fashioning relief in the instant protest need not be so invasive. Plaintiff has asked the Court to declare that the Air Force's corrective action was illegal in that Centech's lack of compliance with the LOS clause did not itself justify either issuance of Amendment 3 or the ensuing corrective action. Plaintiff claims that it is not asking the Court to direct an award but merely to reinstate the proper award the Air Force previously made and rescinded without justification.

and unlawful.

So too, the process Defendant and Intervenor seek to impose -- deferring judicial review until after award -- would render the grounds of Plaintiff's current protest untimely after award. As the Federal Circuit has recognized, the challenge to terms of a solicitation containing a patent error must be raised preaward or the ability to raise such an objection is waived. Blue & Gold Fleet, LLP v. United States, 492 F.3d 1308, 1313 (June 26, 2007).[16] As the Federal Circuit explained:

> We note that several decisions of the Court of Federal Claims have recognized the utility of the GAO timeliness regulation and concluded that where there is a "deficiency or problem in a solicitation . . . the proper procedure for the offeror to follow is not to wait to see if it is the successful offeror before deciding whether to challenge the procurement, but rather to raise the objection in a timely fashion." N.C. Div. of Servs. for the Blind v. United States, 53 Fed. Cl. 147, 165 (2002); see also Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 175 n.14 (2005); MVM, Inc. v. United States, 46 Fed. Cl. 126, 130 (2000); Allied Tech. Group, Inc. v. United States, 39 Fed. Cl. 125, 146 (1997); Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 358 (1994). The reasons expressed by the Court of Federal Claims mirror those underlying the patent ambiguity doctrine.
>
> > It would be inefficient and costly to authorize this remedy after offerors and the agency had expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation. Vendors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award [sic] and then, if unsuccessful, claim the solicitation was infirm.

Blue & Gold Fleet, 492 F.3d at 1314-15, quoting Argencord, 68 Fed. Cl. at 175 n.14.

Thus, refusing to address Plaintiff's preaward protest to Amendment 3 would be tantamount to denying judicial review of its present grounds of protest. Because Plaintiff's bid protest is not premature and withholding judicial review at this juncture would cause hardship to Plaintiff, the matter is ripe for review.

---

[16] The instant protest was filed before the receipt of revised proposals under Amendment 3.

**Reviewability**

Defendant and Intervenor also suggest that an agency's corrective action in a bid protest is unreviewable because such action is within the agency's unfettered discretion and necessarily reasonable.[17] The Court's role in a bid protest is to assess whether the agency's procurement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The fact that an agency procurement action was taken as corrective action resulting from a GAO bid protest does not immunize that action from judicial review. As the Federal Circuit recently recognized, this Court possesses jurisdiction to determine if the corrective action taken by a procuring agency as a result of a bid protest was reasonable under the circumstances. Chapman Law Firm v. United States, 490 F.3d 934, 938 (2007). The Chapman Court stated "the Court of Federal Claims' inquiry into the reasonableness of the Government's first proposed corrective action, and the court's subsequent determination that the proposed corrective action was not reasonable, were proper." Chapman, 490 F.3d at 938; see also Honeywell Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (presuming the court's jurisdiction to review corrective action and articulating that the court must assess whether the GAO decision on which the agency relied was rational).

**Jurisdiction to Review GAO Decisions**

In its complaint, Centech alleges that (1) GAO lacked jurisdiction over Tybrin's protest, (2) Tybrin's protests before GAO were untimely, and (3) GAO acted "illegally" and "arbitrarily," in granting Tybrin's protest. Compl. ¶ ¶ 22-25, 28, 42, 44-47, 48-52, 56-57, 59-61, 63-69, 81, 85-90. This Court, however, will not undertake a review of GAO's procedural or substantive decisions.

GAO is an arm of the Congress, and its bid protest jurisdiction apparently derives from its authority to settle claims against the Government and to certify and revise public accounts.[18] GAO's decisions are recommendations and are not subject to review in any court. In 1984, under CICA, GAO for the first time acquired explicit statutory authority to preside over "protest[s] concerning an alleged violation of a procurement statute or regulation." 31 U.S.C. § 3552. If a protest is sustained, CICA permits GAO to recommend an appropriate remedy "to promote compliance with procurement statutes and regulations," which may include ordering a new solicitation, terminating the contract, limiting the existing contract to bring it into compliance with procurement law, or awarding the

---

[17] Invoking RCFC 12(b)(6), Intervenor claims Plaintiff has failed to state a claim upon which relief can be granted given the contracting officer's unfettered discretion to take corrective action. Intervenor's Motion to Dismiss at 20-22. Neither Defendant nor Intervenor claims that the decision is committed to agency discretion by law. 5 U.S.C. § 701(a)(2).

