No. 07-513C
(Judge Coster Williams)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE CENTECH GROUP, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

TYBRIN, INC.

Intervenor.

# DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DEBORAH A. BYNUM
Assistant Director

ARLENE PIANKO GRONER
Trial Attorney
National Courts Section
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 307-0162
Fax: (202) 305-7643
Attorneys for Defendant

OF COUNSEL:

JOHN G. TERRA
Trial Attorney
U. S. Air Force Legal Operations Agency
Commercial Litigation Division
Arlington, Virginia

September 26, 2007

# TABLE OF CONTENTS

STATEMENT OF THE ISSUE . . . . . 1

STATEMENT OF THE CASE . . . . . 2

I. NATURE OF THE CASE . . . . . 2

II. STATEMENTS OF FACTS . . . . . 3

SUMMARY OF ARGUMENT . . . . . 15

ARGUMENT . . . . . 16

I. STANDARD OF REVIEW . . . . . 16

A. Standard of Review under RCFC 52.1(b) . . . . . 16

B. Standard of Review of Corrective Actions . . . . . 17

II. THE AIR FORCE ACTED REASONABLY IN FOLLOWING THE RECOMMENDATIONS OF THE GAO . . . . . 18

A. The Air Force's Decision To Amend the Solicitation and Reopen Discussions Was Reasonable . . . . . 19

B. Rejection Of Updated Information Was Reasonable . . . . . 22

C. The Air Force Did Not Usurp The SBA's Authority . . . . . 23

D. The Air Force Has Not Rescinded CENTECH's Contract . . . . . 25

III. CENTECH IS NOT ENTITLED TO INJUNCTIVE RELIEF . . . . . 25

CONCLUSION . . . . . 29

# TABLE OF AUTHORITIES

## CASES

A & D Fire Protection, Inc. v. United States,
72 Fed. Cl. 126 (Fed. Cl. 2006) . . . . . 16

Aero Corp. v. United States,
38 Fed. Cl. 237 (1997) . . . . . 28

CHE Consulting, Inc. v. United States,
74 Fed. Cl. 742 (Fed. Cl. 2006) . . . . . 17, 18

CW Government Travel, Inc. v. United States,
46 Fed. Cl. 554 (2000) . . . . . 27

Carothers Const. Inc. v. United States,
18 Cl. Ct. 745, 751 (1989) . . . . . 17, 19

Chapman Law Firm Co. v. Greenleaf Const. Co.,
490 F.3d 934 (Fed. Cir. 2007) . . . . . 18

Chapman Law Firm Co. v. United States,
71 Fed. Cl. 124 (Fed. Cl. 2006) . . . . . 18, 21, 25

Cincom Sys., Inc. v. United States,
37 Fed. Cl. 263 (1997) . . . . . 28

Citizens to Preserve Overton Park, Inc. v. Volpe,
401 U.S. 402 (1971) . . . . . 18

Comprehensive Health Serv., Inc. v. United States,
70 Fed. Cl. 700 (Fed. Cl. 2006) . . . . . 17

Data Monitor Systems, Inc. v. United States,
74 Fed. Cl. 66 (2006) . . . . . 19, 20

ECDC Environmental, L.C. v. United States,
40 Fed. Cl. 236 (1998) . . . . . 23

Firth Construction Co., Inc. v. United States,
36 Fed. Cl. 268 (1996) . . . . . 16, 23

Freightliner Corp. v. Caldera,
225 F.3d 1361 (Fed. Cir. 2000) . . . . . 27

Griffy's Landscape Maintenance LLC v. United States,
51 Fed. Cl. 667 (2001) . . . . . . . . . . 19

Honeywell, Inc. v. United States,
870 F.2d 644 (Fed. Cir. 1989) . . . . . . . . . . 17, 19

IMS Services, Inc. v. United States,
33 Fed. Cl. 167 (1995) . . . . . . . . . . 27

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) . . . . . . . . . . 17, 18

La Gloria Oil and Gas Co. v. United States,
72 Fed. Cl. 544 (2006) . . . . . . . . . . 26

ManTech Telecommunications & Info. Sys. Corp. v. United States,
49 Fed. Cl. 57 (2001) . . . . . . . . . . 17, 18, 19, 20

Orion Int'l Tech. v. United States,
66 Fed. Cl. 569 (2005), aff'd, 185 Fed. Appx. 966 (2006) . . . . . . . . . . 2

