in light of the corrected interpretation of the subcontracting limitation clause. AR19898. An amended RFP would allow the Air Force to "evaluate current offerings compared to current needs." Id. On the other hand, the Air Force concluded that there was no reason to start over, which was option 3, because all offerors who initially proposed were included in the competitive range and no other firms had indicated interest in the solicitation. Id.

A Memorandum For Record dated June 8, 2007, AR19895-97, explained the type of changes that would need to be made to the RFP because of the passage of time. The period of performance dates would be moved out, the terms and conditions would be updated to reflect current clauses, the Performance Requirements Document would be revised, and previously provided data would be refreshed. The Air Force also decided to advise offerors in the cover letter about its correction to its interpretation of the subcontracting limitation clause, and that they could revise their proposals (or not) as they deem necessary to respond to this change. AR19895-96.

On June 29, 2007, the Air Force issued Amendment No. 3 to the RFP. AR19807-29. The deadline for proposals was July 31, 2007. AR19808; see also AR19805. Amendment No. 3 allowed all four offerors the opportunity to revise their proposals in response to the corrected interpretation of the subcontracting limitation clause, FAR 52.219-14. It provided for the reopening of discussions with offerors as a result of this material change. It also updated contract clauses and allowed offerors to revise their pricing. AR19807-29.

In a Memorandum for Record, AR19889-94, issued the same day as Amendment No. 3, the Air Force explained its basis for this corrective action. The Air Force noted that the GAO decision had sustained TYBRIN's protest on the issue of the acceptability of CENTECH's offer

[redacted]

and recommended that the Air Force request revised proposals and reopen discussions after reviewing them. AR19889. The Air Force decided to issue Amendment No. 3 as a vehicle to reopen those discussions. Id. This gave the two offerors that had relied upon the Policy Memorandum the opportunity to restructure their proposals to bring them into compliance with FAR 52.219-14. Id. The Air Force decided to allow all four offerors in the competitive range, see AR19907, to update their proposals to accommodate a level playing field and produce the best, most current contract. AR19918. In light of the passage of time and change in policy, and to treat all offerors equally, all offerors were given the opportunity to update their proposals. AR19890.

The Air Force also used Amendment No. 3 to address the issues raised in TYBRIN's protests. AR19889-94. An entirely new SSET was appointed and the new team will conduct a completely new evaluation on the revised proposals. AR19889.

On July 18, 2007, the Air Force issued Amendment No. 4 to provide the current contract security classification specification and make other non-material changes. AR20326-28.

## SUMMARY OF ARGUMENT

The GAO ruled that CENTECH's proposal, on its face, could not form the basis for an award, and recommended that the Air Force reopen discussions, request and review revised proposals, evaluate those submissions consistent with the terms of the solicitation, and make a new source selection decision. Having rescinded its Policy Memorandum, upon which two of the four offerors in the competitive range had relied, the Air Force quite reasonably decided to reopen the solicitation to allow all four offerors to revise their proposals – to the extent they deemed necessary or appropriate – in light of the corrected legal standard and changed

[redacted]

circumstances. There was a rational basis for this corrective action, which was neither arbitrary, capricious nor violative of any law, regulation or procurement procedure.

CENTECH's request for an injunction should therefore be denied. Not only has it failed to establish that the Air Force's corrective action was arbitrary, capricious, an abuse of discretion, or otherwise in violation of law or regulation, but it has not demonstrated, by clear and convincing evidence, that failure to enjoin the procurement will cause it to suffer specific and irreparable harm; that the harm it suffers outweighs the harm to the Government and third parties; and that the grant of injunctive relief is in the public interest.

## ARGUMENT

## I. STANDARD OF REVIEW

### A. Standard of Review under RCFC 52.1(b)

RCFC 52.1(b) sets the standard for review of agency action on the basis of the administrative record. See A & D Fire Protection, Inc. v. United States, 72 Fed. Cl. 126, 131 (Fed. Cl. 2006). The Court must decide whether "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." Id. (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). The plaintiff bears the burden of meeting this standard by a preponderance of the evidence. Rotech Healthcare Inc. v. United States, 71 Fed. Cl. 393, 401 (2006). The corrective action taken by the Air Force, not the GAO Decision, is the subject of this review. See Firth Construction Co., Inc. v. United States, 36 Fed. Cl. 268, 271-72 (1996).

