Agreed Upon Redacted Copy - May Be Made Public

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**BID PROTEST**

| | | |
|---|---|---|
| CENTECH GROUP, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | CFC No. 07-513C |
| THE UNITED STATES OF AMERICA | ) | Judge Mary Ellen Coster Williams |
| Defendant, | ) | ~~FILED UNDER SEAL~~ Redacted Version |
| and | ) | |
| TYBRIN CORPORATION | ) | |
| Intervenor-Defendant. | ) | |

**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND BRIEF OF TYBRIN CORPORATION**

John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for TYBRIN Corporation*

*Of Counsel*:
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC

Dated: October 1, 2007

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iv

INTRODUCTION ........ 2

STATEMENT OF THE ISSUES ........ 5

STATEMENT OF THE CASE AND STATEMENT OF FACTS ........ 5

A. Procurement Background ........ 5

B. CENTECH Submits a Proposal and FPR that, On Their Face, Violate FAR 52.219-14 and 15 USC § 644(o) ........ 6

C. TYBRIN Files Protests at GAO ........ 7

D. August 2, 2006; SBA Submits Comments to GAO ........ 8

E. August 4, 2006; Air Force Takes Corrective Action and States It Will Reconsider Whether CENTECH Meets RFP Requirements ........ 9

F. August 4, 2006; CENTECH Executes New Teaming Agreement Amendments ........ 9

G. September 6, 2006; The Contracting Officer Determines CENTECH's Proposals Do Not Meet 50% Requirement ........ 9

H. August-October 2006; CENTECH Submits Documents to Contracting Officer and SBA Seeking to Materially Change Its Proposal ........ 10

1. CENTECH Changed the Percentage of Labor Cost for the Prime and Subcontractors ........ 11

2. CENTECH Reduced the Number of [redacted] Full-Time Equivalents By Approximately 20% and Otherwise Substantially Reduced the Role of [redacted] ........ 11

3. CENTECH Materially Changed the Number and Mix of Personnel for Functional Areas ........ 12

4. CENTECH Materially Changed Experience and Skill Levels ........ 12



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

5. CENTECH's Material Changes Call into Question Its Cost Proposal and the Entire Cost Evaluation and Best Value Determination ........... 13

I. December 4, 2006; SBA Issues COC ........................................ 13

J. December 21-29, 2006; Air Force Announces Re-Award to CENTECH; TYBRIN Timely Protests ........................................ 14

K. March 13, 2007; GAO Sustains TYBRIN's Protest ........................................ 14

L. March 23, 2007-April 17, 2007; SBA Requests Reconsideration; GAO Denies Request ........................................ 15

M. June 29, 2007; Air Force Issues Amendment 3 to the RFP Addressing GAO Recommendation and Other Procurement Issues Requiring Correction 15

ARGUMENT ........................................ 18

I. CENTECH CANNOT DEMONSTRATE SUCCESS ON THE MERITS ...... 19

A. The Agency's Corrective Action Follows Procurement Law and Is Rational ........................................ 19

B. The Air Force Had A Rational Basis to Reopen Discussions and Request New FPRs ........................................ 20

1. Corrective Action was Required Because CENTECH's Proposal Was Not Acceptable ........................................ 20

a. Compliance with the 50% Rule is an Issue of Proposal Acceptability Where the Proposal, On Its Face, Does Not Propose to Meet the Requirement ........................ 20

b. CENTECH Confuses Issues of Responsibility and Proposal Acceptability ........................................ 22

c. The Air Force Memorandum Had No Effect Except to Require Discussions ........................................ 25

d. CENTECH Did Not Bid as a Joint Venture ................. 27

e. The Air Force Memorandum Does Not Support CENTECH's Claims ........................................ 29




PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

f. CENTECH Improperly Sought to Make Changes to Its Proposal After Receipt of Final Proposal Revisions .... 29

g. CENTECH's Proposed Alternative Corrective Action Violates CICA and the FAR .... 32

2. The Air Force Has Other Independent Bases for Corrective Action .... 32

a. The Air Force's Corrective Action was Justified by the Need to Address the Bias of the Program Manager .... 32

b. The Air Force's Corrective Action Was Also Necessary to Address OCI Issues Raised by TYBRIN .... 33

c. The Air Force Corrective Action is Also Supported by the Agency's Decision to Address Other TYBRIN Protest Grounds and Other Changes .... 34

d. The Air Force Has An Unfettered Right to Suspend or Terminate .... 35

II. CENTECH DOES NOT MEET THE OTHER THREE FACTORS FOR INJUNCTIVE RELIEF .... 35

A. Irreparable Harm .... 35

B. Balance of Harms .... 36

C. Public Interest .... 36

CONCLUSION .... 37




PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Cases**

Ann Riley & Assocs., Ltd.,
B-271741.2, August 7, 1996, 97-1 CPD ¶ 120 .......... 20

Baird v. United States,
1 Cl. Ct. 662 (1983) .......... 19

CACI Field Servs., Inc. v. United States,
13 Cl. Ct. 718 (1987) .......... 19

Chapman Law Firm v. United States,
63 Fed. Cl. 519 (2005) .......... 20, 22

Chapman Law Firm v. United States,
71 Fed. Cl. 124 (2006) .......... 19

Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.,
908 F.2d 951 (Fed. Cir. 1990) .......... 18

Coffman Specialties, Inc.,
B-284546-.2, May 10, 2000, 2000 CPD ¶ 77) .......... 20

Data Monitor Sys., Inc. v. United States,
74 Fed. Cl. 66 (2006) .......... 19

Del R. Monge v. United States,
27 Fed. Cl. 720 (1993) .......... 26

Erinys Iraq Ltd. v. United States,
COFC No. 07-562C, 2007 U.S. Claims LEXIS 287 (September 14, 2007) .......... 36

Federal Crop Insurance Corp. v. Merrill,
332 U.S. 380 (1947) .......... 26

FMC Corp. v. United States,
3 F.3d 424 (Fed. Cir. 1993) .......... 18

Global Associates, Ltd.,
B-271693, August 2, 1996, 96-2 CPD ¶ 100 .......... 20, 22, 24, 30

Griffy's Landscape Maint. LLC v. United States,
51 Fed. Cl. 667 (2001) .......... 2, 19, 37



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Honeywell, Inc. v. United States,
870 F.2d 644 (Fed. Cir. 1989) .......... 2

IMS Servs., Inc. v. United States,
33 Fed. Cl. 167 (1995) .......... 19, 23

Int'l Resources Group,
B-286663, January 31, 2001, 2001 CPD ¶ 35 .......... 23, 32

KIRA, Inc.,
B-287573.4-.5, August 29, 2001, 2001 CPD ¶ 153 .......... 21

ManTech Telecomms. and Info. Sys. Corp. v. United States,
49 Fed. Cl. 57 (2001) .......... 19

Nat'l Medical Staffing, Inc.; PRS Consultants, Inc.,
B-238694-.2, June 4, 1990, 90-1 CPD ¶ 530 .......... 20

NKF Eng'g, Inc. v. United States,
805 F.2d 372 (Fed. Cir. 1986) .......... 19

Orincon Corp.,
B-276704, July 18, 1997, 97-2 CPD ¶ 26 .......... 20, 26, 27

PGBA v. United States,
389 F.3d 1219 (Fed. Cir. 2004) .......... 18

Reilly's Wholesale Produce v. United States,
73 Fed. Cl. 705 (2006) .......... 36

Resource Consultants, Inc.,
B-293073.3, June 2, 2004, 2005 CPD ¶ 131 .......... 24

Sierra Military Health Servs., Inc. v. United States,
58 Fed. Cl. 573 (2003) .......... 18

Spectrum Security Servs., Inc.,
B-297320.2-.3, December 29, 2005, 2005 CPD ¶ 227 .......... 20

Systec, Inc.,
B-205107, May 28, 1982, 82-1 CPD ¶ 502 .......... 25

The Futures Group Int'l,
B-281274.5-.7, March 10, 2000, 2000 CPD ¶ 148 .......... 23, 28, 30, 31, 32



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

TM Sys., Inc., B-236708,
December 21, 1989, 89-2 CPD ¶ 577 .......... 25

Torncello v. United States,
231 Ct. Cl. 20 (1982) .......... 35

Transatlantic Lines LLC v. United States,
68 Fed. Cl., 48 (2005) .......... 20, 22

