Agreed Upon Version for Public Release

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**BID PROTEST**

| | |
|---|---|
| CENTECH GROUP, INC. | |
| Plaintiff, | |
| v. | CFC No. 07-513C |
| THE UNITED STATES OF AMERICA | Judge Mary Ellen Coster Williams |
| Defendant, | ~~**FILED UNDER SEAL**~~ |
| and | |
| TYBRIN CORPORATION | |
| Intervenor-Defendant. | |

**TYBRIN CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S AND INTERVENOR'S MOTIONS FOR JUDGMENT**

John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for TYBRIN Corporation*

*Of Counsel*:
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC

Dated: November 7, 2007

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... iii

COUNTERSTATEMENT OF THE CASE ..... 2

A. Counterstatement of the Nature of the Case ..... 2

B. Counterstatement of Facts ..... 2

1. All Parties Agree that CENTECH's Proposal and FPR, On Their Face, Proposed that 43.2% of labor Costs Would Be Performed by CENTECH Personnel ..... 2

2. CENTECH Improperly Failed to Disclose to the Air Force that It Changed Its Teaming Agreements Post-Award to Make It Appear CENTECH Proposed a Joint Venture ..... 4

a. CENTECH Changed its Teaming Agreements Post-Award ..... 4

i. CENTECH Proposal and Teaming Agreements Disclaim Any Joint Venture ..... 4

ii. CENTECH Attempts to Change History by Submitting Newly Minted Informal Joint Venture Agreements ..... 6

iii. CENTECH Finally Admits Teaming Agreement Amendments Were Executed After the FPR Due Date and After Award ..... 8

b. CENTECH Materially Changed its Management Approach and Staffing .. 10

3. CENTECH's MJAR Misstates the Basis for the Air Force's 2006 Corrective Action ..... 11

SUMMARY OF ARGUMENT ..... 12

ARGUMENT ..... 12

I. THE AIR FORCE HAD A RATIONAL BASIS FOR ITS CORRECTIVE ACTION ..... 12

II. STATUTE AND REGULATION CONTROL OVER ANY ERRONEOUS AGENCY POLICY STATEMENTS ..... 13




~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

III. CENTECH CONTINUES TO CONFUSE ISSUES OF PROPOSAL ACCEPTABILITY AND RESPONSIBILITY ........ 14

IV. PROPOSAL ACCEPTABILITY MUST BE BASED ON THE TERMS OF THE RFP AND THE PROPOSAL, NOT POST-AWARD SPECULATION ........ 18

V. CENTECH IMPROPERLY ASSERTS THAT IT PROPOSED AS AN "INFORMAL JOINT VENTURE" ........ 22

VI. THE AIR FORCE WAS PRECLUDED FROM CONSIDERING POST-AWARD CENTECH INFORMATION THAT MATERIALLY ALTERED THE BASIS FOR THE CENTECH FPR AND AWARD ........ 22

VII. THE SBA COC PROCESS APPLIES TO RESPONSIBILITY DETERMINATIONS, NOT DETERMINATIONS OF PROPOSAL ACCEPTABILITY ........ 24

VIII. THE AIR FORCE HAD AMPLE OTHER BASES FOR CORRECTIVE ACTION ........ 25

A. CENTECH Cannot Succeed on the Merits and Will Not Suffer Irreparable Harm ........ 26

B. The Balance of Harms Strongly Favors the Air Force and TYBRIN ........ 26

C. The Public Interest Strongly Favors Denial of Relief to CENTECH ........ 27

CONCLUSION ........ 28



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Cases**

Ann Riley & Assocs., Ltd.,
B-271741.2, August 7, 1996, 97-1 CPD ¶ 120 .......... 14, 19, 20

Chapman Law Firm,
63 Fed. Cl. 519 (2005) .......... 14, 16, 24, 27

Coffman Specialties, Inc.,
B-284546-.2, May 10, 2000, 2000 CPD ¶ 77 .......... 14, 20

Computer Sciences Corporation,
B-298494.2-.14, May 10, 2007, 2007 CPD ¶ 103 .......... 17

Data Monitor Sys., Inc. v. United States,
74 Fed. Cl. 66 (2006) .......... 12, 13, 25

Del R. Monge v. United States,
27 Fed. Cl. 720 (1993) .......... 14

Federal Crop Insurance Corp. v. Merrill,
332 U.S. 380 (1947) .......... 14

General Dynamics – Ordinance and Tactical Sys., Inc.,
B-295987, May 20, 2005, 2005 CPD ¶ 114 .......... 17

Global Associates, Ltd.,
B-271693, August 2, 1996, 96-2 CPD ¶ 100 .......... 14, 15, 16, 17

Int'l. Resources Group,
B-286663, January 31, 2001, 2001 CPD ¶ 35 .......... 22

Kira, Inc.,
B-287573.4-.5, August 29, 2001, 2001 CPD ¶ 153 .......... 18

Liberty Power Corporation,
B-295502, March 14, 2005, 2005 CPD ¶ 61 .......... 16

Nat'l Medical Staffing, Inc.; PRS Consultants, Inc.,
B-238694-.2, June 4, 1990, 90-1 CPD ¶ 530 .......... 14

Orincon Corp.,
B-276704, July 18, 1997, 97-2 CPD ¶ 26 .......... 13, 14, 16



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

Precision Standard, Inc. v. United States,
69 Fed. Cl. 738 (2006) .......... 16

Resource Consultants, Inc.,
B-293073.3, June 2, 2004, 2005 CPD ¶ 131 .......... 23

Spectrum Security Servs., Inc.,
B-297320.2-.3, December 29, 2005, 2005 CPD ¶ 227 .......... 14

Systec, Inc.,
B-205107, May 28, 1982, 82-1 CPD ¶ 502 .......... 24

The Futures Group,
B-281274.5-.7, March 10, 2000, 2000 CPD ¶ 148 .......... 18, 22

TMS Sys., Inc.,
B-236708, December 21, 1989, 89-2 CPD ¶ 577 .......... 24

Transatlantic Lines LLC v. United States,
68 Fed. Cl., 48 (2005) .......... 14, 15, 16, 24, 27

Utah Power & Light Co. v. United States,
243 U.S. 389 (1917) .......... 14

**Statutes**

15 U.S.C. § 637(B)(7)(a) .......... 24
15 U.S.C. § 644(o) .......... 2

**Regulations**

FAR 15.306 .......... 22
FAR 15.307 .......... 22
FAR 19.601(d) .......... 14
FAR 52.219-14 .......... 2, 15, 18



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Agreed Upon Version for Public Release

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**BID PROTEST**

| | |
|---|---|
| CENTECH GROUP, INC. | |
| Plaintiff, | |
| v. | CFC No. 07-513C |
| THE UNITED STATES OF AMERICA | Judge Mary Ellen Coster Williams |
| Defendant, | **FILED UNDER SEAL** |
| and | |
| TYBRIN CORPORATION | |
| Intervenor-Defendant. | |

**TYBRIN CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S AND INTERVENOR'S MOTIONS FOR JUDGMENT**

The CENTECH Group Inc.'s ("CENTECH's") Amended Complaint should be dismissed or denied.[1] The Air Force had a rational basis for taking corrective action by reopening discussions and requesting new final proposal revisions ("FPRs"). Any other action would have been contrary to statute and regulation. GAO's ruling that CENTECH's proposal, on its face, failed to propose to meet the 50% rule was rational and in fact required by statute and regulation.

[1] To the extent that CENTECH continues to challenge Government Accountability Office ("GAO") procedural or substantive determinations, CENTECH's Amended Complaint (¶¶ 26, 29, 40, 42-45, 49, 57 and 58) should be dismissed as contrary to the law of the case and for failure to state a claim. September 25, 2007 Opinion at 3 and n.5; TYBRIN Corporation ("TYBRIN") August 13, 2007 Motion to Dismiss or Strike at 35-36; TYBRIN Motion for Judgment on the Administrative Record ("MJAR") at n.1.

Moreover, the Air Force had ample additional bases, unchallenged by CENTECH, for taking corrective action.

## COUNTERSTATEMENT OF THE CASE

### A. Counterstatement of the Nature of the Case

CENTECH asks this Court to prohibit the Air Force from expending any funds for Aerospace, Research, Development, Test and Evaluation Advisory and Assistance Services ("ARDTEAS") other than through the contract awarded to CENTECH on or about April 29, 2006. The Air Force corrective action was based on a GAO recommendation that was rational and required by statute and regulation. Tab 255 at 19796-97. GAO found that CENTECH's proposal was unacceptable because CENTECH's proposal, on its face, did not propose to comply with the 50% rule. CENTECH admits that it proposed to perform only 43.2% of the contract labor cost with CENTECH personnel. Amended Complaint, ¶ 14. Thus, CENTECH's proposal was unacceptable.

### B. Counterstatement of Facts

#### 1. All Parties Agree that CENTECH's Proposal and FPR, On Their Face, Proposed that 43.2% of labor Costs Would Be Performed by CENTECH Personnel

It is uncontested that CENTECH's proposal and FPR, on their face, proposed that 43.2% of the labor costs will be performed by CENTECH personnel. Complaint ¶ 13; Amended Complaint ¶ 14; Tab 151 at 17296; Tab 158 at 17330; Tab 168 at 17368; Tab 186 at 17577; Tab 186 at 17576; Tab 225 at 19793; TYBRIN MJAR at 7.

The Small Business Act and the FAR 50% rule focus on proposed labor ***costs***. 15 U.S.C. § 644(o); FAR 52.219-14. CENTECH's cost proposal and FPR clearly provided that CENTECH



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

personnel would perform less than 50% of the cost of labor. Tab 71 at 3342; TYBRIN MJAR at 6-7.

CENTECH states "the Air Force did ***not*** evaluate offerors' compliance with the limitation of subcontracting clause during its source selection for the ARDTEAS contract." Amended Complaint ¶ 19. (emphasis added). In its MJAR, however, CENTECH now asserts that the Air Force did evaluate offerors' compliance and that some Air Force slides show CENTECH proposed to perform 51%. CENTECH MJAR at 10-11.

CENTECH erroneously relies on early briefing slides and slides for the Mission Capability (not Cost) factor. Tab 13 at 1439-1440. For example, CENTECH erroneously states "it [Air Force evaluation slide 108] also reported that CENTECH would perform 51% of the contract costs for personnel with its own employees (AR 5080, Briefing Chart 108)." To the contrary, the slide appears to refer to the number of personnel, not "contract cost for personnel." CENTECH claims to have proposed approximately [redacted] total staff with CENTECH personnel. Tab 191 at 17964. Slide 108 is under the section heading "Mission Capability and Proposal Risk Subfactor Evaluation." Tab 82, at 5080 (Slides 107-108). The Mission Capability and Proposal Risk volume did not include cost data. Tab 4 at 200-205 (Section L at ¶ 2.0). CENTECH's initial proposal clearly states CENTECH labor costs of only 43.2%. Tab 132 at 16944. CENTECH's FPR and the Source Selection Decision Briefing Slides show CENTECH would perform less than 44% of the cost of contract performance. Tab 82 at 5101 (prime contractor labor of [redacted] and subcontractor labor at [redacted]); Tab 71 at 3342 (prime contract labor at [redacted] and subcontractor labor at [redacted]; Tab 81 at 4914 (revised FPR provided prime contract labor at [redacted] and subcontract overhead labor at [redacted]).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

In any event, the question is what CENTECH's cost proposal and FPR actually proposed, not what particular Air Force evaluators may have erroneously concluded regarding CENTECH's Mission Capability proposal at some earlier point.

### 2. CENTECH Improperly Failed to Disclose to the Air Force that It Changed Its Teaming Agreements Post-Award to Make It Appear CENTECH Proposed a Joint Venture

Before GAO and in its MJAR, TYBRIN pointed out that CENTECH proposed to make material changes to its FPR after the FPR due date (and after both award and the TYBRIN protests) in an effort to make its proposal acceptable. CENTECH's MJAR includes material incorrect statements regarding CENTECH's post-FPR and changes:

> ***Following its proposal submission***, [i.e., after the April 29, 2006 award] CENTECH interviewed all incumbent personnel, obtained actual salaries and labor categories for the incumbent staff and use the new information to update labor category distributions and salaries in its management approach. ***CENTECH did not change its management approach, staffing by team member or teaming agreements***.

CENTECH MJAR at 8. (emphasis added). This materially erroneous statement undermines CENTECH's credibility. CENTECH proposed to make post-FPR changes to its management approach, staffing by team members and teaming agreements in an effort to make its proposal acceptable.

#### a. CENTECH Changed its Teaming Agreements Post-Award

##### i. CENTECH Proposal and Teaming Agreements Disclaim Any Joint Venture

On August 2, 2006, SBA submitted a letter to GAO stating that the prime contract offeror was required to meet the 50% rule with its own proposed labor. Tab 146 at 17225. The SBA noted that this requirement could be met if the prime contract offeror was a joint venture, as long



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

as the formal or informal joint venture relationship was reflected in an agreement between the business concerns explaining that the bidding entity is a joint venture. Tab 146 at 17227.

Thus, SBA stated:

> *[T]**he SBA's regulations on this issue are clear. A small business prime contractor on a small business set aside contract must meet the subcontracting limitations requirement itself***, unless it is a joint venture that is exempt from affiliation pursuant to § 121.103(h)(3). The regulations define a joint venture as an informal or formal structure (e.g., the association of SBC's can be by way of an express or implied contract; the joint venture need not be in the form of a separate legal entity). 13 C.F.R. § 121.03(h). ***Informal joint ventures relationships are evidenced by an agreement between the business concerns explaining that the relationship is a joint venture*** and meets the regulation's definition of joint venture. The informal joint venture is not presumed for each prime and subcontractor relationship.

Tab 146 at 17225. (emphasis added). SBA stated further:

> ***Any informal joint venture relationship, however, must be evidenced by some type of an agreement*** between the business concerns ***explaining that it is a joint venture*** and that it meets the regulation's definition of joint venture. ***The informal joint venture is not presumed*** for each prime and subcontractor relationship.

Tab 146 at 17227. (emphasis added).

Here CENTECH has a problem: the CENTECH proposal and teaming agreements ***disclaimed*** any joint venture relationship. The RFP included a special certification for joint ventures. Tab 4 at 193-94 (Section K001). ***CENTECH's proposal states*** [redacted] Tab 12 at 1373-74. See also Tab 12 at 1373-74, 1125-27, 1143-46 (excerpts of CENTECH's proposal providing evidence that CENTECH did not bid as a joint venture). CENTECH's proposal clearly states the prime contractor is CENTECH alone. See Tab 12 at 1125-27, 1143-46.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Additionally, the RFP at Section L, para. 4.3.5, required offerors to identify any impact from the formation of a new organization such as a joint venture. Tab 4 at 209. The CENTECH proposal nowhere addresses a joint venture, formal or informal. Tabs 12 and 71.

The CENTECH OCI mitigation plan identifies the prime contractor as CENTECH and the subcontractors as separate entities. Tab 71 at 3627. Paragraph 4 of the OCI Plan states [redacted]

Id. If the awardee was a joint venture, a joint venture partner could not be removed without amending or novating the contract.

The critical evidence is the CENTECH proposal and FPRs, not the teaming agreements or other extra proposal materials. As of the FPR due date and as of award, CENTECH had not submitted the teaming agreements to the Air Force. The proposal and FPRs, as stated above, disclaimed any joint venture relationship. TYBRIN MJAR at 9, 27-29. The original CENTECH teaming agreements stated that they did ***not*** create a joint venture relationship:

[redacted]

Tab 149 at 17253 [redacted] 17264 [redacted] 17280 [redacted]. (emphasis added).

**ii. CENTECH Attempts to Change History by Submitting Newly Minted Informal Joint Venture Agreements**

By letter dated August 17, 2006, CENTECH sought to revise history by providing to the Contracting Officer copies of its newly minted "informal joint venture" agreements with [redacted] CENTECH stated:



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> CENTECH has executed written Agreements with its small business partners that express their mutual undertaking and intention to establish an "informal joint venture" business relationship for the contract.

Tab 149 at 17237. But CENTECH neglected to mention to the Air Force that the amendments were actually prepared and executed on August 4, 2006, ***after the FPR due and after award.***

TYBRIN first raised the issue of CENTECH proposal non-compliance in its protest on June 29, 2006. Tab 133 at 16956-59. That filing apparently did not jog CENTECH's memory that it had "intended" to enter into an "informal joint venture." That thought did not occur to CENTECH for another two months, after SBA's August 2, 2006 letter. CENTECH's attempted overhaul of its foundation documents is a ruse and a sham.

On August 17, 2006, the Air Force notified CENTECH that it would not consider CENTECH's August 17, 2006 submission. See Tab 150. Apparently, the Air Force was concerned that accepting the documents would constitute discussions. In fact, the documents reflected a material proposal change after the FPR due date. Nevertheless, CENTECH later submitted the documents and other documents showing post-FPR changes to the SBA. See generally Tab 149; Tab 187 (at 18702-16); Tab 189; see also Tab 191 at 17965 ("to this end, we have created an informal joint venture with two small businesses....").

Although the amendments bear no signature dates, they were executed on August 4, 2006 as shown below. The amendments were cleverly written to make it appear that they are effective as of the date of the original Teaming Agreement, March 3, 2005. Thus, they begin by stating: "This Amendment to Teaming Agreement, effective as of the 3rd day of March 2005 ...." The Amendments purport

[redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted]

Tab 149 at 17287, 17289-90.

CENTECH's problem is that you cannot "clarify" a document into saying the opposite of what it most emphatically proclaims.

### iii. CENTECH Finally Admits Teaming Agreement Amendments Were Executed After the FPR Due Date and After Award

The missing date was finally revealed in affidavits submitted by CENTECH, [redacted] [redacted] personnel on or about October 4, 2006 to the SBA during the certificate of competency ("COC") process. Tab 188, Declarations at 17861-62 [redacted] at 17875 [redacted] [redacted] and at 17876 [redacted] Apparently, SBA questioned when the amendments were executed. Those affidavits show that the amendments were actually executed August 4, 2006, ***after*** the FPR due date and after TYBRIN's protest regarding the subcontracting limitation issue and SBA's August 2, 2006 comments. Id. The declaration of [redacted] CENTECH's [redacted] states:

> On or around August 4, 2006 I obtained from [redacted] its executed copy of the undated second amendment to the Teaming Agreement. I signed the Agreement on THE CENTECH GROUP's behalf on August 4, 2006, the day I received it from [redacted]
>
> ***I obtained the second amendment to the Teaming Agreement from [redacted] in response to the SBA's disclosure that under specified circumstances the information contained in the amendment might be necessary to establish an "informal joint venture" arrangement consistent with the SBA's interpretation of its regulations.***

* * *



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> On or around August 4, 2006 I obtained from [redacted] its executed copy of the undated second amendment to the Teaming Agreement. I signed the Agreement on THE CENTECH GROUP, Inc.'s behalf on August 4, 2006, the day I received it from [redacted]
>
> ***I obtained the second amendment to the Teaming Agreement from [redacted] in response to the SBA's disclosure that under specified circumstances the information contained in the amendment might be necessary to establish an "informal joint venture" arrangement consistent with the SBA's interpretation of its regulations.***

Tab 188 at 17861-62. (emphasis added).

In the face of statements by GAO and SBA that CENTECH 's proposal, on its face, did not meet the 50% requirement, CENTECH attempted to rewrite its organizational documents. Thus, the August 4, 2006 teaming agreement amendments were prepared in an attempt to overcome TYBRIN's protest and the SBA comments that supported the protest. In a protest filing dated July 14, 2006, TYBRIN noted that CENTECH had never claimed that it had proposed as a joint venture, formal or informal. See, e.g., Tab 234 at 19372 ([redacted] are not joint venturers ...."); at 19369 ("there is no evidence that CENTECH bid as a joint venture ....").

CENTECH's lack of candor (at best) with regard to the teaming agreements provides an alternate basis for denying equitable relief. A party with "unclean hands" is not entitled to relief in equity. Answer to Amended Complaint, Affirmative Defenses, Third Defense at 13.

In short, CENTECH did not propose as a joint venture and disclaimed any joint venture relationship in its proposal. Accordingly, determination of proposal compliance with the 50% rule must be based on CENTECH personnel only. And all parties agree that CENTECH proposed only 43.2%.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**b. CENTECH Materially Changed its Management Approach and Staffing**

CENTECH 's MJAR states that CENTECH "did not change its management approach, staffing by team member or teaming agreements." CENTECH MJAR at 8.

As shown in TYBRIN MJAR (at 11-13), CENTECH's post-FPR submissions changed staffing by team members in numerous respects by (a) changing the percentage of labor costs for the prime and subcontractors; (b) reducing the number of [redacted] full-time equivalents by approximately [redacted] and otherwise substantially reducing the role of [redacted]; (c) materially changing the number and mix of personnel for functional areas; (d) materially changing experience and skill levels; and (e) otherwise materially changing its cost proposal.

CENTECH attempts to explain its post-FPR proposal changes by stating "the shift in full-time equivalents ('FTEs') merely reflects allocation of labor based on actual requirements. This was fully anticipated when the Air Force issued its RFP." CENTECH MJAR at 8. In fact, the RFP (as required by the FAR) contemplated that the evaluation would be based on the offerors' cost proposals and FPRs, not post-award actual performance. Tab 4 at 208, ¶¶ 4.1.1, 4.1.5; at 221-22, ¶ 7.

While CENTECH now states that it did not change its proposal, the contemporaneous record is to the contrary. CENTECH MJAR at 11-13. CENTECH materially changed numerous aspects of its proposal, in a manner that would have had a negative impact on its Mission Capability, Proposal Risk, Past Performance and Cost ratings. TYBRIN MJAR at 10-13.

CENTECH's reference (at 8) to a "shift" in FTEs is also misleading. Not only did CENTECH shift FTEs from [redacted] to CENTECH, but CENTECH also materially changed the number and mix of personnel for functional areas and materially changed experience and skill



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

levels. Significantly, in numerous areas, CENTECH reduced the skill levels for proposed staff. In other words, CENTECH's post-FPR, post-award submissions proposed to offer the government lower qualified personnel at the original price. Tab 276 at 20356-57; Tab 187 at 17812; Tab 71 at 3339-40; Tab 246 at 19682-83. CENTECH's proposal and FPR relied heavily on the experience, personnel and tools provided by [redacted] personnel. TYBRIN MJAR at 3-4, 11-13. CENTECH's post-FPR submissions do not explain how CENTECH will accomplish its proposed effort given that CENTECH reduced [redacted], a reduction of more than one-half in the level of [redacted] support.

### 3. CENTECH's MJAR Misstates the Basis for the Air Force's 2006 Corrective Action

CENTECH makes the unsupported statement that "the GAO actually accepted the Air Force disclosure that it would request a COC from the SBA to resolve the GAO's recommendation to take corrective action." CENTECH MJAR at 14. The Air Force's August 4, 2006 notice of corrective action stated that the Contracting Officer decided to reconsider whether CENTECH meets the requirements for award, to include the standards articulated in SBA's letter dated August 2, 2006. Tab 147 at 17230. On August 4, 2006, GAO dismissed the protest, stating "the Air Force's determination to 'reconsider whether CENTECH meets the requirements for award' renders TYBRIN's protest challenging the agency actions and award of the contract to CENTECH academic, as it is no longer clear whether CENTECH will remain the awardee of the contract." Tab 148 at 17233-34. Thus, contrary to CENTECH's MJAR, GAO did not accept any disclosure that the Air Force intended to request a COC from the SBA and there was no GAO statement that such action would be appropriate or required.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## SUMMARY OF ARGUMENT

The Air Force had a rational basis for its corrective action. Because CENTECH's proposal, on its face, proposed CENTECH labor cost of only 43.2%, the Air Force was required to find CENTECH's proposal unacceptable. The Air Force was required to exclude CENTECH from the competition or reopen discussions and request new FPRs. In addition to corrective action required to remedy the 50% issue, the Air Force corrective action was also amply supported by the need to address other material procurement errors.

## ARGUMENT

### I. THE AIR FORCE HAD A RATIONAL BASIS FOR ITS CORRECTIVE ACTION

This Court has held that it must uphold agency corrective action as long as it is reasonable under the circumstances. TYBRIN MJAR at 19-20. Thus, this Court will sustain corrective action where "the agency has reasonable concerns that there were errors in the procurement." Data Monitor Sys., Inc. v. United States, 74 Fed. Cl. 66, 74 (2006). In Data Monitor, this Court noted that the agency is not obligated to admit an error as a pre-condition to proposing corrective action and it is not "necessary for an agency to conclude that the protest is certain to be sustained before it may take corrective action." Id. Here, the Air Force has more than met that standard – the protest has been sustained by GAO and the Air Force has independently admitted error.

In its motion, CENTECH seeks to have the Court adopt a new rule cutting off review once a Contracting Officer awards a contract, even if the issue relates to proposal acceptability. Thus, CENTECH claims:

> CENTECH's argument is once the contracting officer affirmatively determines that an offeror will comply with the limitations on subcontracting clause and awards the contract to successful



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> offeror, the GAO should defer to the agency's judgment and exercise of discretion on this point, and leave the decision undisturbed.

CENTECH MJAR at 50. This approach is contrary to well established decisions of this Court and GAO. GAO and this Court will review agency determinations on proposal acceptability, even if the agency or another party erroneously attempts to characterize the decision as a responsibility determination. TYBRIN MJAR at 20-25.

To no avail, CENTECH notes that before GAO's decision sustaining the protest, the Air Force defended its source selection process. CENTECH MJAR at 33. Agencies typically defend their source selection process until they announce corrective action. Agency corrective action must be judged on its own merits. Data Monitor, 74 Fed. Cl. at 74.

## II. STATUTE AND REGULATION CONTROL OVER ANY ERRONEOUS AGENCY POLICY STATEMENTS

CENTECH suggests that because the Air Force Materiel Command issued an erroneous policy memorandum and a copy was posted on the webpage for this solicitation, the AFMC memorandum trumps statute and regulation. SBA concluded that the AFMC policy memorandum was contrary to statute and regulation. Tab 276 at 19799 (quoting Tab 146 at 17227); Tab 257 at 19804. GAO's protest decision had the same effect. Tab 255 at 19792, 19796. In fact, the 2004 AFMC memorandum was contrary to statute, regulation and previous GAO decisions. TYBRIN MJAR at 25-27. See also, e.g., Orincon Corp., B-276704, July 18, 1997, 97-2 CPD ¶ 26 (a 1997 decision holding "the plain language of both the statutory and regulatory limitations in subcontracting require that the offeror itself, not merely the small business, to perform at least 50% of the personnel cost of contract performance.").



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

"The government is not bound by erroneous statements of law made by agency personnel." Del R. Monge v. United States, 27 Fed. Cl. 720, 723, n.5 (1993); Utah Power & Light Co. v. United States, 243 U.S. 389 (1917); Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380 (1947). See also TYBRIN MJAR at 26-27. Otherwise, Contracting Officers could override binding statutes and regulations by issuing erroneous policy memoranda.

## III. CENTECH CONTINUES TO CONFUSE ISSUES OF PROPOSAL ACCEPTABILITY AND RESPONSIBILITY

CENTECH erroneously asserts "the GAO ignored a long line of cases, including its own, that instructs the GAO to defer to the judgment of the agency whether a small business will comply with the subcontracting limitation, "which is a matter committed to the discretion of the contracting officer." CENTECH MJAR at 49 (quoting Chapman Law Firm, 63 Fed. Cl. 519, 527 (2005). In fact, the cases cited by TYBRIN, the Air Force and CENTECH all recognize a distinction between proposal acceptability (face of the proposal) and responsibility (future capability) when an agency addresses compliance with mandatory terms. TYBRIN MJAR at 20 (citing Transatlantic Lines LLC v. United States, 68 Fed. Cl. 48, 53 (2005)); Chapman Law Firm v. United States, 63 Fed. Cl. 519, 527 (2005) (quoting Coffman Specialties, Inc., B-284546, B-284546.2, May 10, 2000, 2000 CPD ¶ 77); Spectrum Security Servs., Inc., B-297320.2-.3, December 29, 2005, 2005 CPD ¶ 227; Ann Riley & Assocs., Ltd., B-271741.2, August 7, 1996, 97-1 CPD ¶ 120; Orincon Corp., B-276704, July 18, 1997, 97-2 CPD ¶ 26; Global Associates, Ltd., B-271693, August 2, 1996, 96-2 CPD ¶ 100; Nat'l Medical Staffing, Inc.; PRS Consultants, Inc., B-238694, B-238694.2, June 4, 1990, 90-1 CPD ¶ 530).

CENTECH cites FAR 19.601(d) ("a contracting officer's finding that a small business ***cannot comply*** with the limitation shall be treated as an element of responsibility and shall be



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

subject to the COC process."). (emphasis added). CENTECH MJAR at 49. This provision clearly relates to issues of responsibility, not proposal acceptability. Thus, the paragraph deals with situations where the Contracting Officer finds a small business "cannot comply with the limitation," not where a small business does not ***propose*** to comply with the limitation.

GAO and this Court have drawn a distinction between claims that a small business cannot comply with solicitation requirements (perhaps due to its size or capacity) and protests that a small business has ***not proposed*** to comply with a requirement. TYBRIN MJAR at 22-25. The first case involves issues of responsibility addressed by the Contracting Officer and the SBA. The second involves issues of proposal acceptability addressed by the Contracting Officer. A proposal that does not meet a material RFP requirement is unacceptable and cannot be the basis for award. TYBRIN MJAR at 22.

That is exactly the situation here. TYBRIN protested that CENTECH's non-compliant proposal made it ineligible for award. GAO agreed and recommended corrective action. The Air Force reasonably undertook corrective action.

Nevertheless, CENTECH argues that because the RFP did not include a Technical Evaluation factor under which the competitive merits of an offeror's compliance with the 50% rule would be evaluated, the issue was one of responsibility, not acceptability. This approach is simply unsupported. The 50% rule is included in almost all small business set aside solicitations in the list of applicable regulations, and not as a specific evaluation factor. See, e.g., Global Associates, B-271693, August 2, 1996, 96-2 CPD ¶ 100. In Transatlantic Lines v. United States, 68 Fed. Cl. 48, 52 (2005), this Court held that the limitation on subcontracting clause applies to determine proposal acceptability even if it is not included in the RFP. Here, the RFP expressly included FAR 52.219-14. TYBRIN MJAR at 20-22. A proposal that does not propose to meet a



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

material RFP requirement is unacceptable and cannot be the basis for award. Transatlantic, 68 Fed. Cl. at 53; Chapman, 63 Fed. Cl. at 527.

CENTECH's reliance on Liberty Power Corporation, B-295502, March 14, 2005, 2005 CPD ¶ 61, is misplaced. CENTECH MJAR at 38-9. There GAO expressly noted:

> ***This is not an instance where the offeror's proposal, on its face, reasonably indicated that the offeror would not comply with the subcontracting limitation***, see, e.g., Orincon Corp., [B-276704, July 18, 1997, 97-2 CPD ¶ 26] rather it involves a question of the offeror's capability to comply with a subcontracting limitation and, thus, its responsibility.

Id., supra. (citations omitted). (emphasis added). Orincon is one of many GAO and Court decisions holding that the 50% rule is an issue of proposal acceptability. TYBRIN MJAR at 20. In Liberty Power, GAO found that the proposal, on its face, reasonably indicated the offeror would comply with the subcontracting limitation. Here it is undisputed that CENTECH's cost proposal, reasonably indicated CENTECH would not comply.

Similarly, CENTECH misreads Precision Standard, Inc. v. United States, 69 Fed. Cl. 738 (2006). CENTECH MJAR at 40-41. There, "prior to the contract award, there was ***no information*** on the face of the offeror's proposals to indicate that the offerors would not comply with the subcontracting limitation requirement." (emphasis added). In determining whether the issue was one of proposal acceptability or responsibility, the Court relied on Chapman Law Firm v. United States, 63 Fed. Cl. 519, 527 (2005) . Chapman is consistent with the numerous GAO and Court decisions holding that an offeror that does not propose, on the face of its proposal, to comply with the 50% rule must be found unacceptable. TYBRIN MJAR at 20.

CENTECH also attempts to distinguish Global Associates, supra. CENTECH MJAR at 43-4. Again, however, Global Associates supports the Air Force corrective action. In Global



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Associates, the agency found that it was ambiguous whether the offeror would comply with the 50% rule. To resolve the ambiguity, the agency conducted communications with the offeror and received a five-page document explaining the offeror's approach in complying with the limitation. GAO held that the agency engaged the offeror in discussions and therefore had to reopen discussions with all offerors in the competitive range and request new FPRs. Here, as a result of information provided by SBA and GAO, the Air Force determined that CENTECH's proposal did not meet the 50% requirement. After the due date for FPRs, CENTECH submitted information purporting to show that it could meet the 50% rule by restructuring its proposed approach. As in Global Associates, this type of post-FPR information could not be considered in the award determination. If CENTECH remained in the competition, the Air Force was required to conduct discussions with all competitive range offerors and request new FPRs. That is exactly what the Air Force plans to do here.

CENTECH's reliance (at 42) on Computer Sciences Corporation, B-298494.2-.14, May 10, 2007, 2007 CPD ¶ 103, is similarly misplaced. There, GAO held that an agency's communications with offerors regarding an issue other than contractor responsibility was improper because the agency failed to conduct discussions with all offerors in the competitive range. CENTECH also cites General Dynamics – Ordinance and Tactical Sys., Inc., B-295987, May 20, 2005, 2005 CPD ¶ 114 (discussions not required regarding small business subcontracting plans since that is an issue of responsibility, not proposal acceptability). CENTECH MJAR at 28, n.11. Again, however, General Dynamics is not relevant because the issue there was responsibility, not proposal acceptability.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## IV. PROPOSAL ACCEPTABILITY MUST BE BASED ON THE TERMS OF THE RFP AND THE PROPOSAL, NOT POST-AWARD SPECULATION

In its MJAR, CENTECH asserts that the Air Force could not determine compliance with the 50% rule by looking at the CENTECH proposal because the RFP did not provide for a fixed price or fixed cost amount. CENTECH claims its cost proposal and FPR were not reflective of what the agency was actually purchasing. Thus, CENTECH states that it "generated a hypothetical labor category usage and total labor contract in its proposal." CENTECH asserts that it "clearly intended to do more than 50% contract." CENTECH MJAR at 7 (citing its teaming agreements, AR 17998, 18009 and 18022). The teaming agreements relied upon by CENTECH were not provided to the Air Force with CENTECH's proposal or FPRs or before the FPR due date, the award or the TYBRIN protest. Thus, the Air Force could not consider the agreements in determining proposal acceptability. In any event, proposal evaluation must be based on the RFP and proposal terms, not post-award developments. GAO has rejected attempts by awardees to change their cost proposals after the FPR due date in response to protest allegations. See, e.g., The Futures Group, B-281274.5-.7, March 10, 2000, 2000 CPD ¶ 148.

The 50% limitation is based on labor cost, not other possible means of measuring subcontractor support such as number of personnel or percentage of work areas performed. FAR 52.219-14; Kira, Inc., B-287573.4-.5, August 29, 2001, 2001 CPD ¶ 153 at 8 (agency examined cost proposal to determine whether the proposal, on its face, proposed to comply with 50% rule). As a result, CENTECH's reference in its MJAR to briefing slides regarding the Mission Capability and Proposal Risk factors or other aspects of the proposal evaluation unrelated to proposed cost are irrelevant. See CENTECH MJAR at 10 (citing Mission Capability and



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Proposal Risk briefing slide); at 11-12 (generic CENTECH statement that it will comply with all terms of the solicitation).

The RFP expressly instructed offerors that the cost/price evaluation would be based on the offerors' cost proposals, including the cost model and worksheets in the RFP. Tab 4 at 221-22, 208. Proposed costs were to be "for PRD Appendix A project workload only." Id. at 208, ¶ 4.1.1. Thus, CENTECH's speculation about post-award changes is irrelevant to the cost evaluation and determination of proposal acceptability. CENTECH (at 7) asserts that "by not stipulating the labor category usage or total staff size, only the incumbent had a complete and accurate staffing picture." To the contrary, because the RFP required offerors to propose to the RFP and PRD requirements, no offeror had an unfair advantage in this area.

CENTECH treats the issue of work share between CENTECH and its subcontractors as merely shifting percentages on a page. To the contrary, the work share between the various companies has a material impact on proposal acceptability and the evaluation ratings. CENTECH's post-FPR changes materially shift work shares for its subcontractors. TYBRIN MJAR at 10-13. This would have a material impact on proposal risk and the technical factors. A change of CENTECH's work share from [redacted] and a reduction of [redacted] work share from [redacted] are substantial changes. Tab 187 at 17803. The RFP required offerors to submit proposed cost for purposes of evaluation and award. Regardless of whether the contract type is fixed price or cost reimbursement, the FAR rules governing competitive negotiation remain the same. It is fundamental that offerors are not permitted to change their proposals post-FPR, unless discussions were held with all competitive range offerors.

CENTECH (at 27) cites Ann Riley and Associates, Ltd., B-271741.2, August 7, 1996, 97-1 CPD, ¶ 120 as holding "compliance found where offeror promised to expand offeror's



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

workforce notwithstanding initial estimates." In Ann Riley, however, the agency claimed that compliance with the 50% rule was not subject to review by GAO since compliance was either an issue of responsibility or contract administration. GAO denied the agency's dismissal request, holding that whether the proposal, on its face, proposed to comply was an issue of proposal acceptability. On the merits, GAO denied the protest, since the awardee had explained in its BAFO how it would meet the requirement. Unlike here, the agency had raised the issue during discussions and the awardee provided a specific explanation for how it proposed to comply. CENTECH MJAR at 27.

In Coffman Specialties, B-284546.2, May 10, 2000, 2000 CPD ¶ 77, cited by CENTECH, GAO noted "there was nothing in Dar-Hills proposal from which the agency could reasonably conclude that Dar-Hill could not or would not comply with the subcontracting limitation. Because the awardee's proposal never indicated that the awardee did not intend to comply with this provision, the awardee's proposal was acceptable." CENTECH MJAR at 29. In contrast, here, there was ample basis for the Air Force to conclude that CENTECH did not propose to comply with the 50% requirement. Tab 256 (GAO Decision) at 19801 ("Taken as a whole, the record is replete with statements evidencing the Air Force's understanding and its recognition that CENTECH's proposal did not meet the subcontracting limitation requirements.").

CENTECH also asserts that the Air Force did not know what percentage of labor costs CENTECH proposed. On this point, CENTECH's MJAR repeats arguments raised by SBA. GAO thoroughly rebutted those claims as follows:

> We do not find persuasive the SBA's suggestion that the Air Force did not understand the subcontracting limitation, which in part is based on the contracting officer's reference to CENTECH's



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> proposal offering to perform "43.2% of the work" with its own personnel-as opposed to performing a percentage of "the cost of the contract for personnel with its own employees." Taken as a whole, ***the record is replete with statements evidencing the Air Force's understanding and its recognition that CENTECH's proposal did not meet the subcontracting limitation requirements***; in this context, we consider "43.2% of the work" to be a shorthand version of the longer phrase. Moreover, in its attempts to parse the language of the contracting officer's statements, ***the SBA's arguments ignore the basic fact that CENTECH's proposal on its face clearly did not meet the material term of the solicitation embodied in the 50-percent subcontracting limitation.***

Tab 256 at 19800, 19801. (emphasis added). See also Tab 151 at 17296, Contracting Officer's September 6, 2006 letter ("based solely on information received from The CENTECH Group, Inc. ('CENTECH') with their proposal, CENTECH will perform 43.2% of the work with personnel of their concern."); Tab 225 at 19793.

CENTECH (at 11-13) now states it did not take any exceptions to the solicitation ground rules. This argument leads nowhere. CENTECH ignores that its cost proposal, on its face, proposed 43.2%. If the Air Force proceeded with the initial illegal award and then directed CENTECH to meet the 50% rule, CENTECH would be justified in demanding an equitable adjustment for any increased cost associated with complying. Those costs could be substantial (tens or hundreds of millions). See, e.g., Tab 247 at 19687-88 (Declaration of Charles Bonuccelli, ¶¶ 4-10). Moreover, because the post-award changes altered CENTECH's management structure, skill levels for proposed staffing, amount of work to be performed by CENTECH and its subcontractors, the role of [redacted] (the basis for many of CENTECH's proposal strengths) and otherwise altered CENTECH's proposal, an award to CENTECH that necessarily relied on CENTECH's post-award submissions would have been contrary to the FAR. TYBRIN MJAR at 4-5, 10-11.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

CENTECH also argues that it ***intended*** to meet the 50% rule, pointing to language in its subcontracting agreements. But the subcontracts were not included with CENTECH's proposal submissions and therefore are immaterial. TYBRIN MJAR at 10-13; Counterstatement of the Case B.2.b., supra.

## V. CENTECH IMPROPERLY ASSERTS THAT IT PROPOSED AS AN "INFORMAL JOINT VENTURE"

CENTECH argues that it met the 50% rule because it proposed as a "informal joint venture." CENTECH MJAR at 7. This claim is directly contrary to all record evidence. Counterstatement of Fact B.2.a.ii., supra. The CENTECH proposal and FPR disclaimed any joint venture relationship. The proposal made clear that the prime contract offeror's concern was CENTECH. See Statement of Facts, B.2.a.i., supra; TYBRIN MJAR at 28-29.

## VI. THE AIR FORCE WAS PRECLUDED FROM CONSIDERING POST-AWARD CENTECH INFORMATION THAT MATERIALLY ALTERED THE BASIS FOR THE CENTECH FPR AND AWARD

CENTECH erroneously argues that the Contracting Officer was required to consider post-award CENTECH information that "proved its compliance with FAR 52.219-14." CENTECH MJAR at 46. That approach is contrary to the FAR restrictions prohibiting discussions with only one offeror. FAR 15.306; FAR 15.307.

In determining proposal acceptability, the agency evaluators and the SSA must determine whether the proposal meets the requirements of the solicitation based on the proposal or FPR. FAR 15.306; 15.307; The Futures Group, supra; Int'l. Resources Group, B-286663, January 31, 2001, 2001 CPD ¶ 35.

If an offeror is permitted to change its proposal, all offerors in the competitive range must be permitted a similar opportunity. FAR 15.306; 15.307. Any proposal change must be



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

evaluated to determine whether it has an impact on the offerors' final evaluation ratings. A change in an offeror's cost proposal could have material ramifications on its technical or proposal risk. Resource Consultants, Inc., B-293073.3, June 2, 2004, 2005 CPD ¶ 131.

Here, the risk to the government was substantially heightened because CENTECH relied so heavily on [redacted] See Tab 145 at 17135-36. CENTECH proposed after the fact to SBA to decrease [redacted] involvement from [redacted]

CENTECH argues, without support, that the difference in costs between its FPR and its post-FPR changes was approximately $500 and not material. CENTECH MJAR at 8. First, an offeror can make material changes to its FPR without changing the total cost to the government. For example, as here, an offeror can sharply reduce the skill levels of proposed personnel. TYBRIN MJAR at 12-13. Even if the cost to the government remains the same, the government would receive substantially lower quality services. See Resource Consultants, Inc., supra. Under these circumstances, the Air Force and other parties are prejudiced.

In any case, CENTECH ignores the impact of its cost proposal changes on its total proposed price. TYBRIN MJAR at 10-13. This issue was thoroughly addressed in TYBRIN's February 2 and 15, 2007 comments submitted to GAO. Tab 247 at 19688; Tab 276 at 20358. There, TYBRIN showed that the actual cost difference was approximately [redacted] Tab 247 at 19688 (¶ 8); Tab 276 at 20358 (Section II.G); Tab 71 at 3337-47 (CENTECH FPR numbers); Tab 187 at 17805-16 (post-FPR numbers). These amounts were based on analyses prepared by Charles Bonuccelli, a Certified Public Accountant admitted to the protective order. Tab 247 at 19687-89. Mr. Bonuccelli reviewed the post-FPR submissions and determined that "most post-FPR average rates for labor classifications are significantly higher than the FPR



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

average labor rates." Tab 247 at 19687. He also found that CENTECH "reclassified the individuals into different labor classifications and levels. In revising my calculated average labor rates, the impact increased the already significant difference from FPR labor rates." Based on Mr. Bonuccelli's analysis and calculation of the differences between the FPR and post-FPR submissions, he determined that the post-FPR submission had an actual cost of approximately [redacted] higher than the FPR. Tab 247 at 19688. CENTECH's assertion that the difference was insignificant fails to persuade.

## VII. THE SBA COC PROCESS APPLIES TO RESPONSIBILITY DETERMINATIONS, NOT DETERMINATIONS OF PROPOSAL ACCEPTABILITY

CENTECH correctly states SBA has exclusive authority over small business contractor responsibility including "capability, competency, capacity, credit integrity, perseverance, and tenacity." CENTECH MJAR at 33-4 (citing 15 U.S.C. § 637(B)(7)(a)). As GAO has held, SBA's exclusive authority over small business responsibility is not relevant to agency determinations of proposal acceptability:

> We have held that proposal from a small business concern may be rejected as unacceptable even when based in part on responsibility-type considerations without referral of the question to SBA for the possible issuance of a Certificate of Competency. ***The Certificate of Competency procedure does not apply in determining whether a small business is technically acceptable*** and should be included in the competitive range for a given procurement.

Systec, Inc., B-205107, May 28, 1982, 82-1 CPD ¶ 502. (emphasis added). See also TYBRIN MJAR at 23-25; TMS Sys., Inc., B-236708, December 21, 1989, 89-2 CPD ¶ 577 (agency was not required to refer rejection of protester's offer based on grounds of technical unacceptability to the SBA for COC proceedings). See also TYBRIN MJAR at 20, citing Transatlantic and Chapman (proposal compliance with 50% rule is issue of acceptability).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## VIII. THE AIR FORCE HAD AMPLE OTHER BASES FOR CORRECTIVE ACTION

CENTECH alleges that Air Force did not take corrective action to ensure a fair and impartial competition (CENTECH MJAR at 44), but instead "because the GAO unlawfully directed it to do so." CENTECH MJAR at 45.

Aside from the GAO decision, which alone provided a rational basis, the Air Force had ample additional bases for corrective action. Because these additional bases are unchallenged by CENTECH, the Court should dismiss the CENTECH Amended Complaint. Among other things, corrective action was appropriate and rational to address TYBRIN's bias and OCI protest allegations. See TYBRIN MJAR at 19-35. Amendment 3 to the RFP addresses these issues by noting the replacement of the PM and most of the source selection team, and by requiring complete OCI mitigation plans and other changes. TYBRIN MJAR at 4. CENTECH has ***not*** protested the terms of Amendment 3 or the Air Force's alternate bases for corrective action. CENTECH misapprehends the requirement for deference to agency corrective action. In Data Monitor, this Court noted that the "government is not obliged to admit an error as a pre-condition to proposing corrective action" nor is it "necessary for an agency to conclude that the protest is certain to be sustained before it may take corrective action." Data Monitor, 74 Fed. Cl. at 74.

CENTECH erroneously argues (at 44) that "the defect, giving rise to the corrective action is unique to, and only impacts CENTECH." This is mistaken. Another offeror also had a 50% rule problem. Tab 264 at 19889; Tab 265 at 19896. Because the Air Force did not conduct discussions with CENTECH or that offeror regarding the 50% requirement, new discussions and new FPRs were required. In any event, the FAR precludes the Air Force from curing through discussions a CENTECH proposal deficiency without conducting discussions with all offerors in the competitive range.



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

**A. CENTECH Cannot Succeed on the Merits and Will Not Suffer Irreparable Harm**

CENTECH raises numerous unsupported claims of irreparable harm. All of these are merely argument of counsel. At this stage of the proceedings, any claimed harm is speculative. CENTECH's post-FPR changes indicate CENTECH's plans to increase its percentage of proposed contract cost from [redacted] Further, CENTECH appears to have increased its proposed cost by approximately [redacted] As a result, if CENTECH wins the new contract award, CENTECH may receive a windfall (or at least greater cost and profit) as a result of the Air Force corrective action. Nor has CENTECH offered any evidence that its claimed wasted proposal cost will in any way exceed the potential economic gains it may achieve under the new contract. Although TYBRIN raised these issues in its MJAR, CENTECH failed to respond.

CENTECH also claims harm because of the alleged lost opportunity to compete in a fair competitive process. CENTECH MJAR at 52. To the contrary, the Air Force's corrective action ensures a fair competitive process. See Sections I and VIII, supra. CENTECH also erroneously claims harm by alleged loss of opportunity to use the COC process. CENTECH MJAR at 52. CENTECH was permitted to use the COC process to establish its responsibility. As discussed above, however, the issue here is proposal acceptability, an issue reserved for the source selection team and review by the GAO.

**B. The Balance of Harms Strongly Favors the Air Force and TYBRIN**

CENTECH claims there will be no harm to the Air Force if the contract is restored to CENTECH as the best value offeror. But CENTECH's contract was illegally awarded, so it cannot represent best value. TYBRIN's protest grounds, including bias and unmitigated OCI issues, undermine CENTECH's alleged status as best value. More significantly, the agency



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

determination of best value was based on the CENTECH management approach, staffing and subcontractor relationships outlined in the CENTECH proposal and FPRs. However, the award to CENTECH was based on different assumptions, that is, the changes proposed by CENTECH post-FPR. There has been no valid best value determination.

CENTECH's post-FPR changes show a final proposed cost more than [redacted] higher than TYBRIN. Further, the post-FPR changes, upon which CENTECH relies to establish compliance with the 50% rule, would have had a material negative impact on CENTECH's mission capability rating, the only area where CENTECH scored higher than TYBRIN. CENTECH's mission capability rating was based in large measure on support from [redacted] Yet, CENTECH's post-FPR changes proposed to cut [redacted]. As a result, the Air Force would be materially harmed if the illegal CENTECH contract is reinstated.

Nor is there any validity to CENTECH's claim (at 52-3) that TYBRIN seeks to prolong litigation. If any party has prolonged litigation, it is CENTECH who continues to argue, contrary to statute, regulation and logic that 43.2% is somehow greater than 50%.

**C. The Public Interest Strongly Favors Denial of Relief to CENTECH**

Finally, CENTECH erroneously asserts that denial of relief would harm the competitive viability of small businesses. TYBRIN and the other competitors are also small businesses. Further, GAO's decision ensures that the 50% rule is enforced, promoting fairness for small businesses. Moreover, denial of relief will reinforce the clear division between responsibility and proposal acceptability and avoid a conflict between this Court's action here and previous decsions of this Court and GAO. See, e.g., TYBRIN MJAR at 20 (citing Transatlantic, supra; Chapman, supra). A decision in favor of CENTECH would impermissibly blur the distinction between proposal acceptability and responsibility.



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

CENTECH claims (at 54) that granting CENTECH's protest will reduce "blind reliance" on GAO recommendations. To the contrary, the Air Force assembled its source selection team and closely reviewed all of the TYBRIN protest allegations, as well as the GAO decision, to determine where corrective action was appropriate. See generally Tab 257; Tab 264. In addition to the 50% issue, the source selection team identified numerous other areas that required corrective action. Tab 264 at 19889; Tab 257 at 19803 (¶ 1), 19804 (¶ 26). The public interest weighs in favor of denying relief to CENTECH.

## CONCLUSION

The Court should grant the Air Force and TYBRIN Motions for Judgment on the Administrative Record and the TYBRIN Motion to Strike or Dismiss and dismiss or deny CENTECH's Amended Complaint and Motion for Judgment.

Respectfully submitted,

TYBRIN Corporation

By: /s/ John S. Pachter

John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for TYBRIN Corporation*

*Of Counsel*:
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of November 2007, "TYBRIN CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S AND INTERVENOR'S MOTIONS FOR JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Mary Pat Gregory
Mary Pat Gregory



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER