No. 07-513C
(Judge Coster Williams)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**THE CENTECH GROUP, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**TYBRIN, INC.**

**Intervenor.**

Agreed Upon Version For Public Release

**DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DEBORAH A. BYNUM
Assistant Director

ARLENE PIANKO GRONER
Trial Attorney
National Courts Section
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 307-0162
Fax: (202) 305-7643
Attorneys for Defendant

OF COUNSEL:

JOHN G. TERRA
Trial Attorney
U. S. Air Force Legal Operations Agency
Commercial Litigation Division
Arlington, Virginia

November 21, 2007

PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 2 of 22

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. The Air Force's Corrective Action Was Neither Arbitrary, Capricious, An Abuse Of Discretion, Nor Otherwise Not In Accordance With Law . . . . . . . . . . . . . . . . 3

A. The Air Force's Decision To Reopen The Solicitation Was Reasonable . 3

B. The GAO Did Not Usurp The Air Force's Contracting Authority . . . . . . 6

C. The GAO's Decision Was Not Irrational . . . . . . . . . . . . . . . . . . . . . . . . 8

D. Neither The GAO Nor The Air Force Usurped The SBA's Authority . . 10

E. The Air Force Did Not Violate The Law Or Procurement Regulations . 12

1. Rejection Of Updated Information Was Reasonable . . . . . . . . . . 12

2. The Rejection Was Consistent With The Solicitation . . . . . . . . . 13

II. CENTECH Is Not Entitled To Injunctive Or Declaratory Relief . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

## TABLE OF AUTHORITIES

### CASES

Aero Corp. v. United States,
38 Fed. Cl. 237 (1997) . . . . . . . . 16

American Bristol Indus., Inc.,
1992 WL 328760 (Comp. Gen.) . . . . . . . . 9

Carothers Const. Inc. v. United States,
18 Cl. Ct. 745 (1989) . . . . . . . . 2

CH2M Hill, Ltd.,
1995 WL 239517 (Comp. Gen.) . . . . . . . . 9, 10

CHE Consulting, Inc. v. United States,
74 Fed. Cl. 742 (2006) . . . . . . . . 6

CW Government Travel, Inc. v. United States,
46 Fed. Cl. 554 (2000) . . . . . . . . 16

Cincom Sys., Inc. v. United States,
37 Fed. Cl. 663 (1997) . . . . . . . . 16

Coffman Specialties, Inc.,
2000 WL 572693 (Comp. Gen.) . . . . . . . . 9

Corvac, Inc.,
1994 WL 14230 (Comp. Gen.) . . . . . . . . 9

Data Monitor Systems, Inc. v. United States,
74 Fed. Cl. 66 (2006) . . . . . . . . 8

Earl Indus., LLC,
2007 WL 3313140 (Comp. Gen.) . . . . . . . . 6

Ecompex, Inc.,
2004 WL 1675519 (Comp. Gen.) . . . . . . . . 13

Honeywell, Inc. v. United States,
870 F.2d 644 (Fed. Cir. 1989) . . . . . . . . 1, 8

PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH
UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 4 of 22



Hospital Klean of Texas, Inc. v. United States,
65 Fed. Cl. 618 (2005) . . . . . . . . . . 15

Little Susitna, Inc.,
1991 WL 133922 (Comp. Gen.) . . . . . . . . . . 9

ManTech Telecommunications & Info. Sys. Corp. v. United States,
49 Fed. Cl. 57 (2001) . . . . . . . . . . 15

Newport Offshore, Ltd.,
1987 WL 102176 (Comp. Gen.) . . . . . . . . . . 9

PGBA, LLC v. United States,
389 F.3d 1219 (2004) . . . . . . . . . . 15

Seattle Sec. Servs., Inc. v. United States,
45 Fed. Cl. 560 (2000) . . . . . . . . . . 15

Textron, Inc. v. United States,
74 Fed. Cl. 277 (2006) . . . . . . . . . . 16

Transatlantic Lines, LLC v. United States,
68 Fed. Cl. 48 (2005) . . . . . . . . . . 10

## STATUTES AND REGULATIONS

5 U.S.C. § 706 . . . . . . . . . . 3

15 U.S.C. § 644(o) . . . . . . . . . . 5

FAR 52.219-14 . . . . . . . . . . *passim*

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THE CENTECH GROUP, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-513C** |
| | ) | **(Judge Coster Williams)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **TYBRIN, INC.** | ) | |
| | ) | |
| **Intervenor.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal Claims and the Court's orders dated October 1, and November 7, 2007, defendant, the United States, respectfully submits this reply to the motion for judgment on the administrative record ("Pl. Mot.") filed by plaintiff, THE CENTECH GROUP, Inc. ("CENTECH"); and opposes its requests for judgment based upon the administrative record, injunctive and declaratory relief, and bid and proposal costs.

**SUMMARY OF ARGUMENT**

The Court should grant our motion for judgment on the administrative record ("Def. Mot.") and deny CENTECH's motion because the Air Force acted reasonably in following the Government Accountability Office's ("GAO") rational recommendation. See Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989). It was reasonable for the Air Force to take corrective action because the solicitation at issue in this case was flawed from the outset.

**PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 6 of 22



Because the Air Force articulated a reasonable basis for its corrective action, the Court should grant judgment for the Government even if it might have reached a different conclusion as to the proper administration and application of the procurement regulations. Carothers Const. Inc. v. United States, 18 Cl. Ct. 745, 751 (1989).

In the Policy Memorandum issued by the Air Force Material Command ("AFMC") on August 19, 2004,[1] AR16983-90, and provided electronically to prospective offerors, AR3666, the Director of Contracting advised that, "within AFMC, we interpret the clause at 52.219-14 to mean that the minimum amounts of work [that] can be performed by the collective efforts of either small business members of a formal joint venture or a small business prime contractor together with the first tier small business subcontractor(s), when the circumstances outlined in attachment 1 are present." AR16983. The award to CENTECH was based upon this mistaken belief that FAR 52.219-14, Limitation on Subcontracting Clause, could be satisfied by the collective efforts of CENTECH and its small business subcontractors, AR16944-45, absent some form of written agreement. After the Small Business Administration ("SBA") disagreed with the analysis in the Policy Memorandum and explained that "a small business receiving a prime contract award as a result of a solicitation set aside for SBCs [small businesses concerns] must meet the subcontracting limitation set forth in the statute and regulations itself," AR17227, the Air Force rescinded the Policy Memorandum. AR19706-07.

---

[1] CENTECH asserts without citation that the Air Force adopted the Policy Memorandum. Pl. Mot. 5 and n.1. It was the AFMC rather than the Air Force in its entirety that issued the Policy Memorandum. We acknowledge that the Air Force provided the Policy Memorandum electronically to all offerors, thereby adopting it for this Solicitation, AR3666, and relied upon it in awarding the contract to CENTECH.

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 7 of 22



After the GAO determined that CENTECH's proposal, on its face, could not form the basis for an award, AR19796,[2] the Air Force decided to reopen the solicitation and make a new source selection decision. It was reasonable for the Air Force to follow the recommendation of the GAO in light of the changed circumstances. The Air Force pointed out that since two offerors had relied upon the rescinded Policy Memorandum in fashioning their proposals, fairness required that all offerors in the competitive range be allowed to update their proposals. AR19898, AR19889.

The Court should issue judgment for the United States based upon the administrative record and deny the relief sought by CENTECH. The Air Force's decision to reopen the solicitation to accord all offerors in the competitive range the opportunity to revise their proposals in response to the corrected interpretation of the subcontracting limitation clause was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706.

## ARGUMENT

### I. The Air Force's Corrective Action Was Neither Arbitrary, Capricious, An Abuse Of Discretion, Nor Otherwise Not In Accordance With Law

#### A. The Air Force's Decision To Reopen The Solicitation Was Reasonable

We have previously shown that the Air Force gave a coherent and reasonable explanation for its corrective action. Def. Mot. 18-22. Once the Air Force realized that the interpretation of FAR 52.219-14 in the Policy Memorandum was incorrect, it rescinded it. AR19706-07. After

[2] The SBA had previously determined that CENTECH did not have an informal joint venture with its subcontractors. AR17324, AR17330.

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 8 of 22



the GAO sustained TYBRIN's protest and recommended corrective action, the Air Force exercised its discretion by issuing an amendment to the RFP to notify all offerors in the competitive range of the changed interpretation, and allow each of them the same opportunity to amend their proposals. It was rational and reasonable for the Air Force to remedy a material defect in the solicitation process by reopening the solicitation to all the offerors in the competitive range. Def. Mot. 19-21.

CENTECH claims that "it is disingenuous for the Government to assert that the Air Force took corrective action to correct defects in the solicitation process." Pl. Mot. 33. CENTECH alleges that the Air Force pursued corrective action only because it was directed to do so by the GAO. Id. at 32-33. While it is true that the Air Force took corrective action in response to the recommendation of the GAO, AR19898, AR19889, it is not true that the Air Force "blindly follow[ed] the GAO's lead and recommendation to take corrective action." Pl. Mot. 31. Indeed, in its June 8, 2007 Memorandum for Record, the Contracting Officer ("CO") stated: "Due to incorrect command level guidance that was provided to all offerors and followed by the evaluation team, the proposal selected for award (and subsequently awarded) was found by GAO not to be in compliance with the [Limitation on Subcontracting] clause and therefore ineligible for award causing their recommendation to re-open discussions." AR19895.

The Air Force considered a variety of options in response to the GAO recommendation. AR19917. It issued Amendment No. 3 to promote a fair environment. This amendment allowed all four offerors in the competitive range to restructure their proposals in light of the corrected interpretation of the subcontracting limitation clause. AR19898. This corrective action will also

**PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 9 of 22



allow the Air Force to reopen discussions with offerors as a result of this material change. The Air Force made clear that it was taking this corrective action to accommodate a level playing field and produce the best, most current contract. AR19918, AR19890.

CENTECH asserts that "[c]ontrary to the arbitrary conclusion the GAO reached, no evidence exists in the record to even suggest CENTECH took exception to the subcontracting limitation requirement in the RFP." Pl. Mot. 21. CENTECH's own proposal refutes this claim. CENTECH stated that its own personnel would perform 43.2 percent of the cost of contract performance, AR16944, AR17967, in reliance upon the Policy Memorandum. AR16992; see also Amended Compl. ¶ 14. CENTECH incorrectly faults the CO for failing to exercise her judgment to determine whether CENTECH "did not or would not" comply with the subcontracting limitation. The CO did in fact find that CENTECH's proposal did not meet the subcontracting limitation requirement as set forth in the statute and regulation. AR17296, AR17577; see 15 U.S.C. § 644(o); FAR 52.219-14.[3]

In reopening the solicitation, the Air Force allowed CENTECH and the other offerors the opportunity to demonstrate whether they would comply with the subcontracting limitation. The Court should grant our motion for judgment on the administrative record because the Air Force

---

[3] Pl. Mot. 26 claims that "the Contracting Officer actually stated that she was '*unable to determine if CENTECH could not or would not meet the subcontracting limitation requirements set forth in the statute and regulation.*'" The CO made this statement in explaining why she rescinded the award. AR17025. In requesting the Certificate of Competency ("COC"), the CO noted that the SBA had not issued a ruling or even advised on whether CENTECH and its subcontractors had an informal or formal joint venture relationship. AR17304. Based upon the updated information submitted by CENTECH during the COC process, the SBA ultimately concluded that CENTECH could meet the subcontracting limitation without any informal joint venture. AR17330.

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 10 of 22



exercised its reasonable discretion in fashioning corrective action that accorded all offerors the same opportunity to demonstrate whether they would comply with this requirement. See CHE Consulting, Inc. v. United States, 74 Fed. Cl. 742, 746 (2006).

**B. The GAO Did Not Usurp The Air Force's Contracting Authority**

CENTECH maintains that it was error for the GAO to ignore the determination by the Source Selection Authority ("SSA") and the CO that CENTECH's proposal complied with the Limitations on Subcontracting clause, and faults the GAO for substituting its judgment for that of the Air Force. Pl. Mot. 31. According to CENTECH, the CO awarded the contract to CENTECH "only after she exercised her judgment and discretion that CENTECH would comply with the subcontracting limitations clause and that CENTECH was a responsible contractor." Id. at 25. Indeed, CENTECH points to Air Force briefing slides in contending that the Source Selection Evaluation Team found that CENTECH's proposal complied with the Limitations on Subcontracting Clause. Id. at 10-11.[4]

The Court already held in its September 25, 2007 Memorandum Opinion and Order ("Memorandum Opinion") that it "will not undertake a review of GAO's procedural or

---

[4] These briefing slides do not demonstrate that CENTECH's proposal complied with the subcontracting limitation. Slide 119, AR1440, cited at Pl. Mot. 10, identifies prime-subcontractor services for the evaluation of Mission Capability and Proposal Risk. See AR1439. Slide 166, AR1463, cited at Pl. Mot. 11, is part of the cost/price evaluation. See Slide 164, AR1462. To the extent that these slides show a material difference between the cost and technical proposals, corrective action was needed. See Earl Indus., LLC, 2007 WL 3313140 (Comp. Gen.). In any event, these briefing slides were prepared before the Policy Memorandum was rescinded and are therefore not free of its error of law. They are from an initial evaluation briefing on August 16, 2005. AR1380. The Policy Memorandum was rescinded on August 10, 2006. AR19706-07.

PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH
UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

substantive decisions." Slip op. at 15. The Court should therefore decline to review this substantive decision of the GAO.[5]

If the Court considers this argument, it should reject it as unfounded because the GAO did not ignore the determinations of the Air Force or usurp its contracting authority. Rather, the GAO found the award to CENTECH flawed because CENTECH's proposal, on its face, failed to comply with the subcontracting limitation, which was a material term of the RFP. AR19794-95.

The record supports this finding. In its July 10, 2006 response to TYBRIN's Supplemental Protest, the Air Force explained its view that CENTECH's proposal for 43.2 percent of the cost of contract performance to be provided by CENTECH personnel complied with FAR 52.219-14, Limitation on Subcontracting, as interpreted by the Policy Memorandum, because the collective efforts of CENTECH and its small business subcontractors would exceed 50 percent of the cost of contract performance for personnel. AR16934; see also AR16944. The Air Force subsequently rescinded the Policy Memorandum, AR19706-07, and decided to allow all offerors in the competitive range to submit revised proposals. The GAO did not ignore the Air Force's award or usurp its contracting authority. In recommending "that the Air Force reopen discussions and request and review revised proposals, evaluate those submissions consistent with the terms of the solicitation, and make a new source selection decision," AR19796, the GAO expressly respected the Air Force's contracting authority.

[5] CENTECH also faults the GAO for not applying its timeliness rules to bar TYBRIN's protest. Pl. Mot. 13 n.7. The Memorandum Opinion makes clear that the Court will not review such procedural decisions. Slip op. at 15. While we agree that the parties should have alerted the Air Force to the legal flaw in the Policy Memorandum prior to bid opening, that did not occur and the RFP was issued with a material error of law that needed to be corrected.

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 12 of 22



Here, it was the Air Force, not the GAO, that fashioned the corrective action. The Air Force concluded that fairness required allowing all four offerors in the competitive range to restructure their proposals in light of the corrected interpretation of the subcontracting limitation clause. AR19898. Amendment No. 3 allowed all four offerors the opportunity to revise their proposals in response to the corrected interpretation of FAR 52.219-14, and provided for the reopening of discussions with offerors as a result of this material change. AR19889, see AR19807-29.

CENTECH also claims that the Air Force's suspension of its contract was unreasonable because it was based upon the GAO's decision. Pl. Mot. 50. The contract was initially suspended in response to TYBRIN's protest pursuant to FAR 33.104(c)(1). AR17360. However, on May 11, 2007, the Air Force exercised its discretion in continuing the suspension after the issuance of the GAO decision because of its plan to amend the solicitation. AR20323-24. Once the Air Force determines which of the revised proposals represents the best value to the Government, the Air Force will either lift the suspension or terminate CENTECH's contract for convenience according to its terms. This exercise of discretion should not be disturbed because it was reasonable. See Data Monitor Systems, Inc. v. United States, 74 Fed. Cl. 66, 73 (2006).

### C. The GAO's Decision Was Not Irrational

This Court should affirm the Air Force's decision to follow the recommendation of the GAO because the GAO decision was not irrational. See Memorandum Opinion, slip op. at 16 (discussing Honeywell, 870 F.2d at 648); see also Def. Mot. 17; Pl. Mot. 25.

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 13 of 22



CENTECH faults the GAO for ignoring precedent that directs the GAO to defer to agency personnel on questions of whether or not a small business complies with the subcontracting clause. Pl. Mot. 25-26 (citing CH2M Hill, Ltd., 1995 WL 239517 (Comp. Gen.); Newport Offshore, Ltd., 1987 WL 102176 (Comp. Gen.); Corvac, Inc., 1994 WL 14230 (Comp. Gen.); American Bristol Indus., Inc., 1992 WL 328760 (Comp. Gen.); Little Susitna, Inc., 1991 WL 133922 (Comp. Gen.)). While we agree that the GAO should generally defer to agency personnel on questions of whether or not a small business complies with the subcontracting limitation, the facts do not support CENTECH's claim, Pl. Mot. 26, that the GAO arbitrarily and capriciously substituted its judgment for that of the Air Force's contracting personnel. Rather, the GAO decision conformed to its precedent. See, e.g., Coffman Specialties, Inc., 2000 WL 572693 *4 (Comp. Gen.).

It was not irrational for the GAO to decline to defer to the Air Force's original determination that CENTECH was responsible. After the SBA advised the Air Force that its award to CENTECH had been based upon an erroneous interpretation of the subcontracting limitation, the CO issued a determination of non-responsibility, finding that "CENTECH does not meet the subcontracting limitation requirements as set forth in statute and regulation and as such is considered nonresponsible and is not eligible to receive the contract award for the ARDTEAS effort." AR17296, see also AR17577. The GAO decisions that CENTECH cites, Newport Offshore, Ltd., 1987 WL 102176 at *2; Corvac, Inc., 1994 WL 14230 at *3; American Bristol Indus., Inc., 1992 WL 328760 at *3; Little Susitna, Inc., 1991 WL 133922 at *2; are distinguishable because the GAO did not substitute its judgment for an affirmative responsibility

determination by the Air Force. CH2M Hill, Ltd., 1995 WL 239517 at *8, is also irrelevant. The GAO there held that the post-decision communications concerned responsibility, rather than acceptability, because the successful offeror's status was not the result of any revisions to its subcontracting plan. In this case, on the other hand, in its submission to the SBA, CENTECH did change its proposal when it offered to "perform [redacted] of the total contract costs of personnel required with its own employees (as opposed to the 43.2% figure CENTECH disclosed in its proposal based on its estimate of the USAF's actual contract requirements)." AR17967.[6] Here, as in Transatlantic Lines, LLC v. United States, 68 Fed. Cl. 48, 53 (2005), the proposal did not comply with the subcontracting limitation. In that case, the Court enjoined an award that would have required the awardee to modify its proposal to comply with the subcontracting limitation. The corrective action in this case avoids that error. The GAO's decision was therefore not irrational, and it was reasonable for the Air Force to follow its recommendations.

### D. Neither The GAO Nor The Air Force Usurped The SBA's Authority

CENTECH claims that the GAO and the Air Force usurped the SBA's authority. Pl. Mot. 49-50. CENTECH contends that "if a question arises concerning a contractor's capability and willingness of an apparently successful offeror to comply with the Limitations on Subcontracting provision the question should be directed to the SBA to determine as a matter of law consistent with its exclusive authority and jurisdiction to perform COC reviews. FAR § 19.601(d)." Pl. Mot. 50.

---

6 The Teaming Agreements that CENTECH provided the SBA, AR17954, AR17989-8031, modified its relationship with its subcontractors post-award. AR17861-62.

**PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

The GAO decision addressed this issue and explained that it "has consistently held that where a proposal, on its face, should lead an agency to the conclusion that an offeror has not agreed to comply with the subcontracting limitation, the matter is one of the proposal's acceptability.... Our Office has also long held that a proposal that fails to conform to a material term or condition of the solicitation, including the subcontracting limitation, is unacceptable and may not form the basis for an award." AR19794 (citations omitted). The GAO held that in light of "the Air Force's determination that CENTECH's proposal failed to comply with a material term of the solicitation (the subcontracting limitation) and, accordingly, that the proposal could not form the basis for award under the RFP, the agency should have found CENTECH's proposal to be unacceptable, rather than finding CENTECH nonresponsible and forwarding the matter to the SBA for its consideration." AR19795.[7]

The Air Force did not err in seeking a responsibility determination from the SBA and did not reject that determination. Rather, after the GAO held that CENTECH's proposal was facially unacceptable and deficient for failing to comply with the subcontracting limitation, a material term of the RFP. The Air Force reasonably decided to accord all four offerors in the competitive range an opportunity to revise their proposals to conform to FAR 52.219-14.

---

[7] Once the SBA determined that CENTECH had not established an informal joint venture, AR17324, AR17330, the issue became one of proposal acceptability rather than responsibility.

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 16 of 22



**E. The Air Force Did Not Violate The Law or Procurement Regulations**

**1. Rejection Of Updated Information Was Reasonable**

CENTECH faults the CO for refusing to consider updated information that it offered to show that it would actually comply with the subcontracting limitation. Pl. Mot. 46-47. CENTECH claims that FAR § 9.105-1 requires the CO to possess or obtain sufficient information to make a responsibility determination. That provision is irrelevant because this case does not concern a determination of responsibility. We have already shown that CENTECH was not harmed by the CO's refusal to consider updated information in determining CENTECH's responsibility because the SBA certified that CENTECH possessed the responsibility to perform the contract. Def. Mot. 22. Moreover, after the SBA advised that it had sole authority to make a responsibility determination pursuant to the COC program, AR17227, it was not arbitrary and capricious for the Air Force to seek a COC from the SBA, as CENTECH alleges, Pl. Mot. 46.

The GAO did not invade the exclusive jurisdiction of the SBA when it found CENTECH's offer technically unacceptable, and the Air Force did not act arbitrarily and unlawfully in following the GAO's recommendation, contrary to CENTECH's allegation, Pl. Mot. 47. The Air Force has consistently maintained that CENTECH's compliance with the subcontracting limitation clause must be determined on the basis of the proposal CENTECH submitted in response to the RFP. AR17296. Documents produced in the GAO protest enabled the Air Force to determine that CENTECH had changed the structure of its proposal during the

COC process, which had an impact on proposal acceptability.[8] Because the GAO's recommendation was based upon the plain meaning of FAR 52.219-14, it was not arbitrary or capricious for the Air Force to follow the GAO's recommendation.

**2. <u>The Rejection Was Consistent With The Solicitation</u>**

CENTECH claims that the Air Force should have looked beyond its proposal to determine whether it would comply with the subcontracting limitation. CENTECH relies upon the fact that the RFP did not require a subcontracting plan and did not include the subcontracting limitation in Section M of the RFP. Pl. Mot. 27. Indeed, CENTECH claims that by its submission of a proposal and execution of a contract, it agreed to comply with the subcontracting limitation. <u>Id.</u> CENTECH cites GAO decisions that allowed agencies to consider parol evidence to determine that the proposal conformed to the subcontracting limitation, but the precedents it cites undercut its position. For example, in <u>Ecompex, Inc.</u>, 2004 WL 1675519 *4 (Comp. Gen.), the GAO found that "[t]here was nothing on the face of AEC's proposal indicating that the firm cannot and will not perform at least 51 percent of the work." Here, on the other hand, CENTECH proposed to perform 43.2 percent of the contract costs of personnel with its own employees. It subsequently changed its proposal when it advised the SBA that it "will perform [redacted] of the total contract costs of personnel required with its own

---

[8] The Air Force decided to take corrective action based upon the GAO's rational determination that CENTECH's proposal was ineligible for award. AR19895. If the Court finds as a matter of law that CENTECH's proposal was in fact eligible for award, and that there is no need to re-open discussions, the Air Force will need to decide how to address the matters raised in footnote 4 of the GAO decision, AR19796 n.4, and whether to reinstate the award to CENTECH.

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 18 of 22



employees (as opposed to the 43.2% figure CENTECH disclosed in its proposal based on its estimate of the USAF's actual contract requirements). AR17967. We do not fault CENTECH for altering the percentage of whose employees would be performing the majority of the work so that it would comply with the statute and regulations, but recognize that in so doing CENTECH revised its proposal. By its corrective action, the Air Force simply allowed the other offerors the same opportunity to revise their proposals and compete fairly and equally for this procurement.

CENTECH also contends that it was arbitrary and capricious for the Air Force to evaluate its compliance with the subcontracting limitation based upon its proposal in light of the fact that this is a cost-plus-award-fee type contract with uncertainty as to its requirements over a twelve year period of performance. Pl. Mot. 30. This is misleading. No offeror had to rely upon post-award technical direction to estimate its staffing and labor costs.

The Air Force developed the ARDTEAS technical requirements to move away from the prior systems engineering and technical assistance ("SE/TA") program structure into a total performance-based one. To accomplish this, a Performance Requirements Document was written that significantly changed the SE/TA Technical Requirements Document. See AR227-62. This change, along with the release of all workload assigned under the current contract from its inception in June 2000 through release of the latest RFP amendment in August 2007, increased the offerors' ability to provide staffing estimates. The release of the incumbent's labor categories, direct labor salaries and fringe benefits when the RFP was issued, AR18980-9004, also increased the ability of other offerors to more accurately estimate staffing and labor costs. With the wealth of information available to offerors, combined with the performance-based

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 19 of 22



PRD, no offeror had to rely upon post-award technical direction to estimate its staffing and labor costs with a reasonable level of confidence that little variation would occur after award.

## II. CENTECH Is Not Entitled To Injunctive Or Declaratory Relief

We have already demonstrated that even if the Court were to find the corrective action was arbitrary, capricious, an abuse of discretion, or otherwise in violation of law or regulation, it should still deny the relief requested because CENTECH has not demonstrated, by clear and convincing evidence, that: (1) failure to enjoin the procurement will cause CENTECH to suffer specific and irreparable harm; (2) the harm to CENTECH outweighs the harm to the Government and third parties; and (3) the grant of injunctive relief is in the public interest. Def. Mot. 26 (citing PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (2004)).

CENTECH alleges that it has been harmed because it has been actively seeking other Government contracts "and was unable to use this contract or its tangible and intangible proceeds in bidding on other opportunities." Pl. Mot. 51. It claims a "chain reaction of loss" that cannot be adequately remedied by a future award. Id. However, the cases CENTECH cites, id., undercut its request. Seattle Sec. Servs., Inc. v. United States, 45 Fed. Cl. 560, 571 (2000), is not relevant because CENTECH has not lost the opportunity to compete for this contract on a level playing field. Hospital Klean of Texas, Inc. v. United States, 65 Fed. Cl. 618, 624 (2005), is likewise inapposite because CENTECH has not lost the opportunity to earn the profit it would have made on this contract. Rather, as we explained, Def. Mot. 27, ManTech Telecommunications & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 75 (2001), instructs that, when an error has been detected, "the requirement for a fair and equal competition must

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 20 of 22



take priority over preserving every advantage initially enjoyed by a protester in a selection process that ultimately proves defective." See also CW Government Travel, Inc. v. United States, 46 Fed. Cl. 554, 559 (2000). CENTECH still has the opportunity to compete for this contract and to earn a profit if its revised proposal is selected. Indeed, we dispute CENTECH's claim that it has lost the opportunity to compete for this contract in a fair competitive bidding process under the terms determined to be fair by Congress and the SBA, Pl. Mot. 52, because the corrective action provides all offerors that very opportunity. CENTECH's contract will be reinstated should the Air Force determine, in its discretion, that CENTECH's revised proposal provides the best value.

We also disagree with CENTECH's claim that the balance of harms is in its favor because the Air Force would not be harmed if the award to CENTECH were restored. Id. The Air Force would be harmed if its broad discretion to implement corrective action in response to a GAO decision were limited.

Finally, we dispute CENTECH's claims that the public interest supports the grant of the relief it seeks. Pl. Mot. 53. We have already shown that it is in the public interest for the Air Force be able to conduct procurements without excessive judicial infringement upon the agency's discretion. Def. Mot. 28 (citing Aero Corp. v. United States, 38 Fed. Cl. 237, 242 (1997); Cincom Sys., Inc. v. United States, 37 Fed. Cl. 663, 669 (1997)); see also Textron, Inc. v. United States, 74 Fed. Cl. 277, 330 (2006).

**PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 21 of 22

## CONCLUSION

For the reasons stated above, we respectfully request that the Court deny CENTECH's request for preliminary and permanent injunctive relief and issue judgment for the United States based on the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Deborah A. Bynum

DEBORAH A. BYNUM
Assistant Director

/s/ Arlene Pianko Groner

ARLENE PIANKO GRONER
Trial Attorney
National Courts Section
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 307-0162
Fax: (202) 305-7643
Attorneys for Defendant

OF COUNSEL:

JOHN G. TERRA
Trial Attorney
U. S. Air Force Legal Operations Agency
Commercial Litigation Division
Arlington, Virginia

November 21, 2007

PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH
UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Case 1:07-cv-00513-MCW Document 77 *SEALED* Filed 11/21/2007 Page 22 of 22

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of November 2007, DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Arlene Pianko Groner
ARLENE PIANKO GRONER

**PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**