**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | | |
|---|---|---|
| **THE CENTECH GROUP, INC.** | ) | |
| **Plaintiff,** | ) | **No. 07-513C** |
| **v.** | ) | Judge Mary Ellen Coster Williams |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO RESPOND TO DEFENDANTS' AND INTERVENOR'S RESPONSE TO NEW CITATION AND RESPONSE**

At the hearing on December 3, 2007, the Court allowed Defendant and Intervenor the opportunity to file comments concerning the propriety of the Court's consideration of a lecture entitled "Small Business and National Security" by Senator Leverett Saltonstall, formerly the leading Republican on the Senate Small Business and Armed Services Committees, at the Industrial College of the Armed Forces on January 25, 1957. This publicly available lecture was presented at oral argument by CENTECH. Unfortunately, Defendant and Intervenor, in responding to the citation, took advantage of the Court's leave and proffered extraneous arguments, and in the process, mischaracterized CENTECH's reasons for introducing the Saltonstall lecture. Plaintiff hereby moves for leave to respond to Defendant's and Intervenor's additional arguments and in that regard, states as follows:

First, the Saltonstall lecture was introduced for the purpose of confirming Congressional recognition of a vital national security function served by the SBA COC process. See Saltonsall Lecture at 14 ("Once such a certificate is issued by the SBA, the contracting officers must accept

it as conclusive so far as financial and production requirements of the contract are concerned. . . . From the point of view of national security, what does this certification procedure mean? As I see it, it means that here are . . . small companies, . . . which are now gaining invaluable experience as suppliers to the Army, Navy, and Air Force in peacetime."); Siller Bros. v. United States, ____ (describing the defense industrial base function of the COC process). As we noted at oral argument, this Court and the Air Force are bound to carry out the intent of Congress to strengthen national security through mandatory COC-based contract awards. See 28 USC §1491(b)(3) ("**[T]e courts shall give due regard to the interests of national defense and national security** . . ."); 15 USC §637(d)(7)(C) ("[T]he officers of the Government having procurement or property disposal powers are directed to accept such certification as conclusive, and **shall let such Government contract to such concern or group of concerns without requiring it to meet any other requirement of responsibility or eligibility**.") (emphasis added). To "honor" these statutes by letting the Air Force to deny the specific contract for which the COC was issued, as TYBRIN and the Government invite the Court, would amount to legislating from the bench, and commit reversible error.

The Court must endeavor to reconcile the notions of "acceptability" and "responsibility" and should resist implied repeal of COC statutes or regulations where none was intended. The concept known as "responsiveness" or "acceptability" is not meant to cure agencies' defects in solicitations. Rather, it stems from the general policy, adopted in 1984 for sealed bidding and extended to negotiated procurements not later than 1996, that agencies make awards only to offerors whose bids or proposals intend to conform to the solicitation. See 10 U.S.C. §2305; John Cibinic, Jr. and Ralph Nash, Jr., Formation of Government Contracts, at 537-545 (3d ed. 1998). CENTECH's proposal confirmed its intent to comply with the RFP and with the

Limitations on Subcontracting. Moreover, as pointed out in CENTECH's Motion for Judgment on Administrative Record Brief at 34-35, the COC process was steadily expanded by law and regulation in 1977, 1984, and 1996 to include both the intent and the capability to comply with Limitations on Subcontracting:

> SBA decided to treat limitations on subcontracting as a responsibility matter because **it relates to how a contractor intends to perform a specific contract** and is analogous to traditional responsibility issues such as capacity and credit. Moreover, treating the issue in this way places the obligation to question compliance with the contracting officer, and insures that the contracting agency will be consulted before a negative determination is overruled by the SBA. . . . **As a responsibility matter, the contracting officer will determine whether an offeror intends to comply**, and, if so, whether it is capable of complying. SBA may then review adverse determinations."

61 F.R. 3311, 3312 (January 31, 1996).

In this case, the COC law would prevail in any conflict between 10 USC 2305 and the COC law. Congress gave the SBA final and primary jurisdiction to interpret the laws and regulations related to both the Limitation on Subcontracting and to the Certificate of Competency. The SBA also has the jurisdiction to review information outside the four corners of the proposal without permitting a change in the proposal. See 61 F.R. 3314. Lawful exercise of this jurisdiction cannot be deemed prejudicial to other bidders. Because the SBA's record is clear that the SBA had ample evidence going as far back as the time of proposal submission all the way to the time of award on which to base its COC, injunctive relief is the required remedy.

Second, in its "Response", the Air Force argues:

> The Air Force does not dispute that CENTECH possessed the responsibility to perform the contract. Rather, in finding CENTECH's offer technically unacceptable, the GAO found that the proposal, on its face, failed to comply with a material term of the RFP – the subcontracting limitation." … In following the GAO's recommendation and taking corrective action, the Air Force did not reject the SBA's conclusion about CENTECH's ability to perform.

Similarly, Intervenor argues:

> That is precisely what TYBRIN has urged throughout: the COC process has nothing to do with proposal acceptability; it only relates (as the publication states) to the offeror's competency. See, Transatlantic Lines LLC v. United States, 68 Fed. Cl. 48, 53 (2005). See also, TYBRIN October 1, 2007 Motion for Judgment on the Administrative Record, at 20; TYBRIN November 7, 2007 Reply at 24.

Contrary to the additional arguments asserted, the "Limitations on Subcontracting" clause is clear in directing that offerors must agree to comply as follows:

> ***By submission of an offer and execution of a contract,*** the Offeror/Contractor agrees to that in performance of the contract in the case of a contract for – Services (except construction), at least 50 percent of the cost of contract personnel incurred for personnel shall be expended for employees of the concern….

However, it is undisputed in this case that CENTECH stated its willingness and commitment to comply with the Limitations on Subcontracting Clause.

TYBRIN rests its case on Transatlantic Lines LLC v. United States**,** 68 Fed. Cl. 48, 53 (2005). However, its reliance on the case is misplaced. The facts in Transatlantic are easily distinguishable as follows: In Transatlantic, the contracting officer failed to check a box in an Invitation for Bids, ("IFB"), and thereby failed to make the Limitations on Subcontracting clause a contract requirement. He also failed to obtain from the awardee its contractual commitment to comply with the clause in violation of law. On this basis, the Court sustained the protest. In rendering its Opinion however, the Court cited with approval the GAO's holding in Coffman Specialties, Inc., B-284546, 2000 U.S. Comp. Gen. LEXIS 58; 2000 Comp. Gen Proc. Dec. P77. In that case, which involved a RFP, the GAO stated:

> Here, the RFP did not request a subcontracting plan or require offerors to describe in their technical proposals how they would comply with the subcontracting limitation clause… As a result, ***there was nothing in Dar-Hill's proposal from which the agency could reasonably conclude that Dar-Hill could not or would not comply with the subcontracting limitation...*** Because the awardee's proposal never indicated that the awardee did not intend to comply with this provision, the awardee's proposal was acceptable. See, Mitchell Constr. Co., Inc., B-245884, B-245884.2, Jan 17, 1992, 92-1 CPD at 2. Thus, ***Coffman's protest as to whether***

> ***Dar-Hill will comply with the subcontracting limitation concerns Dar-Hill's responsibility or is a matter of contract administration, which are matters generally not subject to review by or Office.***

Similarly, in Precision Std., Inc. v. United States, 69 Fed. Cl. 738, 755 (Ct. Cl. 2006), decided by this Court a year after the Court decided Transatlantic, the Court stated:

> An agency's judgment regarding whether a small business will comply with the subcontracting limitation involves a responsibility determination, ***which is a matter committed to the discretion of the contracting officer***. Chapman Law Firm, 63 Fed. Cl. at 527; see also, Coffman Specialties, 2000 WL 572693, at **4-5 (finding the awardee's proposal acceptable where the Request for Proposal (RFP) did not include a subcontracting plan and where "the awardee's proposal never indicated that the awardee did not intend to comply with the provision"); Ecompex, 2004 U.S. Comp. Gen. LEXIS 140, 2004 WL 1675519, at *4 (assurance from awardee "***that it was aware of the subcontracting provision, that it intended to comply with the requirement, and that it would provide copies of its monitoring and tracking reports demonstrating that it will perform more than 51 percent of the work under the contract" sufficient to defeat protestor's contrary allegations***). However, ***the contractor's actual compliance with the subcontracting limitation is a matter of contract administration.*** Chapman Law Firm, 63 Fed. Cl. at 527; Coffman Specialties, 2000 WL 572693, at *4.

Here, when the Contracting Officer issued a Determination of Non-Responsibility she attested to the fact that she was actually "***unable to determine if CENTECH could not or would not meet the subcontracting limitation requirements***…." (See, GAO decision AR19794, see also, AR17025-17028). This placed the question squarely within the SBA's area of exclusive jurisdiction as part of its COC review process. (AR17231).

Consistent with this conclusion, FAR 19.601(d) expressly mandates:

> When a solicitation requires a small business to adhere to the limitations on subcontracting, a contracting officer's finding that a small business cannot comply with the limitation shall be treated as an element of responsibility and shall be subject to the COC process.
>
> FAR 19.602-4(b) further mandates that;
>
> (b) The contracting officer shall award the contract to the concern in question if the SBA issues a COC after receiving the referral.

Here, the Contracting Officer made a referral to the SBA based on her inability to determine the question of CENTECH's compliance herself. In response to the referral, the SBA issued a COC to the Air Force.[1] As a matter of law, when this occurred, the Air Force became legally bound to award the contract to CENTECH, and the Air Force violated the law when it repudiated its legal obligation in this regard, and implemented the GAO's recommendation for corrective action. (FAR 19.602-4(b)).

Dated: December 6, 2007

Respectfully Submitted,

/s/ Kenneth A. Martin

Kenneth A. Martin
THE MARTIN LAW FIRM, PLLC
6723 Whittier Ave., Suite 200
McLean, VA 22101
(703) 918-0350; (703) 918-0386 (fax)

*Counsel for THE CENTECH GROUP, INC.*

*Of Counsel:*

Max V. Kidalov
Vice President & General Counsel
THE CENTECH GROUP, INC.

[1] The GAO accepted the Air Force's disclosure that it would request a COC from the SBA to resolve the GAO's recommendation to take corrective action. Only after the Air Force obtained the COC months later, did the GAO reverse its course and declare the nature of the question presented to be one of "proposal acceptability" within its area of jurisdiction, and on that basis sustained TYBRIN's Supplemental protest. (AR 17231).