[18] See Alex D. Tomaszczuk and John E. Jensen, The Adjudicatory Arm of Congress -- The GAO's Sixty-Year Role in Deciding Bid Protests Comes Under Renewed Attack by the Department of Justice, 29 Harv. J. on Legis. 399, 402-03 (1992); see also Bowsher v. Synar, 478 U.S. 714, 730-31 (1986).

protester its bid preparation and protest costs. 31 U.S.C. § 3554.[19]

Because the Comptroller General may only "recommend" a remedy upon finding a procurement violation, GAO's rulings do not legally bind the parties to a bid protest. 31 U.S.C. § 3554(b), (c); see Cubic Applications, Inc. v. United States, 37 Fed. Cl. 339, 341 (1997) ("Neither the agency nor this court is bound by the determination of the GAO."); see also Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (finding that trial court is not bound by GAO recommendation and must determine whether GAO's decision itself was irrational in reviewing agency action which relied upon GAO decision).

Section 1491(b) gives this Court jurisdiction to review an agency procurement decision, not the GAO's review of that agency procurement decision.[20] See Advanced Constr. Servs., Inc. v. United States, 51 Fed. Cl. 362, 365 (2002) ("Construing § 1491(b)(1) in the expansive manner advocated by [Plaintiff] would violate the well-settled principle that it is the agency's decision, not the decision of the GAO that is the subject of judicial review when a bid protestor protests an award previously reviewed by the GAO.").

Although GAO's actions are not reviewable in this Court, this does not mean that the Court cannot consider GAO's decision at all. Indeed, CICA requires that the GAO decision be part of the administrative record in the Court's protest action. See 31 U.S.C. § 3556. Further, to the extent that the agency relied upon GAO's decision as a basis for taking corrective action, GAO's decision is pivotal for the Court's review of the agency's procurement decision. See, e.g., Honeywell, 870 F.2d at 648 (stating that in deciding whether an agency justifiably followed GAO's recommendation, this court's controlling inquiry is whether GAO's decision was rational and cautioning the court not to undertake a de novo review of the underlying issue).[21]

---

[19] If an agency chooses not to implement a GAO recommendation, the agency's procurement officer must report that decision to the Comptroller General within 60 days of the GAO decision. 31 U.S.C. § 3554(b)(3). The Comptroller General must then file a report with the relevant Congressional committees containing a comprehensive review of the bid protest and a recommendation regarding what remedy (if any) Congress should consider taking. Id. § 3554(e)(1). The Comptroller General also must file a report with Congress at the end of each year summarizing all instances of agency noncompliance with GAO recommendations in the preceding year. Id. § 3554(e)(2).

[20] Further, the right to file a protest in the Court of Federal Claims is unaffected by GAO's protest process. CICA provides that "nothing contained in this subchapter shall affect the right of any interested party to file a protest with the contracting agency or to file and action" in the Court of Federal Claims. 31 U.S.C. § 3556.

[21] See also, Grunley Walsh Int'l, LLC v. United States, 2007 U.S. Claims LEXIS 262 (Ct. Cl. August 3, 2007) (finding that agency's reliance on GAO decision was arbitrary and capricious because GAO decision was "not in accordance with law and lacked a rational basis."); cf., Geo-Seis Helicopters, Inc. v. United States, 77 Fed. Cl. 633, 645 n. 29 (2007) (abjuring GAO holdings which

**Plaintiff Has Not Alleged A Claim Under the CDA**

Finally, Defendant and Intervenor argue that Centech's challenge to the Air Force's rescission of the Centech contract is an action under the Contract Disputes Act (CDA) since Centech essentially challenges a termination of its contract for convenience. However, Plaintiff does not characterize its action in this fashion, does not seek termination for convenience costs, or appeal a contracting officer's final decision. Rather, it seeks to overturn preaward agency conduct in an ongoing procurement rescinding its original award and reopening discussions. This is a quintessential bid protest and is not a "claim" relating to its performance of a contract under the CDA.

**Conclusion**

1. Defendant's and Intervenor's Motions to Dismiss are granted in part insofar as this Court lacks jurisdiction to review GAO recommendations. However, the Court will consider GAO's decision in reviewing the agency's procurement action because the agency relied upon the GAO's recommendation in effecting the challenged procurement decision.

2. Defendant's and Intervenor's Motions to Dismiss are denied in all other respects: Plaintiff has standing; this action is justiciable and ripe. The Air Force's corrective action is reviewable.

3. This decision is issued under seal. The parties shall file any proposed redactions by **September 28, 2007**. The party proposing a redaction has the burden of establishing that the proposed redacted material is protected.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

nullified the FAR's late-is-late rule); Gentex Corp. v. United States, 58 Fed. Cl. 634, 636 n. 3 (2003) (recognizing GAO's longstanding expertise in the bid protest arena, but sustaining a ground of protest which GAO had denied where an allegation was more fully developed before the Court).