PGBA, LLC v. United States,
389 F.3d 1219 (2004) . . . . . . . . . . 26

Precision Standard, Inc. v. United States,
69 Fed. Cl. 738 (2006) . . . . . . . . . . 19, 23, 24

Rotech Healthcare Inc. v. United States,
71 Fed. Cl. 393 (2006) . . . . . . . . . . 16

In re Sang-Su Lee,
277 F.3d 1338 (Fed. Cir. 2002) . . . . . . . . . . 18

Textron, Inc. v. United States,
74 Fed. Cl. 277 (Fed. Cl. 2006) . . . . . . . . . . 17, 18

Toyo Menka Kaisha, Ltd. v. United States,
220 Ct. Cl. 597 F.2d 1371 (1979) . . . . . . . . . . 23

## STATUTES AND REGULATIONS

48 C.F.R. § 15.306 . . . . . . . . . . 24

5 U.S.C. § 706 . . . . . . . . . . 1, 17, 18

28 U.S.C. § 1491(b)(4) . . . . . . . . . . 17

31 U.S.C. § 3554(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

31 U.S.C. § 3554(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE CENTECH GROUP, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-513C |
| | ) | (Judge Coster Williams) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TYBRIN, INC. | ) | |
| | ) | |
| Intervenor. | ) | |

DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court deny the injunctive relief requested by plaintiff, THE CENTECH GROUP, Inc. ("CENTECH"), and issue judgment for the United States based upon the administrative record.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUE

Whether the Air Force's corrective action, taken in response to the March 13, 2007 decision of the Government Accountability Office ("GAO") ("the GAO Decision"), was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

## STATEMENT OF THE CASE

### I. NATURE OF THE CASE

CENTECH asks this Court to enjoin the corrective action taken by the Air Force in response to the GAO Decision, and to prohibit the Air Force from expending any funds for advisory or assistance services to support its Aerospace, Research, Development, Test and Evaluation Advisory and Assistance Services ("ARDTEAS") activities other than under the contract awarded to CENTECH on April 28, 2006, pursuant to request for proposals FA9300-04-0040 ("the RFP"). Complaint ("Compl.") at 1,[1] Prayer for Relief ¶ A; Motion for Preliminary and Permanent Injunctive Relief ("Motion"), including its memorandum ("Mem.") and supporting exhibits, at 1.[2] CENTECH contends that the Air Force acted arbitrarily, capriciously and in violation of the law when it implemented the GAO Decision by taking corrective action, Compl. Count I, and rescinding its contract. Compl. Count VI.

In lieu of an answer to the complaint, we filed a motion to dismiss CENTECH's complaint for lack of jurisdiction upon the grounds that CENTECH lacked standing and should have brought this claim under the Contract Disputes Act, 41 U.S.C. § 605(a), and that this Court cannot review the GAO Decision, resolve inter-agency disputes, or direct a contract award to

---

[1] On September 25, 2007, CENTECH filed a motion for leave to amend the complaint. We address the original complaint in this motion for judgment on the administrative record. We will file a separate response in opposition to the motion to amend and seek leave to amend this motion in the event that CENTECH is permitted to amend its complaint.

[2] Paragraph B of the Prayer for Relief appears to relate to another case. Neither ACA nor Fiore are parties to this case, and RFP No. DABK30-03-R-0013 is not at issue here. See Orion Int'l Tech. v. United States, 66 Fed. Cl. 569 (2005), aff'd, 185 Fed. Appx. 966 (2006).

[redacted]

CENTECH. On September 25, 2007, the Court issued a memorandum opinion and order ("Memorandum Opinion") under seal, denying our motion to dismiss in part, as well as the motion to dismiss filed by TYBRIN Corporation, Inc. ("TYBRIN"). We do not oppose the release of that opinion to the public without redaction.

## II. STATEMENT OF FACTS

The Air Force has spent many years developing the solicitation at issue in this case. On November 26, 2003, the Air Force notified prospective offerors that it was embarking upon a recompete of its Systems Engineering and Technical Assistance Advisory and Assistance Services contract, and encouraged early industry participation in the development of the new contract. AR3670-76, AR5519-26.

On August 19, 2004, the Air Force Material Command issued Policy Memorandum 2004-PK-007 ("the Policy Memorandum"), interpreting the Limitation of Subcontracting, FAR Clause 52.219-14 (Dec. 1996) ("subcontracting limitation"). AR16983-90. By that memorandum, the Air Force advised that it interpreted the FAR 52.219-14 "to mean that the minimum amounts of work [that] can be performed by the collective efforts of either small business members of a formal joint venture or a small business prime contractor together with the first tier small business subcontractor(s), when the circumstances outlined in attachment 1 are present." AR16983. On August 20, 2004, the Policy Memorandum was provided electronically to all offerors. AR3666.

On February 28, 2005, the Air Force issued RFP FA9300-04-0040 to acquire non-personal advisory and assistance services to support ARDTEAS activities at the Air Force Flight Test Center. AR152-317. The RFP was a set aside for small business concerns and incorporated [redacted]

by reference FAR 52.219-14, Limitation on Subcontracting. AR179. The RFP included labor estimates based on projected workload. AR154, AR242-62. Amendment No. 1 was issued on March 28, 2005, AR319-42, and Amendment No. 2 was issued on March 29, 2005. AR344-62. The amendments were largely administrative in nature. AR319, 344.

CENTECH submitted its proposal on March 31, 2005, AR851-1378, as did TYBRIN. AR457-849. Two other offerors, SYMVIONICS and DCS, also submitted proposals. AR5169. CENTECH's proposal stated that its own personnel would perform 43.2 percent of the cost of contract performance. AR16944, AR17967. CENTECH relied upon the Policy Memorandum in making this proposal. AR16992.

On April 28, 2006, the Source Selection Authority ("SSA") determined that the proposal submitted by CENTECH was the best value for the Air Force, AR5168, and awarded the contract to CENTECH. AR20285-322. The SSA explained that the Source Selection Evaluation Team ("SSET") had strictly adhered to the evaluation scheme set out in Section M of the RFP, as supplemented by applicable regulations and the Source Selection Plan. AR5161. Four proposals had been evaluated against four factors. The first three factors – Mission Capability, Proposal Risk, and Past Performance – were accorded equal importance, and were significantly more important than the fourth factor – Cost/Price. AR5161. After evaluating the four proposals, the SSA found [redacted] highest rated offerors. It concluded that CENTECH was [redacted] TYBRIN was [redacted] that these factors were of equal importance, and that there was no difference between [redacted] AR5167. Although TYBRIN's [redacted] the SSA considered th[redacted]

The SSA awarded the contract to CENTECH because of its [redacted] AR5168. The SSA pointed to CENTECH's [redacted] Id. The SSA predicted that the Air Force Flight Test Center "should realize continuous, reliable, superior services and significant efficiencies" from CENTECH's execution of its proposal. AR5167-68.

CENTECH's award/contract incorporated by reference FAR 52.219-14, Limitation on Subcontracting, AR20312, and authorized the Air Force to terminate for convenience. FAR 52.249-02, Termination for Convenience of the Government (Fixed Price), which applies to the fixed-price-award-fee CLINs, and FAR 52.249-06, Termination (Cost Reimbursement), which applies to the cost-plus-award-fee CLINs. AR20314. Under this contract, the phase-in was to begin on May 1, 2006, and full performance was to begin on August 1, 2006. AR19914.[3]

TYBRIN protested the award to the GAO on May 26, 2006. AR108-50. TYBRIN claimed that the Air Force had violated material terms of the RFP and the applicable regulations by improperly evaluating the proposals. AR114-41. TYBRIN also complained that the Air Force had conducted improper and misleading discussions, AR 141-43; failed to conduct a

---

[3] The contract was in performance until May 30, 2006, when it was stayed as a result of TYBRIN's protest. AR19914.

[redacted]

proper best value determination and cost/price/technical tradeoff determination, AR143-44; did not properly evaluate CENTECH for organizational conflicts of interest, AR144-45; and violated Air Force regulations by allowing a single person to dominate the selection process. AR145-46. On June 27, 2006, the Air Force responded with a Statement of Facts by the Contracting Officer, AR31-106, and a Memorandum of Law, AR2-15, as corrected on July 10, 2006, AR16-29.

On June 29, 2006, TYBRIN filed a supplemental protest. AR16956-62. Contending that the supplemental protest raised a single dispositive issue, TYBRIN asked the GAO to decide it using the express option. AR16956-57. TYBRIN alleged that CENTECH's proposal should have been found unacceptable and ineligible for an award because, on its face, it violated FAR 52.219-14 by proposing to perform only 44 percent of the personnel cost, AR16956, and that the Air Force was aware of this. AR16958 (citing AR4914, AR5101 Slide 149).

On July 10, 2006, the Air Force responded to TYBRIN's Supplemental Protest with a Statement of Facts by the Contracting Officer, AR16941-54, and a Memorandum of Law, AR16933-39. The Air Force conceded that under CENTECH's proposal, only 43.2 percent of the cost of contract performance would be provided by CENTECH personnel, but contended CENTECH's proposed use of subcontractors complied with FAR 52.219-14, Limitation on Subcontracting, as interpreted by the Policy Memorandum, because the collective efforts of CENTECH and its small business subcontractors would exceed 50 percent of the cost of contract performance for personnel. AR16934; see also AR16944.

In response to a request from the GAO, on August 2, 2006, the Small Business Administration ("SBA") advised that it viewed the Air Force's interpretation of FAR 52.219-14, Limitation on Subcontracting, in the Policy Memorandum as incorrect. AR17220-27. The SBA [redacted]

explained that "in general, a small business receiving a prime contract award as a result of a solicitation set aside for SBCs [small businesses concerns] must meet the subcontracting limitation set forth in the statute and regulations itself." AR17227. The SBA also stated, "[i]n the present case, we do not have a complete record to determine whether or not CENTECH and its small business subcontractors have an informal or formal joint venture relationship (i.e., a specific, identifiable agreement between the SBCs that they are acting as a joint venture)." AR17226. The SBA concluded that "[b]ecause the SBA's regulations provide that the determination as to whether or not a SBC will meet its subcontracting limitations requirement is an element of responsibility, the SBA has the sole authority to make this determination pursuant to the [Certificate of Competency] COC program." AR17227.

Two days later, on August 4, 2006, the Air Force stayed performance of CENTECH's contract so it could reconsider whether CENTECH met the standards of the RFP. AR17230. On the same day, the GAO dismissed all of TYBRIN's protests as academic. AR17233-34.[4]

On August 10, 2006, the Air Force rescinded the Policy Memorandum. AR19706-07.

On August 17, 2006, CENTECH sent a letter to the Contracting Officer, AR17236-90, attaching additional information to show that it "performs in excess of 51% of the cost of

---

[4] On July 6, 2006, TYBRIN filed its second supplemental protest, and on July 17, 2006, the Air Force responded with a Statement of Facts by the Contracting Officer, AR17410-36, and a Memorandum of Law, AR17373-408. On July 14, 2006, TYBRIN filed its third supplemental protest with the GAO, alleging that (1) the program manager of the SSET was biased against TYBRIN, (2) the Air Force had failed to conduct meaningful discussions with TYBRIN, and (3) the exclusion of the Contracting Officer violated the FAR and called into question the integrity of the procurement. AR17466-89. On July 23, 2006, the Air Force responded to TYBRIN's Third Supplemental Protest with a Statement of Facts by the Contracting Officer, AR17450-64, and on July 24, 2006, with a Memorandum of Law. AR17438-48.

[redacted]

personnel under the contract, and meets all of the standards outlined in the SBA's letter." The letter acknowledged that CENTECH's proposal had disclosed that "it would perform 42.3% of the total cost of contract personnel with its own employees." CENTECH explained that this was consistent with the Air Force's disclosure in the Policy Memorandum. CENTECH then advised "[s]ince submitting our proposal however, CENTECH has updated its cost model to reflect actual performance data, as opposed to estimated data. Based on the actual data, (actual salary and distribution data), CENTECH will perform [redacted] of the total contract *cost of personnel.*" AR17236 (emphasis in original). CENTECH attached teaming agreements with its subcontractors. AR17247-90. The Contracting Officer did not read this letter or its attachments, which arrived by email, and forwarded the information to counsel with a request that counsel advise CENTECH not to send any information to the Contracting Officer. AR17292-93.

On September 6, 2006, the Contracting Officer issued a determination of non-responsibility "[b]ased solely on information received from The CENTECH GROUP (CENTECH) with their proposal." The Contracting Officer found that "CENTECH does not meet the subcontracting limitation requirements as set forth in statute and regulation and as such is considered nonresponsible and is not eligible to receive the contract award for the ARDTEAS effort." AR17296, AR17577. The Air Force also concluded that this finding subjected CENTECH to the COC process. Id. (citing FAR 19.601(d)).

The Air Force rescinded CENTECH's contract on September 8, 2006, but asked CENTECH to extend the validity of its proposal until December 31, 2006. AR17298; see also AR19914. CENTECH filed an agency level protest with the Contracting Officer on September 18, 2006, challenging the rescission of its contract and the refusal of the Contracting Officer to

[redacted]

consider the new information it had submitted to establish its responsibility. AR17308-15.[5] CENTECH faulted the Air Force for relying upon the information included with its proposal and noted that the Teaming Agreements that it wished to provide had not been requested as part of the proposal. AR17311-12.

On September 15, 2006, the Air Force asked the SBA for a COC to determine whether CENTECH is a responsible contractor to receive and perform the ARDTEAS award. AR17304-05, AR17575-76. The Air Force explained that, based solely upon information it had received with CENTECH's proposal, it had determined that CENTECH would perform "43.2% of the work [and] [redacted] for a total small business performance of 66.2%." The SBA acknowledged receipt of the Air Force referral on September 21, 2006. AR17572.

On September 19, 2006, the SBA notified CENTECH that it had an opportunity to appeal the Air Force's determination of non-responsibility under the COC program. AR17573. On September 28, 2006, CENTECH submitted an application for a COC. AR18040-83. The next day, CENTECH responded to an SBA request for information by providing a chart that showed how it would meet the subcontracting limitation, noting that "[t]he figures disclosed in the chart below, are based on Air Force guidance provided during the post-award phase-in." AR17954; see also AR17964-68. Among the attachments to this letter were the Teaming Agreements. Id., see AR17988-8031. CENTECH advised the SBA that it had relied upon the Policy Memorandum in proposing to perform 43.2 percent of the contract costs of personnel with its

---

[5] The protest was dismissed on December 21, 2006, after the Air Force reinstated CENTECH's contract. AR17354.

[redacted]

own employees, but now "will perform [redacted] of the total contract costs of personnel required with its own employees (as opposed to the 43.2% figure CENTECH disclosed in its proposal based on its estimate of the USAF's actual contract requirements). AR17967. CENTECH updated this information on October 31, 2006. AR17802-16.

In reviewing CENTECH's COC application, the SBA's industrial specialist ("I/S") did not consider himself bound by the terms of CENTECH's original proposal. Rather, the I/S considered the Air Force's use of a labor model in its solicitation as "hypothetical and arbitrary." AR17775, AR17781, AR17792. The I/S believed that responsibility should be determined based upon actual labor information. Id. Indeed, he felt that the Air Force should have allowed CENTECH to give new and updated information before referring the matter to the SBA for a COC: "It is the I/S opinion that we should not be concerned who did what or if the Air Force was right or wrong, but rather use current information to demonstrate whether or not the firm meets the responsibility issue in properly addressing a COC evaluation since the Air Force refuses to withdrawal [*sic.*] the COC referral." AR17795.

The SBA made a formal size determination that CENTECH is a small business on November 13, 2006. AR17945-52. On December 4, 2006, the SBA certified that CENTECH possessed the responsibility to perform the contract. AR17328-31. The SBA noted that the Air Force's erroneous Policy Memorandum encouraged CENTECH to propose an informal joint venture, with only 42 percent of the total contract costs of personnel to be performed by its own employees. AR17330. Finding the labor model in the solicitation "hypothetical and arbitrary," the SBA evaluated CENTECH's responsibility not on the basis of its original proposal but on the basis of actual labor figures. The SBA predicted that CENTECH would meet the subcontracting

[redacted]

limitation in the future based upon post-award submissions that showed it would perform approximately [redacted]ercent with its own labor and management personnel. Id. While the SBA recognized that these numbers are "still not totally accurate, " it speculated that CENTECH's "numbers will increase once they have actual labor figures to work with utilizing incumbent management and employees encouraged by the Air Force." Id.

On December 21, 2006, the Air Force reinstated CENTECH's contract award. AR17339; see also AR17344-52 (contract modification). However, after TYBRIN protested again on December 29, 2006, AR17083-217, the Air Force suspended performance of CENTECH's contract on January 3, 2007, pursuant to FAR 33.104(c)(1). AR17360. On January 23, 2007, the Air Force responded to TYBRIN's December 29, 2006 protest with a Statement of Facts by the Contracting Officer, AR17024-81, and a Memorandum of Law, AR17018-22; and CENTECH responded on February 2, 2007. AR19601-08.

On February 2, 2007, TYBRIN filed a supplemental protest, in which it alleged that CENTECH had changed its proposal after the FPR due date. AR20329-383. The Air Force responded to this supplemental protest on February 13, 2007, AR19628-32, and CENTECH responded to this supplemental protest on February 15, 2007. AR19615-21.

On March 13, 2007, the GAO sustained TYBRIN's protest, finding that CENTECH's proposal was unacceptable on its face for failing to comply with a material term of the RFP – the subcontracting limitation. AR19794-95.[6] The GAO also found that, as a result of the Policy

---

[6] The SBA requested reconsideration of the GAO Decision, AR19639-44, but the GAO denied this request on April 17, 2007. AR19798-801. The GAO pointed out that "CENTECH's proposal on its face clearly did not meet the material term of the solicitation

(continued...)

[redacted]

Memorandum, CENTECH had been deprived of meaningful discussions regarding its proposal's failure to comply with the requirements of the subcontracting limitation. AR19796. The GAO therefore recommended "that the Air Force reopen discussions and request and review revised proposals, evaluate those submissions consistent with the terms of the solicitation, and make a new source selection decision." Id. In a footnote to this sentence, the GAO explained that, while it had no need to resolve TYBRIN's other complaints, it recommended that "as the Air Force proceeds with its corrective action, it may want to be mindful of the issues raised by TYBRIN in its protests." Id. at n.4.[7] The GAO also advised that if the Air Force found another proposal to represent the best value to the Government, the Air Force should terminate CENTECH's contract according to the terms of the RFP. AR19796.

The Air Force took to heart the GAO's suggestion that it be "mindful" of the issues raised in TYBRIN's protests as it proceeds with corrective action. AR19933-37. The Air Force

---

[6](...continued)
embodied in the 50-percent subcontracting limitation," and found that the SBA's disagreement with the GAO's conclusions and repeat of arguments that had been fully considered did not meet the standard for reconsideration. AR19801.

[7] Footnote 4 advised the Air Force: "[b]ecause we sustain TYBRIN's protest and recommend the reopening of discussions, we need not resolve TYBRIN's allegations regarding the evaluation of its and CENTECH's proposals and the selection of CENTECH's proposal for award, or its allegations that the evaluation evidences bias against TYBRIN, that CENTECH has an organizational conflict of interest that renders it ineligible for award, that CENTECH was improperly permitted by the SBA to alter its proposal and status after the agency had received and evaluated the offerors' proposal revisions, or that the Air Force had deprived TYBRIN of meaningful discussions. However, as the Air Force proceeds with its corrective action, it may want to be mindful of the issues raised by TYBRIN in its protests, including TYBRIN's assertion that the agency failed to adequately consider potential organizational conflicts of interest related to [redacted] (one of TYBRIN's [*sic.* CENTECH's] proposed subcontractors)." AR19796.

[redacted]

decided to assemble a new SSET with new members to remove any suggestion that the re-evaluation and source selection would not be as fair and objective as possible. AR19933. After discussing 25 main protest issues, the Air Force decided to issue an amendment to the RFP, as well as updating the Source Selection Plan and Acquisition Strategy Panel/Acquisition Plan. AR19937. The Air Force decided to review the entire file to determine what needed to be updated as a result of the passage of two years. Id.

On May 11, 2007, the Air Force notified CENTECH that the suspension of its contract would continue until further notice, AR20323, and that the Air Force was planning to issue an amendment to the solicitation in light of the GAO Decision. AR20324. On May 18, 2007, the Air Force notified the GAO that it was considering how to best implement the recommendation in the GAO Decision, and was also reviewing the effects of the passage of more than two years since the publication of the initial solicitation upon the Air Force's requirements. AR20325.

A Memorandum For Record dated May 25, 2007, AR19898-99, and the accompanying briefing slides, AR19900-32, detail the Air Force's deliberations in fashioning corrective action. The Air Force considered three options: (1) narrow proposal revisions; (2) allow for proposal revisions; and (3) new proposal via a re-start source selection process. AR19917. A consensus developed for the second option. The Air Force was concerned that in allowing two out of four offerors the opportunity to restructure their proposals, option 1 would open the door for them "to enhance their proposals with new technologies and processes that can be tied to new or revised teaming relationships." AR19898, see also AR19919. The Air Force concluded that denying the other two offerors the same opportunity would "not promote a fair environment." Option two, on the other hand, allowed all four offerors in the competitive range to restructure their proposals

[redacted]