[redacted]

B. Standard of Review of Corrective Actions

The Court of Federal Claims resolves challenges to agency actions in the bid protest context under the standards given by the Administrative Procedure Act, 5 U.S.C. § 706, see 28 U.S.C. § 1491(b)(4); Comprehensive Health Serv., Inc. v. United States, 70 Fed. Cl. 700, 720 (Fed. Cl. 2006). This standard requires the Court to determine whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Comprehensive Health, 70 Fed. Cl. at 720 (citing 5 U.S.C. § 706). The Court will not overturn an agency's decision to follow a GAO recommendation unless it determines that the GAO decision itself was "irrational." Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989). Thus, as long as the Court finds a reasonable basis for the agency's action, the Court should stay its hand even though it might have reached a different conclusion as to the proper administration and application of the procurement regulations. Carothers Const. Inc. v. United States, 18 Cl. Ct. 745, 751 (1989).

Corrective actions are reviewed under the same standard. Textron, Inc. v. United States, 74 Fed. Cl. 277, 289 (Fed. Cl. 2006) (citing ManTech Telecommunications & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 65 n.13 (2001); 28 U.S.C. § 1491(b)(1)). To determine whether the Air Force's corrective action in this case conformed to 5 U.S.C. § 706, the Court must decide whether the Air Force articulated a rational basis for its corrective action or whether the corrective action violated a law or regulation. CHE Consulting, Inc. v. United States, 74 Fed. Cl. 742, 746 (Fed. Cl. 2006) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1333 (Fed. Cir. 2001)).

The Air Force can demonstrate a rational basis for its corrective action by giving "a coherent and reasonable explanation of its exercise of discretion." Textron, 74 Fed. Cl. at 285 (quoting Impresa, 238 F.3d at 1332). Corrective actions will be found lawful when they are "reasonable under the circumstances" and "appropriate to remedy the impropriety." ManTech, 49 Fed. Cl. at 65 (citations omitted). In determining the reasonableness of corrective action, the Court should accord significant deference to the agency's decision. See Chapman Law Firm Co. v. United States, 71 Fed. Cl. 124, 128 (Fed. Cl. 2006), aff'd in part by, Chapman Law Firm Co. v. Greenleaf Const. Co., 490 F.3d 934 (Fed. Cir. 2007). The Court should defer to the agency's determinations as long as they have substantial basis in fact. Id.; see also In re Sang-Su Lee, 277 F.3d 1338, 1344 (Fed. Cir. 2002). Contracting officers, and thus agencies, have "wide discretion in . . . applying procurement regulations" and the Court should not "substitute its judgment for that of the agency." Chapman, 71 Fed. Cl. at 128.

The Court may also overturn agency action that violates applicable law or regulation. CHE Consulting, 74 Fed. Cl. at 746; 5 U.S.C. § 706(2)(A). While an agency has no discretion to violate applicable laws and regulations, its decisions are entitled to a presumption of regularity. Textron, 74 Fed. Cl. at 286; Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971).

## II. THE AIR FORCE ACTED REASONABLY IN FOLLOWING THE RECOMMENDATIONS OF THE GAO

The Air Force's corrective action was lawful. The Air Force articulated a reasonable basis for its decision to amend and re-solicit the RFP, giving a "a coherent and reasonable explanation of its exercise of discretion." Textron, 74 Fed. Cl. at 285 (quoting Impresa, 238 F.3d

[redacted]

at 1332). Here, as in Griffy's Landscape Maintenance, 51 Fed. Cl. at 675, the agency took a hard look at the defects in the solicitation process and decided to take corrective action, and "[i]n doing so, they acted responsibly and ethically."

### A. The Air Force's Decision To Amend the Solicitation and Reopen Discussions Was Reasonable

This case presents the question of whether the Air Force acted reasonably in response to the GAO's determination that CENTECH's proposal was unacceptable on its face for failing to comply with a material term of the RFP – the subcontracting limitation. AR19794-95. The GAO also found that, as a result of the erroneous Policy Memorandum, the Air Force had deprived CENTECH of meaningful discussions regarding its proposal's failure to comply with the requirement of the subcontracting limitation. AR19796. To remedy this, the GAO recommended "that the Air Force reopen discussions and request and review revised proposals, evaluate those submissions consistent with the terms of the solicitation, and make a new source selection decision." Id.

The Court should not overturn the Air Force's decision to follow the GAO recommendations because the GAO Decision was not "irrational." See Honeywell, 870 F.2d at 648; Carothers, 18 Cl. Ct. at 751. In Precision Standard, Inc. v. United States, 69 Fed. Cl. 738, 755 (2006), this Court found that the contracting officer had acted reasonably in determining compliance with the subcontracting limitation clause based upon the offeror's proposal. Thus, even though the Air Force initially disagreed, and the SBA continues to disagree, AR19642, with the GAO, the GAO's legal analysis was not irrational, and the Air Force acted reasonably in following its recommendations.

[redacted]

It was also reasonable for the Air Force to decide to reopen the solicitation to all the offerers in the competitive range. The SBA had evaluated CENTECH's responsibility, not upon the basis of its original proposal, but upon the basis of its updated post-award submissions of actual labor figures. AR17330. Since another offeror had also relied upon the rescinded Policy Memorandum, AR19919, the Air Force decided that fairness required that all of the offerors in the competitive range be allowed to update their proposals. AR19898. Because more than two years had elapsed, the Air Force recognized that the revised proposals might contain substantially different technology and processes from the previous proposals, and believed that an amended RFP would allow the Air Force to "evaluate current offerings compared to current needs." Id. Finally, the Air Force concluded that the re-solicitation would provide a vehicle for the reopening of discussions. AR19889.

In Mantech, 49 Fed. Cl. at 75, this Court affirmed a similar decision by the Army, noting:

> in a negotiated procurement, where an error has been alleged or detected, the government is not precluded from amending the solicitation, or even cancelling and resoliciting, simply because the receipt of new proposals could cause the comparative adjectival ratings of two competitors to shift....[T]he requirement for a fair and equal competition must take priority over preserving every advantage initially enjoyed by a protester in a selection process that ultimately proves defective. In such circumstances, fair and equal competition is maintained by allowing all competitors to respond to the amended solicitation, an action that also preserves the government's ability to obtain the best possible value corresponding to its current needs.

The Court rejected a similar challenge to corrective action in Data Monitor Systems, 74 Fed. Cl. at 73, holding that an agency has wide discretion with respect to the manner in which it conducts its procurements, including a decision to conduct discussions. Likewise, in IMS

[redacted]

Services. Inc. v. United States, 33 Fed. Cl. 167, 186 (1995), the Court held that it was rational and reasonable for the agency to conduct a new round of best and final offers after both the agency and the GAO concluded that the agency had failed to clearly and accurately communicate a requirement to the competitive offerors.

CENTECH maintains that the Air Force violated the evaluation scheme in the RFP and lacked authority to take corrective action in response to the GAO recommendation. Mem. 29. According to CENTECH, only it should have been accorded an opportunity to provide the Air Force with additional information to establish its compliance with the subcontracting limitation. Id. However, as we demonstrate below, this Court's decision in Chapman, 71 Fed. Cl. at 125, disposes of this contention.

In Chapman, the Court held that an agency's proposed plan for reopening discussions and obtaining an updated proposal from one offeror was without a rational basis and contrary to law. The Court determined that such corrective action would be highly prejudicial to the other bidder and not in the best interest of the Government. Id. at 132. The Court ruled that "[t]he fundamental competition rules are not altered by the fact that a contract has been awarded to Chapman. Where a contract has been awarded, but a protest has been sustained and the recommended corrective action is to make a new best value determination, the standard CICA and FAR competition rules apply. In these circumstances, if an agency conducts discussions, it must do so with all offerors in the competitive range." Id.

Thus, corrective action is not rendered unreasonable simply because a current contract holder may be forced to re-submit a proposal. Rather, renegotiation with multiple parties

[redacted]

enhances competitive fairness and provides the Government the opportunity to obtain the best value contract. Id. at 132-34.

B. Rejection Of Updated Information Was Reasonable

CENTECH faults the Contracting Officer for refusing to consider updated information that it offered to show that it would actually comply with the subcontracting limitation. Mem. 25. Indeed, CENTECH maintains that the Contracting Officer's request for the COC was illegal. Mem. 26. The simple answer is that CENTECH was not harmed by the Contracting Officer's refusal to consider updated information in determining CENTECH's responsibility. On December 4, 2006, the SBA certified that CENTECH possessed the responsibility to perform the contract, AR17328-31, and on December 21, 2006, the Air Force reinstated CENTECH's contract award. AR17339; see also AR17344-52 (contract modification). The Air Force did not overturn the SBA's responsibility determination.

Rather, in finding CENTECH's offer technically unacceptable, the GAO found that the proposal, on its face, failed to comply with a material term of the RFP – the subcontracting limitation. AR19794-95. The Air Force has consistently maintained that CENTECH's compliance with the subcontracting limitation clause must be determined on the basis of the proposal CENTECH submitted in response to the RFP. AR17296. The Contracting Officer rejected CENTECH's August 17, 2006 submission of additional information to show that it would comply with that provision of the contract. AR17292-93, AR19631.

Procurement regulations require an agency to determine if a bid is responsive on opening, and prohibit the offeror from making the bid responsive by subsequent submissions or communications. ECDC Environmental, L.C. v. United States, 40 Fed. Cl. 236, 242 (1998)

[redacted]

(citing Firth, 36 Fed. Cl. at 274). The Air Force adhered to this policy to maintain a level paying field and avoid unfairness to other bidders. AR19918. See Toyo Menka Kaisha, Ltd. v. United States, 220 Ct. Cl. 210, 219, 597 F.2d 1371, 1377 (1979).

During the protests at the GAO, the Air Force and the SBA argued that CENTECH's proposal did not, on its face, preclude it from award. The GAO disagreed. The GAO's view that CENTECH's proposal was unacceptable for failing to comply with the express requirements of the subcontracting limitation clause, FAR 52.219-14, AR17294-95, was not "irrational." See Firth, 36 Fed. Cl. at 271-72. In its August 17, 2006 letter to the Contracting Officer, AR17236-90, CENTECH stated that "it would perform 42.3% of the total cost of contract personnel with its own employees." CENTECH wished to provide supplemental information to update the cost model in its proposal "to reflect actual performance data, as opposed to estimated data." AR17236; see also AR17967 (CENTECH advised that it "will perform [redacted] of the total contract costs of personnel required with its own employees (as opposed to the 43.2% figure CENTECH disclosed in its proposal based on its estimate of the USAF's actual contract requirements").

As the GAO's recommendation was based upon the plain meaning of the subcontracting limitation clause, FAR 52.219-14, and was consistent with precedent, see Precision Standard, 69 Fed. Cl. at 754, it was not arbitrary or capricious for the Air Force to follow it.

C. The Air Force Did Not Usurp The SBA's Authority

CENTECH also claims that the corrective action usurped the SBA's sole authority to determine responsibility. Mem. 13-21. The Air Force did not err in seeking a responsibility determination from the SBA and did not reject that determination. Rather, after the GAO held

[redacted]

that CENTECH's proposal was facially unacceptable and deficient for failing to comply with a material term of the RFP – the subcontracting limitation, the Air Force reasonably decided to accord all four offerors in the competitive range an opportunity to revise their proposals to conform to the corrected interpretation of the subcontracting limitation clause, FAR 52.219-14. Once the Air Force determines which proposal represents the best value to the Government, the Air Force will either lift the suspension of CENTECH's contract or terminate the contract for convenience according to its terms. At that time, the SBA will be able to determine whether its responsibility determination needs to be updated or replaced.

CENTECH argues that when an offeror makes clear that it intends to comply with the subcontracting limitation, it should be allowed to correct or update its proposal until the time of contract award. Mem. 18-19. While the SBA permits such changes, the contracting rules do not. 48 C.F.R. § 15.306; see also Precision Standard, 69 Fed. Cl. at 754 (citing Chapman Law Firm v. United States, 63 Fed. Cl. 519, 527 (2005), aff'd, 2006 WL 222840 (Fed. Cir. Jan. 12, 2006) (table)). That is because the SBA determination of responsibility differs from an agency's determination of whether a proposal is technically acceptable. In attempting to determine if the offeror is capable of performing the contract, the SBA is not bound by the terms of its proposal. Indeed, in this case the SBA found the labor model in the solicitation "hypothetical and arbitrary," and evaluated CENTECH's responsibility not on the basis of its original proposal but on the basis of actual labor figures. AR17330. It was not irrational for the GAO to find that technical acceptability must be determined based upon the actual proposal and it was reasonable for the Air Force to implement its recommendation.

### D. The Air Force Reasonably Suspended CENTECH's Contract

CENTECH alleges that the Air Force improperly rescinded CENTECH's contract. Mem. 30. CENTECH admits that the Air Force reinstated its contract award on December 21, 2006. Compl. ¶ 38. The complaint also quotes the GAO Decision, Compl. ¶48, as recommending *possible future* termination of CENTECH's contract if another proposal is found to represent the best value to the Government as a result of RFP Amendment No. 3. Thus, the complaint itself refutes CENTECH's allegation, Comp. ¶57, that it was "unlawfully deprived" of this contract, and that its "injury consists of its loss of a government contract and the opportunity to retain and fairly compete for the contract." Compl. ¶ 61; see also ¶¶ 69, 76, 90, 97, 103, Prayer for Relief at 19.

In holding that "[t]his is a quintessential bid protest and is not a 'claim' relating to its performance of a contract under the CDA," the Memorandum Opinion cited the fact that CENTECH's complaint did not seek termination for convenience costs. Slip op. at 17.[8] While we disagree with the Court's finding that CENTECH's former award is "a nullity," id. at 12, even if that is the effect of the corrective action, the Air Force's decision was reasonable for the reasons discussed above. See Chapman, 71 Fed. Cl. at 125.

## III. CENTECH IS NOT ENTITLED TO INJUNCTIVE RELIEF

CENTECH asks this Court to enjoin the Air Force from implementing the corrective action recommended by the GAO, and to prohibit the Air Force from expending any funds for ARDTEAS activities other than under the contract the Air Force previously awarded to

---

8 CENTECH's proposed amended complaint at 2, 19, requests reimbursement for bid and proposal costs.

[redacted]

CENTECH. Motion at 1. As we demonstrated above, CENTECH has failed to establish that the Air Force's corrective action was arbitrary, capricious, an abuse of discretion, or otherwise in violation of law or regulation. For that reason alone, an injunction should be denied.

Nevertheless, even if the Court were to find the corrective action was arbitrary, capricious, an abuse of discretion, or otherwise in violation of law or regulation, it should still deny the request for an injunction because CENTECH has not satisfied any of the three additional criteria necessary for an injunction. CENTECH has not demonstrated, by clear and convincing evidence, that: (1) failure to enjoin the procurement will cause CENTECH to suffer specific and irreparable harm; (2) the harm to CENTECH outweighs the harm to the Government and third parties; and (3) the grant of injunctive relief is in the public interest. See PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (2004) (citations omitted).

CENTECH claims that it suffers irreparable harm by being arbitrarily denied the benefits of its contract, including a reduction to its work force, lost profits on the contract, and reputation harm. Motion at 2; Mem. 32. CENTECH has not demonstrated this alleged harm, and cannot demonstrate any irreparable harm from the corrective action. CENTECH has not lost the opportunity to compete for this contract in a fair competitive bidding process. That process is continuing. There is no reason to believe that a contract awarded to CENTECH after the resolicitation will provide it less potential for profit. CENTECH had the opportunity to submit a proposal that is just as profitable and will have the opportunity to challenge the award if another bidder is chosen.

CENTECH also alleges harm to the SBA. Mem. 31. That is not a cognizable harm even if the GAO overstepped the authority of the SBA. La Gloria Oil and Gas Co. v. United States,

[redacted]

72 Fed. Cl. 544, 561 (2006) (citing Freightliner Corp. v. Caldera, 225 F.3d 1361, 1365 (Fed. Cir. 2000)).

With regard to the alleged harm to the Air Force and the procurement process, Motion at 2, it is the requested injunctive relief that would undermine the Air Force's ability to exercise its broad discretion in tailoring the solicitation to meet its needs, and engage in a best value procurement to obtain a contract to meet important needs. IMS Services, Inc. v. United States, 33 Fed. Cl. 167, 187 (1995). In ManTech, 49 Fed. Cl. at 75, the Court balanced the alleged harm to a plaintiff against fair competition and concluded that, where an error has been detected, harm to a plaintiff did not preclude the Government from amending a solicitation, or even cancelling it and resoliciting, because "the requirement for a fair and equal competition must take priority over preserving every advantage initially enjoyed by a protester in a selection process that ultimately proves defective." As this Court explained in CW Government Travel, Inc. v. United States, 46 Fed. Cl. 554, 559 (2000), "[i]n withdrawing the RFP and re-opening the procurement, the Navy has provided the best remedy for Carlson's concerns that could be provided by this court. . . . Defendant's cancellation of the solicitation, far from indicating 'bad faith,' as plaintiff alleges, represents a commendable and salutary government willingness to accommodate the concerns of plaintiff (and perhaps other potential bidders). . . . Should the new solicitation *not* satisfactorily address plaintiff's (or others') concerns, plaintiff (and others) may, of course, challenge the new solicitation."

Injunctive relief would also undermine the GAO's role in the bid protest process, and the Air Force's broad discretion to implement corrective action in response to a GAO decision. Agencies often disagree with the GAO's recommendations, but that does not mean they are free

to disregard the GAO's recommendation. Federal agencies are required to report any failure to fully implement a GAO bid protest recommendation to the GAO, 31 U.S.C. § 3554(b)(3), and the GAO is required to report any such noncompliance by a Federal agency to Congress, along with a recommendation of what action Congress should take in response to the non-compliance. 31 U.S.C. § 3554(e)(1).

Finally, denial of the injunction is in the public interest. An "agency should be able to conduct procurements without excessive judicial infringement upon the agency's discretion." Aero Corp. v. United States, 38 Fed. Cl. 237, 242 (1997) (citing Cincom Sys., Inc. v. United States, 37 Fed. Cl. 263, 269 (1997)). In this instance, CENTECH's contract will be reinstated should the Air Force determine, in its discretion, that CENTECH's revised proposal provides the best value. The public interest requires that the Air Force make this judgment and not the Court.

[redacted]

## CONCLUSION

For the reasons stated above, we respectfully request that the Court deny CENTECH's request for preliminary and permanent injunctive relief and issue judgment for the United States based on the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Deborah A. Bynum

DEBORAH A. BYNUM
Assistant Director

/s/ Arlene Pianko Groner

ARLENE PIANKO GRONER
Trial Attorney
National Courts Section
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 307-0162
Fax: (202) 305-7643
Attorneys for Defendant

OF COUNSEL:

JOHN G. TERRA
Trial Attorney
U. S. Air Force Legal Operations Agency
Commercial Litigation Division
Arlington, Virginia

September 26, 2007

[redacted]

CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of September 2007, "DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Arlene Pianko Groner
ARLENE PIANKO GRONER

[redacted]