Utah Power and Light Co. v. United States,
243 U.S. 389 (1917) .......... 26

**Statutes**

15 U.S.C. § 637(b)(7)(A) .......... 24
15 U.S.C. § 644(o) .......... 2, 20, 22, 25, 26, 27

**Regulations**

FAR 1.102-2 .......... 32
FAR 1.102-4 .......... 32
FAR 1.601(b) .......... 33
FAR 1.602-2 .......... 33
FAR 15.303 .......... 32, 33
FAR 15.305 .......... 33
FAR 15.305 (a)(1), (b)(1) .......... 21
FAR 15.306 .......... 14, 23, 30, 32
FAR 15.306(a) .......... 21
FAR 15.306(d) .......... 32
FAR 15.307 .......... 14, 21, 23, 30
FAR 19.001 .......... 27
FAR 19.601(d) .......... 24
FAR 19.602-1 .......... 24
FAR 52.219-14 .......... 3, 6, 8, 20, 21, 22, 24, 25, 26, 27, 29, 30
FAR 9.105-1(b)(3) .......... 23

**Other Authorities**

RCFC 12(b)(1) .......... 1
RCFC 12(b)(6) .......... 1
RCFC 52.1 .......... 1



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Agreed Upon Redacted Copy – May Be Made Public

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Washington, D.C.

| | |
|---|---|
| CENTECH GROUP, INC.<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA<br>Defendant,<br>and<br>TYBRIN CORPORATION<br>Intervenor-Defendant. | CFC No. 07-513C<br>Judge Mary Ellen Coster Williams<br>~~FILED UNDER SEAL~~<br>Redacted Version |

**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND BRIEF OF TYBRIN CORPORATION**

TYBRIN Corporation, by counsel, pursuant to Rule 52.1 of the Rules of this Court ("RCFC"), respectfully requests that the Court grant judgment in favor of the Defendant United States Department of the Air Force and Intervenor-Defendant TYBRIN and against Plaintiff CENTECH Group, Inc.[1]

[1] This Court's September 25, 2007 Order dismissed those portions of CENTECH's Complaint that asked the Court to review GAO's procedural and substantive decisions. TYBRIN moves to dismiss or strike portions of the Amended Complaint that challenge GAO determinations pursuant to RCFC 12(b)(1) and 12(b)(6) and on res judicata grounds. Amended Complaint ("AC") ¶ 26 ("despite the untimeliness of the TYBRIN's protest, the GAO proceeded to decide in violation of law and its rules"); ¶ 29 (challenging GAO's jurisdiction); ¶ 40 (challenging GAO's legal authority to consider TYBRIN's protest); ¶ 42 (challenging GAO's fact finding); ¶ 43 (GAO "wrongfully opined regarding remedy"); ¶ 44 (GAO's decision was "illegally and wrong procedurally and substantively"); ¶ 45 (TYBRIN "lacks standing to complain before GAO"); ¶ 49 (referring to a "manifest of factual and legal errors" by GAO);

## INTRODUCTION

In this procurement, the Air Force has confessed error and taken corrective action based on (a) information from the Small Business Administration (SBA) and the Government Accountability Office (GAO) that the Air Force's previous legal interpretation was erroneous and contrary to statute and regulation, (b) a GAO recommendation that the Air Force undertake corrective action through discussions and new Final Proposal Revisions (FPRs), and (c) the Air Force's own recognition of errors and changed circumstances.

The Air Force should be commended for doing the right thing. The language of this Court in Griffy's Landscape is strikingly appropriate here:

> In fact, the [agency's] actions are the antithesis of bad faith. The attorneys and procurement officials involved here took a hard look at the alleged defects in the solicitation process and decided to take corrective action. In doing so, they acted responsibly and ethically.

Griffy's Landscape Maint. LLC v. United States, 51 Fed. Cl. 667, 675 (2001).

The Air Force's action amply meets the Federal Circuit's test: it is rational and consistent with statute and regulation. In deciding whether an agency was justified in following a GAO recommendation, this Court determines whether GAO's decision was rational. The Court's review is not de novo. Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989). The Air Force has confessed that its initial award to CENTECH was tainted by a material error of law. The SBA and GAO agreed that 15 U.S.C. § 644(o) and

---

¶ 49 (challenging GAO decision as violation of federal procurement laws); ¶ 58 (accusing GAO of "numerous legal and factual errors" and exceeding "the bounds of its legal jurisdiction").



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

FAR 52.219-14 mean what they say: the small business prime concern must propose to perform at least 50% of the cost of personnel ***with its own personnel.*** It is undisputed that CENTECH proposal, on its face, is noncompliant.

CENTECH nevertheless asserts that the issue is responsibility, not proposal acceptability, and the Air Force was bound by the SBA's Certificate of Competency ("COC") proceeding. As demonstrated in decisions of this Court and GAO, however, responsibility addresses only whether the offeror has the ***capability*** to perform at least 50% of the cost of personnel with its own personnel. Here, GAO and the Air Force found, as a matter of proposal acceptability – not as a matter of responsibility – that CENTECH did not propose to perform more than 50%.

Long after the closing date for submission of FPRs, CENTECH changed its proposal in an attempt to meet the 50% requirement. CENTECH materially altered its proposal approach for the Mission Capability, Proposal Risk, Cost and Past Performance evaluation criteria. Given the sophisticated engineering services required under this contract, a change in subcontractor's roles is not merely an arithmetical adjustment.

CENTECH relied heavily on [redacted] a large business, as its major subcontractor on a four-company team. In its post-FPR submissions to SBA, CENTECH altered the percentage of labor costs assigned to each member of its four member team. For example, CENTECH's post-FPR changes dramatically reduced [redacted] labor cost involvement from [redacted] a drop in participation of [redacted] Tab 276 at 20331, 20354; see also Tab 71 at 3379-97; Tab 187 at 17805-16. In its evaluation and award decision, the Air Force cited [redacted] expertise and tools as strengths. See, e.g., Tab 81 at 4879-80 (¶¶ 5.1.4.1, 5.1.4.2); Tab 82 at 5084 (Slides 115, 166). In its post-FPR changes,



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

CENTECH provided no explanation how it could perform the contract with the sharply reduced role of [redacted] CENTECH's initial proposal made clear that in many specific workload areas, CENTECH relied solely on [redacted] experience. Tab 276 at 20355.

Moreover, CENTECH changed other substantial aspects of its proposal, including who would perform what functional areas, what skill levels were being offered to the Air Force and the overall cost of its proposal. These proposal changes, if properly evaluated, would significantly affect all of CENTECH's evaluation ratings. Under CICA and the FAR, the Air Force could not consider these substantial changes without permitting all offerors in the competitive range a similar opportunity to submit revised proposals. Hence the Air Force, with GAO's guidance, concluded that the appropriate remedy was to take corrective action, including discussions with all offerors and an opportunity for them to submit FPRs.

The Air Force's corrective action is independently rational because it addresses substantial protest grounds raised by TYBRIN, including bias of the Program Manager/Source Selection Team Chair ("PM"), Organizational Conflict of Interest ("OCI") issues and other changes. Under well-established decisions, these issues alone provide ample basis for corrective action. Amendment 3 to the RFP addresses these issues by noting the replacement of the PM and most of the source selection team, and by requiring complete OCI mitigation plans and other changes. While CENTECH challenges the Air Force's suspension of its tainted contracts and the Air Force corrective action generally, CENTECH has not protested the terms of Amendment 3 or the Air Force's alternate bases for corrective action. For that reason alone, CENTECH's Complaint fails.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

In addition to its failure to demonstrate success on the merits, CENTECH does not meet the other tests for injunctive relief: irreparable harm, absence of harm to the government and other interested parties, and consideration of the public interest.

**STATEMENT OF THE ISSUES**

Whether a protest challenging agency corrective action in response to a GAO recommendation, other protest grounds and changes in government needs, should be denied where the agency action has a rational basis and is consistent with CICA and the FAR.

**STATEMENT OF THE CASE AND STATEMENT OF FACTS ("FACTS")**

**A. Procurement Background**

Approximately two-and-a-half years ago, the Air Force issued a request for proposals ("RFP") for services to support the Aerospace Research, Development, Test and Evaluation Activities ("ARDTEAS") at the Air Force Flight Test Center ("AFFTC"). Tab 145 at 17096. TYBRIN is the incumbent contractor. Tab 82 at 5029.

The RFP provided for a hybrid contract consisting of cost-plus-award-fee for services, cost reimbursement for other direct costs such as travel, materials, etc., and fixed-priced-award-fee for the phase-in period. Tab 81 at 4829. The RFP contained four evaluation factors: (1) Mission Capability (further broken down into five subfactors); (2) Proposal Risk; (3) Past Performance; and, (4) Cost/Price. Tab 151 at 214. The RFP was a 100% set aside for small business concerns. Four small businesses submitted proposals and all four were included in the competitive range. Tab 81 at 4832 (¶ 3.1).

The Air Force included numerous Air Force materials online starting in November 2003 as part of an early exchange of information. Tab 77 at 3662-4720. Among the materials was an August 19, 2004 Air Force Materiel Command ("AFMC") Policy Memorandum. Tab



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

137; Tab 77 at 3666. The Policy Memorandum stated that the requirement to perform 50% of the cost of personnel with the offeror's own personnel could be met by a formal or informal joint venture.[2] There is no evidence that the Air Force referred to the policy memorandum during the evaluation and award process. It is unclear whether the Air Force reviewed FAR 52.219-14 compliance during the evaluation. See Tab 82 at 5101 (showing CENTECH proposed less than 50%).

Offerors submitted proposals more than two years ago. The Air Force then conducted discussions, offerors submitted FPRs and then submitted revised Cost/Price FPRs. The Air Force awarded the contract to CENTECH in April 2006. Tab 83 at 5168.

TYBRIN offered the lowest Cost/Price and scored better than CENTECH in Past Performance. CENTECH and TYBRIN tied for Proposal Risk, and CENTECH scored slightly higher than TYBRIN on Mission Capability. Tab 82 at 5036. See also, Tab 3 at 114-33; Tab 145 at 17121-69 and 17192-202 (TYBRIN protests challenging evaluation ratings and best value determination).

**B. CENTECH Submits a Proposal and FPR that, On Their Face, Violate FAR 52.219-14 and 15 USC § 644(o)**

CENTECH's FPR stated that CENTECH would perform less than 50% of the cost of contract performance incurred for personnel with CENTECH employees. Specifically, the CENTECH FPR showed prime contract labor at [redacted] and subcontract labor at [redacted] Tab 71 at 3342. See also Tab 81 at 4914 (revised FPR provided prime contract labor at [redacted] and subcontract labor overhead at [redacted] Tab

[2] As discussed in Argument, Section II.B.1.c., the Policy Memorandum was contrary to statute and regulation. The Air Force rescinded the memorandum in September 2006. Tab 151 at 17296.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

82 at 5101 (source selection decision briefing showing prime contract labor at [redacted] and subcontract labor at [redacted].

During the GAO bid protest proceeding in 2006-2007, the Air Force, SBA and CENTECH all agreed that CENTECH proposed less than 50%. Tab 158 at 17330; Tab 168 at 17368; Tab 186 at 17577; Tab 186 at 17576. CENTECH's Complaint admits that "CENTECH disclosed that it would perform approximately 43% of contract cost of personnel." Complaint ¶ 13; AC ¶ 14.

**C. TYBRIN Files Protests at GAO**

On May 26, 2006, TYBRIN timely protested the CENTECH award to the GAO. Tab 3 at 113-25; 143-44. On June 29, 2006, TYBRIN filed its first supplemental protest. Tab 133. TYBRIN protested that CENTECH's proposal, on its face, had not proposed to comply with the 50% requirement. Tab 133 at 16957-58 (TYBRIN June 29, 2006 supplemental protest). TYBRIN requested that GAO find CENTECH's proposal unacceptable and recommend award to TYBRIN. Id. at 16961.

On July 14, 2006, TYBRIN filed its third supplemental protest, alleging that the procurement was fatally tainted by the PM's bias against TYBRIN. The PM simultaneously held the positions of Source Selection Evaluation Team ("SSET") Chair and Performance Confidence Assessment Group ("PCAG" or Past Performance) Chair. Tab 81 at 4825.

The same PM also held other critical procurement roles, including serving as an evaluator for the Mission Capability and Proposal Risk factors and drafter of most of the Evaluation Notices ("ENs"). See, e.g., Tab 17 at 1574 (EN Evaluator); and Tab 49 at 2484 (evaluator for Mission Capability and Proposal Risk); Tab 55 at 2914 (PCAG Chair). The Mission Capability factor is the only factor where CENTECH scored higher than TYBRIN



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

and provided the alleged basis for award. Tab 81 at 4877-919 (CENTECH) and 4920-48 (TYBRIN); Tab 82 at 5080-103 (CENTECH) and 5104-23 (TYBRIN). See also Tab 3 at 114-25; Tab 145 at 17121-56 (TYBRIN protests).

Air Force documents showed that the PM (a) was biased against TYBRIN, (b) erroneously asserted TYBRIN tried to game the source selection system and (c) used her multiple roles to control the source selection to the prejudice of TYBRIN. The contracting officer stated that the PM "may have some bias against the incumbent contractor, TYBRIN." Tab 184 at 17561; Tab 145 at 17113; Tab 174 at 17493. She also stated "***many times*** I have been in the project manager's office and ***she stated how TYBRIN seems to be trying to game the source selection system***." Tab 184 at 17561 (emphasis added); see also Tab 145 at 17113; Tab 174 at 17493,

The Air Force documents also revealed that the PM had effectively locked the contracting officer out of the evaluation and discussion process. See, e.g., Tab 185; Tab 177 at 17539-40; Tab 145 at 17112-17; Tab 174 at 17492-98.

**D. August 2, 2006; SBA Submits Comments to GAO**

During the GAO protest, the SBA stated "[a]ccording to CENTECH's proposal, it will perform approximately 43% of the work as the prime contractor." Tab 146 at 17220. SBA stated that it viewed the issue of compliance with FAR 52.219-14 as one of contractor responsibility. Id. at 17226-27. The SBA did not address the GAO and Court of Federal Claims decisions holding that facial compliance with FAR 52.219-14 is an issue of proposal acceptability, not responsibility. Compare Tab 133 at 16958-59; Tab 276 at 20337, 20346-43.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**E. August 4, 2006; Air Force Takes Corrective Action and States It Will Reconsider Whether CENTECH Meets RFP Requirements**

On August 4, 2006, the agency took corrective action and said it would reconsider whether CENTECH met the RFP requirements. The Air Force stated that it would stay performance on the contract until the issues were resolved. Tab 147.

On August 4, 2006, GAO dismissed the TYBRIN protests as academic in light of the corrective action. Tab 148. As a result, GAO made no determination as to the merits of TYBRIN's May 26, 2006 protest grounds.

**F. August 4, 2006; CENTECH Executes New Teaming Agreement Amendments**

On August 4, 2006, after the FPR due date, CENTECH, seeking to "clarify" its intent, altered the premise of its proposal. CENTECH entered into amendments to its small business subcontractor teaming agreements seeking to establish a legal entity that CENTECH had disclaimed to that point: an informal joint venture relationship. CENTECH did not inform the Air Force that the August 4, 2006 post-FPR revisions to its teaming agreements radically changed the documents. Tab 149 at 17253 [redacted] 17264 [redacted], 17280 [redacted] CENTECH's cost proposal also disclaimed any joint venture relationship. Tab 12 at 1143-46.[3]

**G. September 6, 2006; The Contracting Officer Determines CENTECH's Proposals Do Not Meet 50% Requirement**

On September 6, 2006, the Air Force contracting officer issued a determination of

[3] In declarations submitted to the SBA in October 2006, CENTECH acknowledged that the teaming agreements were amended August 4, 2006 "in response to the SBA's disclosure [on August 2, 2006] that under specified circumstances the information contained in the amendment might be necessary to establish an 'informal' joint venture arrangement consistent with the SBA's interpretation of its regulations." Tab 188 at 17862, Declaration of [redacted] CENTECH Senior Vice President. Tab 247 at 19678-84; Tab 276 at 20333-36, 20350-59.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

non-responsibility, stating that "based solely on the information received from CENTECH with its proposal, CENTECH will perform 43.2% of the work with personnel of their concern." Tab 225 at 19793; Tab 151 at 17296.

On September 15, 2006, the Air Force referred the matter of CENTECH's responsibility to the SBA for consideration under the Certificate of Competency procedures. Tab 154 at 17304-05. The Air Force's referral stated "CENTECH GROUP did not meet the subcontracting limitation requirement set forth in statute and regulation ...." Id. at 17305.

**H. August-October 2006; CENTECH Submits Documents to Contracting Officer and SBA Seeking to Materially Change Its Proposal**

On August 17, 2006, CENTECH submitted to the contracting officer information in an attempt to change its proposal. Tab 149. The contracting officer refused to consider this post-FPR information. Tab 150.

On September 29 and October 31, 2006, CENTECH submitted to SBA numerous documents not included in CENTECH's proposal, such as narratives, a compliance matrix and spreadsheets, all of which designed to show that CENTECH would comply with requirements of the subcontracting limitation clause. Tabs 190-207; Tab 255 at 19794, n.3 and 19796, n.4.

CENTECH'S material post-FPR changes, discussed below, were all raised during the GAO protest proceeding. Tab 145 at 17111; Tab 276 at 20333-37, 20350-59. In its GAO filings, CENTECH did not dispute the underlying facts, only whether the changes had a "material" impact on the proposal, a legal issue. See, e.g., Tab 236 at 19605; Tab 238 at 19619-20.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

### 1. CENTECH Changed the Percentage of Labor Cost for the Prime and Subcontractors

The following table shows the changes from the percentage of personnel cost before and after the FPR due date for CENTECH and its subcontractors:

| | CENTECH | [redacted] | | |
|---|---|---|---|---|
| **Air Force calculated FPR percentage**[4] | 43.2% | | | |
| **CENTECH post-FPR changes**[5] | [redacted] | | | |

### 2. CENTECH Reduced the Number of [redacted] Full-Time Equivalents By Approximately [redacted] and Otherwise Substantially Reduced the Role of [redacted]

CENTECH reduced the number of [redacted] Full Time Equivalents ("FTEs") by approximately [redacted]. See Tab 276 at 20354. CENTECH's FPR shows [redacted] FTEs. The CENTECH post-FPR documents show the number of [redacted] FTEs at [redacted] Tab 71 at 3381-82; Tab 187 at 17812. Further, under [redacted] Engineering and Planning, [redacted] Tab 187 at 17805. CENTECH simultaneously increased the number of FTEs for [redacted] by approximately [redacted] CENTECH's FPR for the [redacted] proposal shows [redacted] TAB 71 at 3413-14. However, the post-FPR documents show the number of FTEs [redacted] Compare Tab 276 at 20354; Tab 71 at 3413-14; Tab 187 at 17812.

---

[4] Tab 132 at 16944.
[5] Tab 187 at 17803.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

### 3. CENTECH Materially Changed the Number and Mix of Personnel for Functional Areas

CENTECH materially changed the number and mix of personnel for functional areas. Specifically, CENTECH [redacted] the number of personnel in the Engineering and Planning ("EN") area by [redacted] personnel or approximately [redacted] the number of personnel in the Acquisition and Portfolio Support ("DR") area by approximately [redacted] or [redacted] and [redacted] the number of IT personnel by nine or [redacted] Tab 71 at 3572 ([redacted] personnel) and Tab 187 at 17808 ([redacted] personnel). Additionally, despite CENTECH's claim that it proposed [redacted] of its own staff in its subsequent submissions to the SBA, CENTECH only used [redacted] FTEs in costing its October 31, 2006 submission to SBA. See Tab 187 at 17812; Tab 247 at 19681.

### 4. CENTECH Materially Changed Experience and Skill Levels

CENTECH's post-FPR submission materially altered experience and skill levels. Tab 276 at 20356-57; Tab 187 at 17812; Tab 71 at 3339-40. CENTECH's initial proposal of [redacted] Level IV (high skill) positions [redacted] post-FPR to [redacted] Level IV positions, [redacted] of more than [redacted] See Tab 187 at 17812.

The SBA documents (Tab 187 at 17812) show the total "proposed" [redacted] positions are [redacted] yet the "actual [i.e. post FPR change]" column shows only [redacted] positions. [redacted] labor categories were eliminated completely. Many other labor categories were [redacted] CENTECH's proposal [redacted] (e.g., [redacted] Tab 247 at 19682-83; Tab 276 at 20356-57.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

CENTECH made changes [redacted]. Tab 187 at 17812; Tab 71 at 3339-40. Of the twelve types of [redacted] (high skill) positions, [redacted] type were [redacted] meaning CENTECH [redacted] Id. This reduces costs, reshuffles the percentage of work to be performed by the prime and subcontractors, and it materially impacts the technical quality and risk offered to the government.

### 5. CENTECH's Material Changes Call into Question Its Cost Proposal and the Entire Cost Evaluation and Best Value Determination

Based on FPRs, the cost difference between CENTECH and TYBRIN was approximately [redacted] million, in TYBRIN's favor. Tab 83 at 5167-68 (¶ 7.2). As a result of CENTECH's numerous post-FPR changes alone, the actual proposed cost difference, using CENTECH's post-FPR submissions, would be approximately [redacted] million, again in TYBRIN's favor. Tab 247 at 19688 (¶ 8); Tab 276 at 20358 (Section II.G.); Tab 71 at 3337-47 (CENTECH FPR numbers); Tab 187 at 17805-16 (post-FPR submission).

## I. December 4, 2006; SBA Issues COC

The SBA issued a COC based on the SBA's determination that CENTECH was "responsible" and that CENTECH was "now meeting the limitation on subcontracting regulation." Tab 158 at 17330. (emphasis added). The phrase "now meeting" is unclear. The CENTECH contract was suspended. Perhaps SBA was referring to the short transition period (approximately April 28 to May 26, 2006) before TYBRIN filed its initial protest. Tab 3; Tab 2; Tab 37. Possibly SBA is claiming that during the abbreviated four-week transition period, CENTECH may have met the requirement. The evident work that took place during this period involved CENTECH personnel interviewing current TYBRIN employees. While



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

the SBA agreed with the Air Force and TYBRIN that CENTECH's proposal, on its face, proposed approximately 43%, because SBA was only looking at responsibility issues, SBA concluded that it could take into account post-award performance and post-FPR proposal changes. Tab 158 at 17330-31.

**J. December 21-29, 2006; Air Force Announces Re-Award to CENTECH; TYBRIN Timely Protests**

On December 21, 2006, the Air Force reinstated the award to CENTECH based on the SBA's issuance of the COC. Tab 161 at 17339. On December 29, 2006, TYBRIN timely protested to GAO. Among other things, TYBRIN protested that CENTECH's proposal, on its face, indicated CENTECH had not proposed to comply with the subcontracting limitation. Tab 145 at 17100. On February 2, 2007, TYBRIN filed a supplemental protest that CENTECH improperly changed its proposal after the due date for submission of FPRs, contrary to FAR 15.306; and 15.307. Tab 276 at 20333-37; 20350-59.

**K. March 13, 2007; GAO Sustains TYBRIN's Protest**

On March 13, 2007, GAO sustained TYBRIN's protest, stating in part that CENTECH's proposal could not form the basis of an award because the Air Force determined that the proposal failed to comply with the limitation on subcontracting requirement. GAO ruled the Air Force should have found CENTECH's proposal unacceptable rather than non-responsible. GAO recommended that the Air Force reopen discussions, request revised proposals, review them consistent with the terms of the solicitation, and make a new source selection decision. Tab 255 at 19796.

Because GAO recommended the reopening of discussions, GAO did not address TYBRIN's other protest grounds. Tab 255 at 19796, n.4. However, GAO recommended that



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

the Air Force in its corrective action "may want to be mindful of the issues raised by TYBRIN in its protest ...." Id.

**L. March 23, 2007-April 17, 2007; SBA Requests Reconsideration; GAO Denies Request**

On March 23, 2007, the SBA requested reconsideration of GAO's decision. Tab 242. On March 27, 2007, TYBRIN requested that GAO summarily dismiss the request. Among other things, TYBRIN noted SBA's questionable arguments with regard to what information the Air Force knew during the procurement:

> Astonishingly, SBA declares "the Air Force did not know whether CENTECH and its subcontractors can meet this requirement or whether CENTECH alone was the responsible party." SBA letter, at 6. This statement takes the breath away. ***What, in light of all the facts, did the Air Force not know? It does not take a mathematician to know that*** [redacted] ***is larger than*** [redacted] As SBA's August 4, 2006 letter to GAO makes clear, the requirements of FAR 52.219-14 are clear and unambiguous. The prime contract offeror must meet the requirement. See also Orincon, [Corp., B-276704, July 18, 1997, 97-2 CPD ¶ 26], n.3.

Tab 246 at 19663. (emphasis in original).

On April 17, 2007, GAO denied SBA's request, stating "CENTECH's proposal on its face clearly did not meet the material term of the solicitation embodied in the 50-percent subcontracting limitation." Tab 256 at 19801.

**M. June 29, 2007; Air Force Issues Amendment 3 to the RFP Addressing GAO Recommendation and Other Procurement Issues Requiring Correction**

On June 29, 2007, the Air Force issued a Memorandum for Offerors and Amendment 3 to the RFP. The amendment addressed the GAO recommendation to reopen discussions with all offerors "while mindful of their [GAO] other comments as a result of GAO's 13 MAR 07 decision ...." Tab 257 at 19803. In addition to addressing the subcontracting limitation



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

issue, the June 29, 2007 memorandum and Amendment 3 addressed numerous other TYBRIN protest grounds. For example:

TYBRIN protested the bias of the PM. The Memorandum accompanying the Amendment directly addresses that issue through agency corrective action. The memorandum states:

> 2. ***One of the primary points of the protest alleged that there was bias on the part of a senior member of the original Source Selection Evaluation Team (SSET) and that this person took on too many roles in the source selection which resulted in an unfair evaluation.*** During the course of the original evaluation process, several members of the SSET succumbed to health problems or had other issues that resulted in them being released from the team or roles significantly reduced with no replacements appointed. Since the original award, the rest of the original SSET members have either retired, transferred to a different location, or also have had serious health issues that preclude them from continued participation.
>
> ***In response to these issues***, an entirely new SSET has been appointed to include the SSET Chairperson and the Contracting Officer.
>
> * * *
>
> ***The new team will conduct a completely new evaluation on the revised proposals. The new evaluators will not have access to the original proposals nor the original evaluations. This environment will ensure there is no continuation of any perception of former bias and no duplication of responsibilities. The checks and balances that normally exist in the Air Force source selection process will continue through award.***

Tab 264 at 19889 (emphasis added); see also Tab 257 at 19803. Further, an internal Air Force memorandum noted that in response to TYBRIN's bias protest, the Air Force would do the following: "Assemble a new team with no overlap roles to mitigate the appearance of any bias. Ensure team members have no appearances of conflicts of interest." Tab 268 at 19936.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

As to multiplicity of roles of the PM, the Air Force stated that agency corrective action will "assemble a new team with no overlap in roles to ensure the appropriate checks and balances exist." Id.

The Air Force's June 29, 2007 memorandum requested complete OCI mitigation plans and stated "we recognize that subcontractors are willing to divorce themselves, where necessary, from current contractual arrangements to be an ARDTEAS player with the prime contractor discussing the subcontractors in their organizational conflict of interest mitigation plans." Tab 257 at 19804 (¶ 2b) and 19805 (¶ 7). The Air Force also instructed that "offerors must submit evidence of a firm commitment from the subcontractors they propose or for a subcontractor asset." Tab 257 at 19803 (¶ 2b).

The Air Force's corrective action addressed other TYBRIN protest grounds. For example, TYBRIN protested that the Air Force improperly downscored TYBRIN for not proposing "transformation." Tab 145 at 17121-28. The Air Force plans to "avoid the use of the word 'transformation' during evaluations as it does not directly relate to any evaluation criteria." Tab 268 at 19935. TYBRIN protested that the Air Force's evaluation of tools was materially flawed. The Air Force will "ensure at least one member of the new technical team has the appropriate credentials to evaluate this aspect of the proposals." Tab 268 at 19935.

The Air Force concluded that it could not limit changes to proposals related to the subcontracting limitation issue to CENTECH only. One of the offerors, [redacted] had the same deficiency. Further, changes necessary to address subcontracting limitation compliance would impact other proposal areas. Thus, the Air Force noted:

> This restructuring will at a minimum change the amount of effort performed by the various team members and may result in a change in team members. This will precipitate changes ***in all***



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> ***of the volumes of the proposals.*** Additionally, the passage of time of over two years ***has rendered previously submitted proposals as outdated.***

Tab 264 at 19889-90 (¶ 3). (emphasis added). The Air Force also found:

> Since 2 of the offerors may have an avenue to update their technical proposals due to the LOS issue, ***it is not fair to the remaining 2 offerors to not have the same opportunity.*** Additionally, the Mission Capability sub-factors assess technical approaches requiring state-of-the-art tools and processes that must be able to meet the dynamic current AFFTC needs. Without the ability to receive refreshed technical proposals that address the current PRD and AFFTC mission requirements, the technical evaluation will be difficult to perform and would likely result in the award of a proposal that is ***not completely relevant to our current needs.***

Tab 265 at 19896. (emphasis added). See also Tab 255 at 19796 (explaining why discussions are required with all offerors).

## ARGUMENT

Injunctive relief is an "extraordinary remedy." FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993); Sierra Military Health Servs., Inc. v. United States, 58 Fed. Cl. 573, 579 (2003). To obtain injunctive relief, the plaintiff must demonstrate that (1) it has succeeded on the merits; (2) it will suffer irreparable harm if injunctive relief is not granted; (3) the harm to the plaintiff if an injunction is not granted outweighs the harm to the government if an injunction is granted; and, (4) the injunction serves the public interest. PGBA v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citations omitted); FMC Corp., supra; Sierra Military, supra. The "absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned to the other factors" to justify denial of the injunction. Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc., 908 F.2d 951, 952 (Fed. Cir. 1990).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## I. CENTECH CANNOT DEMONSTRATE SUCCESS ON THE MERITS

### A. The Agency's Corrective Action Follows Procurement Law and Is Rational

This Court must uphold agency corrective action as long it is reasonable under the circumstances. Chapman Law Firm v. United States, 71 Fed. Cl. 124, 131 (2006) (citing IMS Servs., Inc. v. United States, 33 Fed. Cl. 167, 179 (1995)); Baird v. United States, 1 Cl. Ct. 662, 664 (1983); CACI Field Servs., Inc. v. United States, 13 Cl. Ct. 718, 725 (1987), aff'd 854 F.2d 464 (Fed. Cir. 1988) (table); NKF Eng'g, Inc. v. United States, 805 F.2d 372, 377 n.7 (Fed. Cir. 1986); ManTech Telecomms. and Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 65 (2001).

Corrective action will be sustained where "the agency has reasonable concern that there were errors in the procurement":

> In this regard, we note that the "government is not obliged to admit an error as a precondition to proposing corrective action," nor is it "necessary for an agency to conclude that the protest is certain to be sustained before it may take correction action; where the agency has reasonable concern that there were errors in the procurement, even if the protest could be denied, [the GAO] views[s] it as within the agency's discretion to take corrective action." In short, we find the Air Force's corrective action – including its decision to reopen discussions – to be reasonable and well within its discretion.

Data Monitor Sys., Inc. v. United States, 74 Fed. Cl. 66, 74 (2006) (internal citations omitted).

In its Complaint, CENTECH asserts that GAO and the Air Force acted illegally and arbitrarily. Complaint ¶¶ 22-25, 28, 42, 44-47, 48-52, 56-57, 59-61, 63-69, 81, 85-90. To the contrary, as in Griffy's Landscape, the agency's "actions are the antithesis of bad faith. The attorneys and procurement officials involved here took a hard look at the alleged defects in



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

the solicitation process and decided to take corrective action. In doing so, ***they acted responsibly and ethically***." 51 Fed. Cl. at 675. (emphasis added).

**B. The Air Force Had A Rational Basis to Reopen Discussions and Request New FPRs**

**1. Corrective Action was Required Because CENTECH's Proposal was Not Acceptable**

**a. Compliance with the 50% Rule is an Issue of Proposal Acceptability Where the Proposal, On Its Face, Does Not Propose to Meet the Requirement**

The 50% rule is mandated by statute and regulation. 15 U.S.C. § 644(o) requires that "in the case of a contract for services (except construction), at least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern." Implementing the statute, FAR 52.219-14 mandates that for service contracts, "at least 50% of the cost of contract performance incurred for personnel shall be expended for employees of the concern." An offeror that does not propose to comply with the 50% rule must be found technically unacceptable. Transatlantic Lines LLC v. United States, 68 Fed. Cl., 48, 53 (2005); Chapman Law Firm v. United States, 63 Fed. Cl. 519, 527 (2005) (quoting Coffman Specialties, Inc., B-284546, B-284546.2, May 10, 2000, 2000 CPD ¶ 77); Spectrum Security Servs., Inc., B-297320.2-.3, December 29, 2005, 2005 CPD ¶ 227; Ann Riley & Assocs., Ltd., B-271741.2, August 7, 1996, 97-1 CPD ¶ 120; Orincon Corp., B-276704, July 18, 1997, 97-2 CPD ¶ 26; Global Associates, Ltd., B-271693, August 2, 1996, 96-2 CPD ¶ 100; Nat'l Medical Staffing, Inc.; PRS Consultants, Inc., B-238694, B-238694.2, June 4, 1990, 90-1 CPD ¶ 530.

Thus, contrary to CENTECH's Amended Complaint, the 50% rule requirement is not a "policy," it is a legal requirement. See, e.g., AC ¶ 8.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

To determine compliance, the Court must focus on labor ***costs***. FAR 52.219-14. See also KIRA, Inc., B-287573.4-.5, August 29, 2001, 2001 CPD ¶ 153 (analysis is based on proposed costs).

CENTECH's failure to meet the requirement of FAR 52.219-14 is readily apparent. [redacted] Facts at Section B.

Nor does it matter that this procurement is for a cost reimbursement contract. Cf., September 18, 2007 Tr. at 35, 37 (CENTECH counsel). Under CENTECH's unusual view of cost evaluation, cost proposals are mere "demonstrations" and not controlling for purposes of proposal acceptability. AC ¶ 12. However, an evaluation of a cost reimbursement contract must be based on the offeror's proposed cost. See, e.g., FAR 15.305(a)(1) and (b)(1). See also Tab 4 at 208-11 (¶ 4.0), 221-22 (¶ 7.0). The proposal evaluation must be based strictly on the cost model set forth in the RFP and what the offeror proposes in its proposal or FPR, not what an offeror proposes after the FPR due date. FAR 15.306(a); 15.307. Tab 4 at 221 (Section M ¶ 7.0). See, e.g., KIRA Inc., B-287573.4-.5, August 29, 2001, 2001 CPD ¶ 153 at 8 (agency examined cost proposal to determine whether proposal, on its face, proposed to comply with 50% rule).

The RFP also (a) stated that the total evaluated price would include the fixed price award fee phase-in price and all cost plus award fee labor basic and option performance periods, (b) required a cost realism analysis for all cost plus award fee services, (c) required the Air Force to calculate a probable cost based on the offerors' FPRs, and (d) stated the probable cost would be used for the best value determination. Tab 4 at 222 (Section M ¶ 7.3).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Here, CENTECH's proposal unambiguously stated that the amount of subcontract labor cost would substantially exceed the cost of prime contract labor.

#### b. CENTECH Confuses Issues of Responsibility and Proposal Acceptability

Citing no authority, CENTECH asserts that GAO (and apparently this Court) cannot enforce FAR 52.219-14 because it was not included as an evaluation factor under Section M. AC ¶ 61. The FAR 52.219-14 requirement is not usually identified as one of the evaluation criteria, and need not be so identified. See, e.g., Global Associates, Ltd., supra. In any event, this Court has held that FAR 52.219-14, which is required by 15 USC § 644(o), is mandatory under the *Christian* doctrine, even if not included in the RFP. See, e.g., Transatlantic Lines, 68 Fed. Cl. at 52 (limitation on subcontracting clause applies whether or not it is in the RFP). Here, the RFP expressly included FAR 52.219-14.

There is a distinction between claims that a small business cannot comply with solicitation requirements (for example, due to size or capacity) and protests that a small business has ***not proposed*** to comply with a requirement. The first case involves issues of responsibility addressed by the contracting officer and the SBA. The second involves issues of proposal acceptability addressed during the proposal evaluation.

CENTECH repeatedly seeks to blur the distinction. See, e.g., AC ¶ 16 ("CENTECH possessed the capability to perform at least 66.2% ...."); AC ¶ 15 (claiming without support that CENTECH did not require amount of small business subcontract participation to perform the contract). A proposal that does not meet a material RFP requirement is unacceptable and cannot be the basis for award. Transatlantic, 68 Fed. Cl. at 53; Chapman, 63 Fed. Cl. at 527.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

An offeror cannot tell an agency that its qualified subcontractors will perform 57% of the work for purposes of evaluating its proposal, but later tell the SBA the offeror "intended" something else.

In a responsibility determination, the agency and SBA are permitted to consider certain changes in the offeror's status ***up until the date of award***. FAR 9.105-1(b)(3) ("information on financial resources and performance capability shall be obtained or updated on its current basis as is feasible up to the date of award"). There the inquiry relates to the company's capacity and creditworthiness, that is, whether the company can perform the contract.

In contrast, in determining proposal acceptability, the test is whether the proposal meets the requirements of the solicitation based on the proposal or FPR. FAR 15.306; 15.307; The Futures Group Int'l, B-281274.5-.7, March 10, 2000, 2000 CPD ¶ 148; Int'l Resources Group, B-286663, January 31, 2001, 2001 CPD ¶ 35. This rule applies even where the need for correction is due to agency error. See also, IMS Servs., Inc. v. United States, 33 Fed. Cl. 167, 185 (1995) ("as a result of the Navy's failure clearly and accurately to communicate the requirement regarding proposal of the MET [materials, equipment and tools] cost estimates to the competitive offerors, the procurement process was flawed and the GAO and Navy reached a rational and reasonable decision that a renewed round of BAFOs should be conducted.").

If an agency conducts discussions as part of corrective action, it must do so with all competitive range offerors. If one offeror is permitted to change its proposal, all offerors in the competitive range must be given a similar opportunity. FAR 15.306; 15.307. Further, any proposal change must be evaluated to determine whether it has an impact on the offerors' final



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

evaluation ratings under each criteria. For example, a change in an offeror's cost proposal could have material ramifications on its technical or management ratings. See, e.g., Global Associates, Ltd., supra, n.4 (agency failed to consider the impact of awardee's post-BAFO statements regarding FAR 52.219-14 compliance on the firm's technical score; changes made to address 50% rule might have resulted in lower technical score); Resource Consultants, Inc., B-293073.3, June 2, 2004, 2005 CPD ¶ 131 (agency improperly permitted offeror to change its technical approach through revised pricing, even though the offeror did not submit a revised technical proposal; "to the extent that the agency allowed [the awardee] to submit a revised price that effectively altered its underlying technical proposal – without allowing any other offeror to do so – the agency abandoned one of the stated ground rules."). Similarly, changes in the amount of work subcontracted can have a dramatic impact on the evaluation ratings.

The SBA certifies to contracting officers the responsibility of a small business with regard to capability, competency, capacity, credit, integrity, perseverance and tenacity. See, e.g., 15 U.S.C. § 637(b)(7)(A). An allegation that a small business is ***not capable*** of meeting the 50% requirement because of its status as a small business clearly falls within the responsibility definition. See, e.g., 15 U.S.C. § 637(b)(7)(A). See also FAR 19.601(d) (whether small business "cannot comply with the limitation" is an issue of responsibility).

GAO has concluded that the COC process does not apply in determining whether a small business is technically acceptable. Compare AC ¶ 53 (claiming that FAR 19.602-1 requires a COC if small business is denied a contract for failure to comply with 50% rule). Thus, GAO has stated:



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> We have held that proposal from a small business concern may be rejected as unacceptable even when based in part on responsibility-type considerations without referral of the question to SBA for the possible issuance of a Certificate of Competency. ***The Certificate of Competency procedure does not apply in determining whether a small business is technically acceptable*** and should be included in the competitive range for a given procurement.

Systec, Inc., B-205107, May 28, 1982, 82-1 CPD ¶ 502 (emphasis added); TM Sys., Inc., B-236708, December 21, 1989, 89-2 CPD ¶ 577 (agency was not required to refer rejection of protester's offer based on grounds of technical unacceptability to the SBA for COC proceedings).

**c. The Air Force Memorandum Had No Effect Except to Require Discussions**

In its Complaint, CENTECH mistakenly asserts "it is undisputed that during its source selection, ***the Air Force instructed offerors*** to structure their proposals to comply with the Air Force's disclosed interpretation of FAR clause 52.219-14, ***as opposed to the SBA's interpretation***." Complaint ¶ 45. (emphasis added). The Air Force included voluminous Air Force materials online as part of an early exchange of information. Tab 77 at 3662-4720. Among the materials was an August 19, 2004 AFMC Policy Memorandum. Tab 137. Incorrectly labeled a "policy" document, the document misstates the requirements of FAR 52.219-14. The memorandum does not mention 15 U.S.C. § 644(o). Moreover, there is no evidence the Air Force relied on the AFMC policy letter during the proposal evaluation. Facts at Section A.

The policy memorandum interprets unrelated SBA regulations regarding affiliation to conclude that the bidding entity under FAR 52.219-14 can be an informal joint venture consisting of the prime contract offeror and small business subcontractor/joint venture



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

partners. Tab 137. The policy memorandum was not part of the solicitation, is entitled to no deference, and, in any event, cannot change a statutory or regulatory requirement. The memorandum is signed by the Director of Contracting for the Headquarters AFMC at Wright Patterson Air Force Base, Ohio. Tab 137. That office is without authority to issue a deviation from the FAR or statute. In any event, the policy memo was not adopted through a process of adjudication or rulemaking. Further, the AFMC is not the administering agency for the statute or regulation.

AFMC lacks authority to alter the requirements of 15 U.S.C. § 664(o) and FAR 52.219-14. "The government is not bound by erroneous statements of law made by agency personnel." Del R. Monge v. United States, 27 Fed. Cl. 720, 723, n.5 (1993). See also Utah Power and Light Co. v. United States, 243 U.S. 389 (1917) ("the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit."); Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380 (1947) ("anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority;" this rule applies even where the Government agent may have been unaware of the limitations upon his authority or where the private party suffers from innocent ignorance of the statutory or regulatory requirements).

In addition to its failure to mention 15 U.S.C. § 644(o) , the memorandum ignores numerous GAO decisions to the contrary. Thus, in Orincon, GAO held:

> Orincon argues that because it and two other small business contractors would perform 70% of the contract that it complied with the "intent" of the limitation of the subcontracting clause, which is designed to prevent a small business awarded a set-aside contract from subcontracting the bulk of the work to a



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> large business. However, ***the plain language of both the statutory and regulatory limitations on subcontracting require that the <u>offeror itself</u>, not merely small businesses, perform at least 50% of the personnel cost of contract performance.*** 15 U.S.C. § 644(o)(1); FAR 52.219-14.

<u>Orincon, supra</u>, n.3. (emphasis added). <u>Orincon</u> is consistent with the FAR definition of "concern" which makes clear that the relevant party is the prime contract offeror. FAR 19.001.

Nevertheless, CENTECH's amended complaint seeks to resurrect the flawed AFMC policy approach rejected by the SBA and GAO. Thus, CENTECH alleges that the requirement can be met by "teams." AC ¶ 9. Team members and subcontractors cannot count towards the prime contractor concern's percentage. <u>See, e.g., Orincon, supra</u>.

**d. CENTECH Did Not Bid as a Joint Venture**

During oral argument, Centech referred to teaming agreements to support its claim that it met the 50% rule. September 18, 2007 Tr. at 61. <u>See also</u> AC ¶ 9 (50% rule can be met by "teams"). CENTECH apparently claims that it bid as an "informal joint venture" and therefore it met the Air Force policy memorandum interpretation of the 50% rule. The record shows the opposite. <u>See generally</u>, Tab 12 and Tab 71. No teaming agreements were part of or referred to in the CENTECH proposal or FPR. No teaming agreement was submitted to the Air Force until after the initial award and after the TYBRIN protests. Tab 192 at 17989-18031 (September 29, 2006 submission); Facts at Section F. Moreover, CENTECH and its small business subcontractors ***disclaimed any joint venture relationship***. Tab 149 at 17253 [redacted] 17264[redacted] 17280[redacted] CENTECH changed its teaming agreements on August 4, 2006, ***after the FPR due date*** in response to TYBRIN's protest and SBA's August 2, 2006 letter to attempt to create a post-hoc informal joint venture. Tab 149 at 17237; Tab



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

155 at 17311-12. Post-FPR (indeed, post-protest) changes to an offeror's organizational structure have no bearing on the offeror's proposal acceptability. See, e.g., The Futures Group, supra.

CENTECH's dramatic post-FPR change in organizational structure – aside from being a transparent sham – had a significant impact (not acknowledged by the Air Force) on CENTECH's technical, proposal risk, past performance and cost ratings. Tab 247 at 19678-84; Tab 276 at 20333-37, 20350-59. CENTECH's post-FPR changes do not explain how the work will be performed through a joint venture relationship. The joint venture is inconsistent with other aspects of the CENTECH FPR and exposes the Air Force to substantially greater risk. The RFP expressly required offerors to address potential risks associated with the joint venture relationship. See Tab 4 at 209 (¶ 4.3.5). CENTECH's post-FPR changes do not address this critical point, among other problems.

CENTECH did not bid as a joint venture. See Tab 12 at 1373-74, 1125-27, 1143-46 (excerpts of CENTECH's proposal providing evidence that CENTECH did not bid as a joint venture). CENTECH's cost proposals identify the prime contractor as "The CENTECH Group, Inc."

Any argument that the prime contract offeror for the CENTECH proposal was a joint venture, formal or informal, is contradicted by the CENTECH proposal and FPR and constitutes a misrepresentation of the plain language in those documents. See further, Tab 247 at 19677; Tab 276 at 20345-48.

The RFP included a special certification for joint ventures identified as "K001 Joint Venture (May 1997)." Tab 4 at 193-94 (Section K). CENTECH's proposal states [redacted] for the joint venture clause. Tab 12 at 1373-74. (emphasis added.) The



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

CENTECH OCI plan identifies the prime contractor as CENTECH and the subcontractors as separate entities. Tab 71 at 3627.

Additionally, the RFP, Section L, para. 4.3.5 required offerors to identify any impact from forming a new organization such as a joint venture. Tab 4 at 209. The CENTECH proposal nowhere addresses a joint venture, formal or informal. Tabs 12 and 71.

**e. The Air Force Memorandum Does Not Support CENTECH's Claims**

GAO, SBA and the Air Force concluded that the AFMC's guidance was erroneous and that the prime contract concern must meet the subcontracting limitations itself. Tab 276 at 19799 (quoting Tab 146 at 17227); Tab 255 at 19792, 19796; Tab 257 at 19804. In any event, however, the Air Force memorandum does not support CENTECH. The memorandum states that the FAR 52.219-14 requirement can be met by small business members of a ***formal joint venture*** or a small business prime contractor together with the first-tier small business subcontractors "when the circumstances outlined in Attachment 1 are present." Attachment 1 discusses certain unrelated rules that apply to joint ventures. The attachment concludes that prime-subcontractor teams may qualify as an informally formed joint venture and that, as long as this "joint venture" is composed of small businesses and proposes to meet the 50% requirement, the requirement is met.

Thus, the policy memorandum and attachment assume that the 50% requirement can be satisfied by the team members in an "informal joint venture." CENTECH's own proposal disclaimed any joint venture relationship. Argument, Section II.B.1.d., supra.

**f. CENTECH Improperly Sought to Make Changes to Its Proposal After Receipt of Final Proposal Revisions**

CENTECH has claimed, contrary to established rules, that the contract award was



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

proper based on post-FPR CENTECH submissions to the SBA. Offerors cannot change their proposals to make them acceptable after the FPR due date. FAR 15.306, 15.307; The Futures Group, supra. Thus, offerors cannot change their Mission Capability, Proposal Risk, Cost or Past Performance approaches after the FPR due date. FAR 15.306, 15.307. The FAR prohibits post-FPR changes unless all offerors in the competitive range are permitted to submit new FPRs.

The RFP provided that the proposal risk evaluation would include the potential for increased costs, degradation of performance, and the need for increased government oversight – all factors that would be impacted by substantial changes in who was performing the work, staffing mix and other staffing and cost areas. The evaluation scheme does not permit the Air Force (or SBA or the Court) to determine proposal acceptability and best value by looking to post-award performance costs or post-FPR changes

Changes to the percentages of personnel costs may impact all of the evaluation criteria, especially in this procurement where the offerors were responsible for sophisticated engineering services supporting research and testing at AFFTC. See, e.g., Global Associates, Ltd., supra at n.4 (agency failed to consider the impact of awardee's post-BAFO statements regarding FAR 52.219-14 compliance on the firm's technical score; changes made to address 50% rule might have resulted in lower technical score). The difficulty in changing percentages is substantially increased when an offeror relies heavily on subcontractors to fill material roles in the proposal effort. Here, CENTECH [redacted] for providing experienced personnel, sophisticated [redacted] owned software tools and [redacted] experience and past performance. Tab 145 at 17135-36, 17149, 17150-51, 17162-63, 17164-66, 17177.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

During the September 11, 2007 telephone conference with the Court, CENTECH counsel stated "therefore, in the contents of CENTECH's proposal, there was nothing changed and there was no material change." September 11, 1007 Tr. at 48-49. See also September 18, 2007 Tr. at 55-58; AC ¶ 40. In fact, CENTECH's material change of the percentage of [redacted] involvement, the skill mix and skill levels and its increase of proposed costs by [redacted] million clearly had an impact on all evaluation criteria. Facts at Section H.5, supra.

As part of corrective action, agencies may not conduct discussions with only the original awardee. In The Futures Group, GAO sustained a protest that USAID failed to conduct a proper cost realism evaluation. In response, as part of the corrective action, USAID requested the Defense Contract Audit Agency ("DCAA") to audit the awardee's proposal and USAID conducted a new cost realism evaluation. However, rather than base the audit and evaluation on the awardee's proposal, USAID and DCAA evaluated a post-BAFO change to the proposal. Specifically, after the FPR due date and after the protests were filed, the awardee agreed to cap indirect rates in an effort to address protest allegations. GAO rejected this approach, stating:

> The record shows that one reason USAID felt comfortable accepting Deloitte's rates as proposed was that during the course of Futures' prior protest, one day after the hearing, Deloitte agreed to cap its overhead and G&A rates at the proposed level. *See* Agency Legal Memorandum at 24-25; Agency Report, Jan. 17, 2000, Supplemental Negotiation Memorandum, at 9. ***Since the cap represented a material change in Deloitte's proposal, however, it could not be considered by the agency in the evaluation without having discussions with all competitive range offerors.***



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

The Futures Group, supra. (emphasis added). See also Int'l Resources Group, supra; FAR 15.306(d) (discussions occur when an offeror provides post-FPR information essential to establish its proposal). The same rule must apply here.

**g. CENTECH's Proposed Alternative Corrective Action Violates CICA and the FAR**

CENTECH's Complaint asserts that "to remedy any resulting prejudice to offerors, all the GAO needed to recommend was that the Air Force allow those offerors impacted by the Air Force's interpretation of the clause to modify their proposals to come in compliance with the SBA's interpretation." Complaint ¶ 50. As stated above, such post-FPR amendments would impermissibly involve wholesale restructuring of CENTECH's technical and management approach, including its planned use of personnel and subcontractors. Argument, Section II.B.1.f.; Facts at Section H.

Nor is it correct for CENTECH to suggest that only minor modifications would be necessary to bring the CENTECH proposal into compliance. Facts at Section H.

**2. The Air Force Has Other Independent Bases For Corrective Action**

Apart from the 50% issue, the Air Force had other grounds to take corrective action, including bias by the PM, CENTECH and [redacted] OCI issues and other issues.

**a. The Air Force's Corrective Action was Justified by the Need to Address the Bias of the Program Manager**

The FAR requires that agencies conduct procurements in a fair and impartial manner and imposes controls on the role of procurement personnel. FAR 1.102-2; 1.102-4; 15.303; 15.306. Here, a single individual improperly held numerous procurement positions including PM, Source Selection Team Chair, Past Performance Chair, evaluator for the Mission Capability and Proposal Risk factors, and drafter of the most of the



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

evaluation notices for the Mission Capability factor. Facts at Section C. Standing alone, this raised substantial concerns regarding the integrity of the procurement process. Moreover, this individual was openly biased against TYBRIN.

There was also strong evidence from the contracting officer that the PM blocked the contracting officer from performing her duties. Tab 185 at 17563-64 and Tab 177 at 17539-40. See also Tab 145 at 17111-21. Under the FAR, the contracting officer has the lead role in communications with offerors. Source selection personnel are obligated to keep the contracting officer informed about the various steps in the source selection process. FAR 15.303, 1.602-2, 1.601(b), 15.305. Air Force documents showed that the PM had improperly usurped the duties of the contracting officer. Tr. 185 at 17563-64; Tr. 177 at 17539-40.

Limited discussions with CENTECH on the 50% rule alone would not resolve this issue. The agency corrective action specifically addressed the TYBRIN bias issue by replacing the evaluation team. Tab 264 at 19889; see also Tab 257 at 19803 (¶ 1).

The Air Force's steps were designed to address the TYBRIN bias protest and protect the integrity of the procurement process. Among other things, the Air Force has ensured that the new teams will not have access to the previous proposals or the former evaluations. Tab 257 at 19803. It is immaterial that some members might have changed for other reasons.

**b. The Air Force's Corrective Action Was Also Necessary to Address OCI Issues Raised by TYBRIN**

The Air Force's June 29, 2007 memorandum requests complete OCI mitigation plans and states "we recognize that subcontractors are willing to divorce themselves, where necessary, from current contractual arrangements to be an ARDTEAS, player with the prime



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

contractor discussing the subcontractors in their organizational conflict of interest mitigation plans." Tab 257 at 19804 (¶ 2b). Further, "offerors must submit evidence of a firm commitment from the subcontractors they propose or for a subcontractor asset." Tab 257 at 19803 (¶ 2b). This action directly addresses TYBRIN's protest that the Air Force failed to properly evaluate OCI mitigation plans, that the CENTECH plan did not address [redacted] OCI issues and that CENTECH was unduly reliant on [redacted] for personnel and tools that [redacted] had no obligation to provide. Tab 145 at 17135-36 and 17203-08.

During oral argument on the motions to dismiss, CENTECH argued that the OCI issue could have been resolved by limited clarifications with CENTECH only and a new OCI evaluation. September 18, 2007 Tr. 53. CENTECH ignores the magnitude of the procurement error. Proposal revisions addressing OCI issues may require replacement of subcontractors or changes in the subcontractor teams with regard to personnel, tools and other subcontractor assets. These types of changes cannot be accomplished through clarifications.

**c. The Air Force Corrective Action is Also Supported by the Agency's Decision to Address Other TYBRIN Protest Grounds and Other Changes**

Internal Air Force documents confirm that Amendment 3 and the Air Force corrective action was not limited to the 50% rule issue. To the contrary, the Air Force plans to change numerous aspects of proposal evaluation to address TYBRIN protest grounds and changes in technology and other developments. Facts at Section M. All of these changes support agency corrective action regardless of how the Court addresses the 50% rule.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

#### d. The Air Force Has An Unfettered Right to Suspend or Terminate

To the extent CENTECH continues to challenge the Air Force's right to suspend or terminate for convenience the CENTECH contract, CENTECH fails to state a claim upon which relief may be granted and CENTECH's claims are otherwise without merit.

Absent allegations of bad faith (not present here), the Air Force has a virtually unfettered right to suspend or terminate a contract for convenience. Torncello v. United States, 231 Ct. Cl. 20, 47-48 (1982). The material flaws in CENTECH contract, material errors in the procurement process, and changed circumstances all justify termination or suspension of the original awarded contract.

## II. CENTECH DOES NOT MEET THE OTHER THREE FACTORS FOR INJUNCTIVE RELIEF

### A. Irreparable Harm

Since CENTECH has not established success on the merits, it will suffer no harm, much less irreparable harm, if injunctive relief is not granted. In any event, CENTECH's claimed loss of "profits and its losses resulting from its reliance on the government promise of a procurement process undertaken by the government with honesty and integrity" do not support a claim of irreparable injury. Indeed, at this stage of the proceedings, there is no way to determine if CENTECH would be harmed at all by the Air Force corrective action. CENTECH's post-FPR changes indicate CENTECH plans to increase its percentage of proposed contract cost from 43% to [redacted]. Further, CENTECH appears to have increased its proposed cost by approximately [redacted] million. As a result, if CENTECH wins the new contract award, CENTECH may receive a windfall (or at least substantially greater cost and profit) as a result of the TYBRIN protest and subsequent agency corrective action. Certainly, it cannot



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

be irreparable harm at this stage for CENTECH to have the opportunity to make millions more than it had originally planned. Nor has CENTECH shown any evidence that its claimed wasted proposal costs will in any way exceed the potential economic gains it may achieve under the new contract.

**B. Balance of Harms**

The Court must determine whether the balance of hardships leans in the plaintiff's favor. To do this, the Court must consider the harm to the government, the intervening defendant and other interested parties. Reilly's Wholesale Produce v. United States, 73 Fed. Cl. 705, 715 (2006). The government has an overriding interest in being able to proceed with the new contract and correct previous procurement violations. The intervenor has an interest in fair and expeditious consideration of its proposal and in having the procurement process move forward without unjustified interruptions and without the need to defend its position in costly and meritless litigation. Erinys Iraq Ltd. v. United States, COFC No. 07-562C, 2007 U.S. Claims LEXIS 287 (September 14, 2007). The intervenor also has a strong interest in a procurement conducted on a fair and impartial basis and in accordance with CICA and the FAR

The Air Force and TYBRIN will be harmed by the granting of injunctive relief, through the costs of delay resulting from additional protests that will naturally arise if the original flawed CENTECH award is reinstated. The Air Force will be further harmed by any injunction that limits its ability to cure previous procurement violations or otherwise comply with statute and regulation.

**C. Public Interest**

The public interest weighs heavily in favor of denying injunctive relief. If the Court



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

were to grant an injunction requiring reinstatement of the CENTECH contract, TYBRIN would then re-file all of its non-50% rule protest grounds with GAO or this Court. Those issues have never been resolved. The public interest weighs strongly in favor of permitting the Air Force to resolve all of those issues in its corrective action. The public interest weighs heavily in favor of fair enforcement of procurement laws and regulations.

## CONCLUSION

The motions for judgment on the administrative record filed by the government and TYBRIN should be granted, and CENTECH's Complaint should be dismissed. To the extent that CENTECH's Amended Complaint asks the Court to review GAO's procedural or substantive decisions, those portions of CENTECH's complaint should be dismissed for failure to state a claim, for lack of jurisdiction and res judicata considerations. AC ¶¶ 26, 29, 40, 42, 43, 44, 49, 58. Finally, TYBRIN the Air Force deserves commendation for acting "responsibility and ethically" in taking corrective action. See Griffy's Landscape Maint., 51 Fed. Cl. at 675.

Respectfully submitted,

Date: October 1, 2007

By: /s/ John S. Pachter

John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for TYBRIN Corporation*

*Of Counsel*:
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of October, 2007, "MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND BRIEF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Mary Pat Gregory
Mary Pat Gregory



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER